⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2025RCCV00211**

CHARLES H.S. LYONS III
MAR 12, 2025 01:03 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

## IN THE SUPERIOR COURT OF RICHMOND COUNTY

## STATE OF GEORGIA

MASERATI EVENT CENTER,

    **Plaintiff,**

vs.

**MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,**

    **Defendant.**

Civil Action No.:

## COMPLAINT & DEMAND FOR JURY TRIAL

    **COMES NOW** the Plaintiff, MASERATI EVENT CENTER, by and through counsel, and

hereby files this Complaint for breach of first party property insurance contract and bad faith denial

of insurance coverage against Defendant, MESA UNDERWRITERS SPECIALTY INSURANCE

COMPANY, and in support thereof states as follows:

### PARTIES

1.

    Plaintiff is a Georgia business with a physical address located at 548 Ellis Street,

Augusta, Georgia 30901.

2.

    Upon information and belief, Defendant is a foreign insurance company, registered to

transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the

business of insuring risks and properties located throughout the United States, including Georgia.

Defendant has a registered agent listed as the Commissioner of Insurance and Safety Fire of the

State of Georgia with a service address of 2 Martin Luther King Jr. Drive, West Tower, Suite 702, Atlanta, GA 30334.

## JURISDICTION AND VENUE

This court possesses subject matter jurisdiction regarding the breach of contract and bad faith denial of insurance claim at hand. The Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. MP0032006027342 (the "Policy"). Upon information belief, the Policy insures against property damage to Plaintiff' home located at 548 Ellis Street, Augusta, Georgia 30901 (the "Property"), and the Policy insures against fire damage.

7.

Plaintiff is in possession of a complete certified copy of the Policy. A copy of the Policy is attached hereto as **Exhibit "A"**.

8.

The Policy is an **all-perils policy** which provides coverage for all direct physical loss except as limited or excluded by the terms of the Policy.

9.

The Policy covers various types of expenses, including mitigation and debris removal expenses.

## FIRE DAMAGE TO THE INSURED PROPERTY

10.

On, or about April 14, 2023, a fire event caused direct physical loss of, or damage to, the Plaintiff's Property. The Policy was in effect at the time of the above-referenced event.

11.

Plaintiffs promptly and timely notified Defendant of the damage caused by the wind and hail event and made a claim pursuant to the Policy. Defendant acknowledged receipt of the loss and assigned claim no. 22475952 to the loss (the "Claim").

12.

At all times, Plaintiffs made themselves and their Property available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the wind and hail.

13.

Defendant incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's Claim when the Defendant undertook the handling of the disposition of the claim.

14.

On or about September 6, 2023, Plaintiffs retained Property Claim Advocates, LLC to serve as his licensed public adjuster. Property Claim Advocates, LLC. inspected the Property and determined the proper amount necessary to return the Property to its pre-loss condition to be $1,838,174.25. A true and correct copy of the estimate is attached hereto as **Exhibit "B"**.

15.

Plaintiff made repeated requests for payment of the claim, including written demand sent to Defendant on March 28, 2024 pursuant to O.C.G.A. §33-4-6 guidelines. A true and accurate copy of the written demand is attached hereto as **Exhibit "C"**. Despite this demand for $1,838,174.25, Defendant has continued to frivolously deny Plaintiff's full amount of the claim without just cause when the obligation to settle the claim in full has become reasonably clear, under one or more portions of the insurance policy coverage.

16.

To the date of the filing of this Complaint, Defendant has failed to provide Plaintiffs with any supplement adjustment to the full amount of the estimated damages of the Claim. As such, Defendant has refused to comply with the Plaintiffs' requests and continued to frivolously and baselessly deny full payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore deny the basis of the estimate of the Plaintiffs' public adjuster as to the amount of damage and the amount it will cost the Plaintiff in order to be placed in the same position they were in prior to the fire event.

17.

Defendant did not act fairly and honestly toward the Plaintiff with due regard to the Plaintiff's claim when the Defendant failed to compensate, in full, the Plaintiff for its damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiffs, and with due regard for its interests.

18.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy, pursuant to the Policy, prior to this lawsuit, or the same were waived.

19.

There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's Property caused by the fire event that occurred on Apil 14, 2023. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

20.

Plaintiffs have suffered physical damage to their property in the amount to be determined at trial.

## COUNT I – BREACH OF CONTRACT

21.

Plaintiff adopts, re-alleges, and incorporates his allegations set forth in Paragraphs 1-20 of this Complaint as if fully set forth herein.

22.

Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

23.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

24.

Despite Plaintiff's timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to pay Plaintiff's full claim amount under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

25.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

26.

Defendant has used the tactic of denying full compensation to the Plaintiff for his covered losses that were sustained due to the fire event. Further, Defendant has used the tactic of delaying full payment to the Plaintiff in an effort to misrepresent the language of the Policy.

27.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the insured Property in the amount of $1,838,174.25, or in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation, debris removal, and temporary repairs in an amount to be determined at trial.

28.

As a direct result of Defendant's breach of its insurance contract, Plaintiff has been damaged and continue to suffer significant damages.

29.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

30.

**WHEREFORE,** Plaintiff prays for this Court to enter an award in Plaintiff's favor for compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

### COUNT II – BAD FAITH

31.

Plaintiff adopts, realleges, and incorporates his allegations set forth in Paragraphs 1-30 of this Complaint as if fully set forth herein.

32.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiff's Claim.

33.

Defendant has not attempted in good faith to settle the Plaintiff's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for his interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue.

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies.

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies.

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

(6) Refusing to pay claims without conducting a reasonable investigation.

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims; and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.

34.

Defendant has frivolously and without a reasonable basis refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Exhibit "C"). See O.C.G.A. §33-4-6

35.

Defendant has frivolously and without a reasonable basis used the tactic of denying full compensation to the Plaintiff for his covered loss that was sustained due to the water loss

event. Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiff in an effort to misrepresent the language of the Policy.

36.

Defendant's refusal to pay Plaintiff's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

37.

Defendant's breach of the Policy it sold to the Plaintiff is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiff is entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiff's consultant and expert fees.

38.

Pursuant to O.C.G.A § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiff within sixty (60) days of receipt of formal demand and have failed to do so (Exhibit D). As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis – Defendant is liable for all amounts due under its respective policy plus fifty percent (50%).

39.

As a result, pursuant to O.C.G.A §33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." Plaintiff is entitled, in addition to his covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever

is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss Claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## COUNT III – ATTORNEY'S FEES

40.

Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if set out fully herein.

41.

Defendant has acted in bad faith and has been stubbornly and maliciously litigious and has caused Plaintiff unnecessary trouble and expense.

42.

Under the circumstances, Defendant is liable to Plaintiff for all of Plaintiff's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

43.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

44.

**WHEREFORE**, Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receives any and all damages at law to which it is justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in the amount of $1,838,174.25, or in an amount to be determined at trial.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs' claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

f. Pre- and post-judgment interest in the maximum amount allowed by law;

g. All statutory penalties;

h. Any and all applicable multipliers; and,

i. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully submitted this 12th day of March 2025.

MERLIN LAW GROUP, P.A.

Matthew S. Brown, Esq.
Georgia Bar No.: 088852
4887 Belfort Road, Suite 200
Jacksonville, Florida 32256
(904) 552-1006
mbrown@merlinlawgroup.com
jmurad@merlinlawgroup.com
*Attorney for Plaintiff*

**POLICY**                    MP0032006027342

## INSURED ADDRESS COVER SHEET

TAPCO
PO BOX 286
BURLINGTON, NC  27216



MASERATI EVENT CENTER

PO BOX 2581

AUGUSTA, GA  30903

### Agency Information:

Agency Code: 3800001
BARR INSURANCE GROUP
3540 WHEELER RD STE 605

AUGUSTA                    GA  30909
Phone Number:

# INSURED'S COPY

# MESA UNDERWRITERS SPECIALTY
# INSURANCE COMPANY

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY
6263 NORTH SCOTTSDALE ROAD, SUITE 300
SCOTTSDALE, ARIZONA 85250

COMMERCIAL INSURANCE POLICY

MUSIC and its General Agent  TAPCO UNDERWRITERS, INC-A DIVISION OF CRC INSURANCE

are pleased to have issued  Policy  MP0032006027342         to

MASERATI EVENT CENTER

In witness whereof, Mesa Underwriters Speciality Insurance Company has caused this policy to be signed by its President and countersigned on the Declaration page by a duly Authorized Representative of the Company.

_____
Corporate Secretary

_____
President & CEO

MUSIC

MUS 01 01 10001 0321                    INSURED

**COMMON POLICY DECLARATIONS**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY A Stock Company
40 Wantage Avenue, Branchville, NJ 07890

**Policy Number:** MP0032006027342
No Flat Cancellation

**Previous Policy Number:** NEW

☒ **New**   ☐ **Renewal**   ☐ **Rewrite**

**Policy Period:** From 10/03/2022 To 10/03/2023 at **12:01 A.M.** Standard Time at your mailing address shown below.

**Named Insured:**
MASERATI EVENT CENTER

**DBA:**

**Mailing Address:**
PO BOX 2581

AUGUSTA                    GA 30903

**Agent and Mailing Address:**         **Agent Number:**   32006
TAPCO UNDERWRITERS, INC-A DIVISION OF CRC INSURANCE
3060 SOUTH CHURCH STREET
BURLINGTON                 NC 27215

**Tax State:** GA                **State Control Number (NJ & PA):**

THIS CONTRACT IS REGISTERED AND DELIVERED
AS A SURPLUS LINE COVERAGE UNDER THE
SURPLUS LINE INSURANCE LAW, O.C.G.A.
CHAPTER 33-5.

**Surplus Lines Broker Name:**       **Surplus Lines Broker Number:**
Keith E. Allred                       2892198

*Keith E. Allred*

GEORGIA SURPLUS LINES BROKER
Keith E. Allred

**Form of Business**
☒ Individual ☐ Joint Venture ☐ Partnership ☐ Limited Liability Company ☐ Corporation
☐ Organization (other) : _____

**Business Description:**
EVENT HALL

**Select Coverage Part (for which insurance is being afforded)**

| | | |
|---|---|---:|
| ☒ | **Commercial General Liability** | $ 1,651.00 |
| ☐ | **Liquor Liability** | $ |
| ☐ | **Owners & Contractors Protective** | $ |
| ☒ | **Commercial Property** | $ 2,383.00 |
| ☐ | **Commercial Inland Marine** | $ |
| ☐ | **Commercial Crime** | $ |
| ☐ | **Farm & Ranch** | $ |
| ☐ | **Garage** | $ |
| ☐ | **Other** (Describe) | $ |
| ☐ | **TRIA** | $ |

**Policy Taxes and Fees**
POLICY FEE          $155.00
TAX                 $167.56

| | |
|---|---:|
| **Total Advance Premium** $ | 4,034.00 |
| **Total Other Charges** $ | 322.56 |
| **Total** $ | 4,356.56 |

**Premiums Shown are payable at inception or as indicated on the individual Coverage Declarations.**

Form(s) and Endorsement(s), including edition dates, made a part of this policy at the time of issue:  See Schedule of Forms

NORTHEAST AGENCIES, INC
7349 IBM DR., STE 103

CHARLOTTE          NC 28262
                   10/10/2022
JEN                Date

By: _____

*Keith E. Allred*

Authorized Agent

**MUS 01 01 10002 1116**              INSURED

## SCHEDULE OF FORMS AND ENDORSEMENTS

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Named Insured     MASERATI EVENT CENTER

Policy Number     MP0032006027342

Effective Date:    10/03/2022

MUS 01 01 10001 0321  POLICY JACKET
MUS 01 01 10002 1116  COMMON POLICY DECLARATIONS
MUS 01 01 10003 1013  SCHEDULE OF FORMS AND ENDORSEMENTS

**Forms Applicable - INTERLINE FORMS**
TAP-CRF 11 18        CLAIMS REPORTING INFORMATION
MUS 01 01 10007 1013  MINIMUM EARNED PREMIUM
MUS 01 01 10043 1013  PRIVACY NOTICE
MUS 01 01 10023 1013  GA SERVICE OF SUIT
IL0017 11 98          COMMON POLICY CONDITIONS
ILN001 09 03          FRAUD STATEMENT
GA FAQ 02 18          GA - FREQUENTLY ASKED QUESTIONS

**Forms Applicable - GENERAL LIABILITY COVERAGE**
MUS 01 01 20001 1116  GENERAL LIABILITY COVERAGE PART DECLARATIONS
MUS 01 01 20004 0916  LIABILITY DEDUCTIBLE
MUS 01 01 20055 1013  EXCL - ASSAULT OR BATTERY
MUS 01 01 20058 0816  LEAD CONTAMINATION
MUS 01 01 20063 0919  PUNITIVE DAMAGES EXCLUSION
MUS 01 01 20080 0816  EARTH MOVEMENT EXCLUSION
MUS 01 01 20082 0816  EXCLUSION - ASBESTOS
MUS 01 01 20084 0816  NON-STACKING OF LIMITS ENDORSEMENT
MUS 01 01 20094 1021  AMENDMENT OF CONDITIONS - PREMIUM AUDIT
MUS 01 01 20112 1013  EXCL - OCCUPATIONAL DISEASE
MUS 01 01 20139 0617  EXCL - INFRINGEMENT OF INTELLECTUAL PROPERTY
CG0001 04 13          COMM GENERAL LIABILITY COVERAGE FORM
CG2106 05 14          EXCL - ACCESS-DISCLOSURE OF CONFIDENTIAL-PERSONAL INFO & DATA-RELATED LIAB W/ BI EXCEPTION
CG2132 05 09          COMMUNICABLE DISEASE EXCLUSION
CG2147 12 07          EMPLOYMENT RELATED PRACTICES EXCL
CG2155 09 99          TOTAL POLLUTION EXCL.-W/HOSTILE FIRE EXCEP.
CG2167 12 04          FUNGI OR BACTERIA EXCLUSION
CG2196 03 05          SILICA OR SILICA-RELATED DUST EXCL
CG2426 04 13          AMEND OF INS. CONTRACT DEFINITION
IL0021 09 08          NUCLEAR ENERGY LIABILITY EXCLUSION
IL0262 09 08          GA CHANGES - CANCELLATION AND NONRENEWAL
CG2173 01 15          EXCL OF CERTIFIED ACTS OF TERRORISM

**Forms Applicable - PROPERTY COVERAGE**
MUS 01 01 30001 1116  PROPERTY COVERAGE PART DECLARATIONS
MUS 01 01 30009 1013  TOTAL OR CONSTRUCTIVE LOSS EARNED PREMIUM CONDITION
MUS 01 01 30014 0219  ROOF DAMAGE EXCLUSION
MUS 01 01 30016 1013  EXCL - ABSOLUTE ASBESTOS
MUS 01 01 30021 1013  LEAD EXCLUSION
MUS 01 01 30022 1013  POLLUTION EXCLUSION
MUS 01 01 30023 1013  SINKHOLE EXCLUSION
MUS 01 01 30024 0621  ACTUAL CASH VALUE
CP0010 10 12          BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CP0090 07 88          COMMERCIAL PROPERTY CONDITIONS
CP0140 07 06          EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
CP0321 10 12          WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
CP1030 10 12          CAUSES OF LOSS - SPECIAL FORM
CP1033 10 12          THEFT EXCLUSION
CP1075 12 20          CYBER INCIDENT EXCLUSION
IL0262 09 08          GA CHANGES - CANCELLATION AND NONRENEWAL
IL0953 01 15          EXCL - CERTIFIED ACTS OF TERRORISM

# Claim Reporting Information

To report a claim, you can contact your agent or notify the TAPCO Claims Department by calling 1-800-334-5579; or emailing claims@gotapco.com; or faxing to 336-538-0094.

How To Report A Claim Directly to TAPCO

**Call 1-800-334-5579; or email claims@gotapco.com; or fax to 336-538-0094.**

In order to expedite this process, please be prepared to furnish as much of the following information as possible:

*   Your Policy Number

*   Date, time, and location of the loss/accident

*   Details of the loss/accident

*   Name, address and phone number of any involved parties

*   If applicable, name of law enforcement agency or fire department along with the incident number

**TAP-CRF (11-18)**

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

Policy Number: **MP0032006027342**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

THIS ENDORSEMENT APPLIES TO ALL COVERAGE PARTS

If this insurance is cancelled at your request, there will be a minimum earned premium retained by Mesa Underwriters Specialty Insurance Company of $            or   25   % of the premium for this insurance, whichever is greater.

Cancellation of this insurance for nonpayment of premium is considered a request by the first Named Insured for cancellation of this insurance.

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 10007 1013**          INSURED          **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## PRIVACY POLICY
### For
## MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

Mesa Underwriters Specialty Insurance Company understands the importance placed by our customers on the privacy and safeguarding of their personal information.  The Company intends and is obligated to protect all nonpublic personal information provided to the Company by our customers.  Whether a consumer is already a policyholder or is applying for insurance or is a claimant, the Company will maintain the confidentiality and security of all individual's personal information as required by law.

In order to meet our customers' insurance needs and to comply with business, regulatory and legal obligations we are required to collect and at times, use personal information.  The Company does not disclose personal information about customers, potential or former, for marketing purposes to nonaffiliated third parties. The Company may gather information from a variety of sources including but not limited to the Company's affiliates, consumer reporting agencies such as credit bureaus, property inspection services and other non-affiliated third party organizations.  We do not disclose any personal information about our customers, except as follows:

1) with consumer/customer consent,
2) as required by law,
3) as permitted by law
4) as necessary or appropriate to underwrite, administer, service, effect, process or enforce an insurance policy that we have issued ( or are considering issuing), or
5) as necessary to otherwise service a customer's policy or effect a customer

When necessary, the Company may disclose nonpublic personal information to a nonaffiliated organization that is performing services relative to the policy or our operation, we require that such third parties use and disclose the information only as necessary relating to the service or function that they are performing on our behalf.  It is important that the Companies' employees be aware of and abides by this Privacy Policy and the applicable laws governing the use, handling and disclosure of nonpublic personal information.   Our employees may not access nonpublic personal information maintained by the Company on a general basis.  Company employees will have access to personal nonpublic information of applicants, policyholders or claimants if this information relates to their job performance for the Company.  The Company will maintain adequate safeguards to protect the confidentially and security of the nonpublic personal information that we obtain.  Employees may not disclose or use nonpublic personal information except as authorized by the Company or as permitted or required by law. If an employee fails to comply with these requirements this may lead to appropriate disciplinary action by the Company up to, and including, dismissal.

This Privacy Policy applies to individuals who are applicants, policyholders, or claimants under insurance products or services obtained from the Company primarily for personal, family or household purposes; it does not apply to products or services obtained for business, commercial or agricultural purposes.

The Company will provide notice of its privacy policy to its customers not less than annually, while the policyholder maintains a relationship with us.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT GEORGIA

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

We hereby appoint the Commissioner of Insurance and Safety Fire of the State of Georgia and his or her successor as our true and lawful attorney upon whom all lawful process may be served in any action, "suit" or proceeding instituted in Georgia by or on behalf of any insured or beneficiary against us arising out of this insurance policy.  We request that the Commissioner mail, return receipt requested, a copy of any process, "suit", complaint or summons to Corporation Service Company, 40 Technology Pkwy South, Suite 300, Norcross, GA 30092.

Authorized Representative

MUS 01 01 10023 1013                    INSURED                                          Page 1 of 1

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

INSURED

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

 © ISO Properties, Inc., 2003

INSURED

**APPENDIX A**

## FREQUENTLY ASKED QUESTIONS ABOUT YOUR

## SURPLUS LINES POLICY

Your broker has placed the insurance you requested in the "surplus lines market" with one or more surplus lines insurers. By definition, such surplus lines insurers are not licensed in the state, but this does not mean that the transaction is not regulated. The surplus lines market is an insurance marketplace that is established for the purpose of insuring unique or hard to place risks. Some of the rules that apply to surplus lines insurance policies and surplus lines insurance companies differ from those that govern coverage obtained from insurance companies licensed in your state. In order for you to better understand the surplus lines market and the rights you have in a surplus lines transaction, the following material is provided. Please read this brochure carefully, and should you have any questions after reading the material, do not hesitate to ask your broker. If you wish further information, please contact the Regulatory Services Division, Room 604 West Tower, 2 Martin Luther King, Jr. Drive, Atlanta , Georgia 30334 or (404) 656-2074 or toll free at (800) 656-2298 (request Regulatory Services Division).

### WHAT IS A SURPLUS LINES POLICY?

A surplus lines policy is a policy placed with an insurer that is not licensed (or „admitted in this state, but is nonetheless eligible to provide insurance on property or liability insurance protection to citizens of this state through specially licensed agents or brokers known as surplus lines brokers.

### WHY AM I GETTING COVERAGE FROM A SURPLUS LINES INSURER?

Your agent or broker may have been unable to obtain the coverage you requested from insurance companies licensed in this state, but was able to obtain coverage from an eligible surplus lines insurance company. The reason for your agent or broker action is that the risk or property for which you sought coverage may be unique or have certain risk characteristics that caused licensed insurers to decline to write the policy. In circumstances where licensed insurers will not write the risk, your broker is authorized by state law or regulation to obtain the coverage from a "surplus lines" insurer.

### SINCE THE SURPLUS LINES INSURER IS UNLICENSED, IS THE TRANSACTION UNREGULATED?

Surplus lines transactions are regulated by state law that require that surplus lines policies be procured only by specially licensed brokers. These are called surplus lines brokers and they are authorized to transact business with certain unlicensed insurers that meet financial and other eligibility standards set by the state. These insurers are known as surplus lines insurers. Your agent may have worked with a licensed surplus lines broker in securing your policy. Alternatively, your agent may hold a surplus lines broker license.

### IS MY SURPLUS LINES POLICY COVERED BY THE STATE GUARANTY OR INSOLVENCY FUND?

No. There is no guaranty fund for coverage for surplus lines policies. The guaranty fund, which provides payments in the event that your insurance company becomes insolvent, only covers policies of licensed insurers.

### HOW IS THE RATE OR PRICE OF A SURPLUS LINES POLICY DETERMINED?

The rate or premium charged for a surplus lines policy is determined by the surplus lines insurer. As unlicensed insurers , surplus lines insurers do not file their rates or premiums with the state for review or approval.

**DOES THE GEORGIA DEPARTMENT OF INSURANCE REVIEW OR APPROVE THE TERMS AND CONDITIONS OF THIS POLICY?**

Pursuant to O.C.G.A. §  33-5-21.1, policies of surplus lines insurers are not reviewed or approved by the Georgia Department of Insurance.

**CAN MY POLICY BE RENEWED OR EXTENDED?**

Your surplus lines policy may or may not be renewed or extended when the policy expires. An extension of the policy coverage will be dependent upon the continued unavailability of the policy coverage from insurers licensed in this state and the willingness of the surplus lines insurer to continue to accept the risk. Since a surplus lines policy is generally not subject to the same notice requirements as a policy issued by a licensed insurer, notice of a premium increase for a new policy term or the company intent not to extend the policy at the same terms and conditions might not be provided until close to the date the policy expires. Therefore, you should keep in contact with your agent or broker, particularly as the expiration of the policy term nears, to ascertain the status of the policy and to assure continuity of coverage.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY A Stock Company
40 Wantage Avenue, Branchville, NJ 07890

## COMMERCIAL GENERAL LIABILITY Coverage Part Declarations

Policy Number: MP0032006027342
Named Insured: MASERATI EVENT CENTER
DBA:

Effective Date: 10/03/2022

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations | $ | 2,000,000 |
| Products / Completed Operations Aggregate Limit | $ | See Below |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage To Premises Rented to You Limit   (Any 1 Premises) | $ | 100,000 |
| Medical Expense Limit   (Any 1 Person) | $ | 5,000 |

### Location(s) Of All Premises you Own, Rent or Occupy, Classification & Premium Provided

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| Loc. No.  Street Address | | Street Address | City | | State   Zip | |
| 001)   548 ELLIS ST | | | AUGUSTA | | | GA 30901 |
| 44276 | Halls- Other than not-for-profit only | a   7,100 | 232.471 | INCLUDED | 1,651 | INCLUDED |

Products and Completed Operations are included in the General Aggregate Limit

)

)

)

☐ Abuse and Molestation Limited Coverage        ☐ Increased Limits
☐ Assault and Battery Limited Coverage           ☐ Hired Automobile
☐ Additional Insured(s)                          ☐ Non-Owner Automobile
☐ Employee Benefit Liability Coverage            ☐ Stop Gap
☐ Other:

*Premium Basis Types: **a - Area** (per 1,000 Square feet of area)  **c - Cost** (per $1,000 Total Cost)    **m - Admissions** (per 1,000 Admissions)
**p - Payroll** (per $1,000 of Payroll)    **s - Sales** (per $1,000 Gross Sales)    **t -- Total** (per each)  **u - Units** (per Unit)

Total Annual Premium: $       1,651

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Conditions, the Coverage Form(s), and the Coverage Endorsement(s) indicated as applicable.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Policy Number: MP0032006027342

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIABILITY DEDUCTIBLE
## (Including Costs and Expenses)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
FARM LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or PER OCCURRENCE |
| Bodily Injury Liability | $    500 | $    N/A |
| Property Damage Liability | $    500 | $    N/A |

A.  The Company's obligations under the coverage afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B.  The deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C.  The deductible amount stated will also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

D.  The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

E.  The Company, at its sole election and option, may either:

1.  Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

2.  Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or part of the deductible amount, to be held and applied by the Company as herein provided.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20004 0916          INSURED                                    Page 1 of 1

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

Policy Number: MP0032006027342

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ASSAULT OR BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### Assault or Battery Exclusion – Excluded Location Schedule

*If no locations are specified below, the Assault or Battery Exclusion applies to ALL locations*

| Loc. # | Address |
|--------|---------|
|        |         |
|        |         |
|        |         |

I.   This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and advertising injury", or medical payments under Coverage C, caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from:

A.   The direct or indirect instigation, instruction or direction, by you, your employees, patrons or any other persons, or

B.   The failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or

C.   The negligent employment, investigation, supervision, hiring, training or retention of any person, or

D.   Negligent, reckless, or wanton conduct by you, your employees, patrons or any other persons, or

E.   The use of force, whether excessive or not, to protect persons or property whether or not the "bodily injury", "property damage", or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of any insured; or

F.   The failure to render or secure medical treatment or care necessitated by any "assault" or "battery".

This exclusion applies to all locations if the above Excluded Location Schedule is left blank. Further, this exclusion also applies to all locations specified in the Limited Assault or Battery Coverage endorsement if also attached to the policy.

II.   For the purpose of this endorsement only, Exclusion **a. Expected Or Intended Injury,** part of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** is deleted and replaced by:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**III.** For the purpose of this endorsement only, the following definitions are added to **SECTION V – DEFINITIONS**

    A. "Assault" means any intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any threatened harmful or offensive contact between two or more persons.

    B. "Battery" means the intentional or reckless use of force including a physical altercation or dispute between persons, or offensive touching or sexual molestation against another, resulting in injury whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of a weapon.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

In consideration of the premium charged it is hereby understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs, arising out of:

"Bodily injury", "property damage", "personal injury", "advertising injury", "medical payments", or any other damages because of liability, alleged liability, or occurrence resulting from, caused by, arising out of, or in any way connected with:

The existence of lead, the removal of lead, the testing for lead, or exposure to lead in any form which is or has at any time been present in, on, or near:

1. the insured's premises; or
2. at any location at which the insured is working or has worked in connection with such existence, removal, or testing

Whether or not:

1. caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees or other persons on the insured's premises or work site; or,
2. whether or not caused by or arising out of the insured's failure to properly supervise or keep the work site in a safe condition.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20058 0816**                         INSURED                                        Page 1 of 1

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM
FARM LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS PHYSICAL DAMAGE COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

This insurance does not apply to any fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication of compensatory damages.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARTH MOVEMENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that this policy specifically excludes and does not extend to, or provide coverage or indemnity for, any claim of liability for bodily injury or property damage caused by, resulting from, attributable or contributed to or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from any operations of the Named Insured or on behalf of any Named Insured or any subcontractor of the Named Insured.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20080 0816**                    INSURED                    **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs arising out of:

1. Asbestos or any asbestos related "bodily injury", or "property damage" or
2. Any alleged act, error, omission, or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, transportation, disposal or avoidance or
3. The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos in any environment, building or structure.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NON-STACKING OF LIMITS ENDORSEMENT
## TWO OR MORE COVERAGE FORMS, COVERAGE PARTS, OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS PHYSICAL DAMAGE COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

If any coverage form or coverage part or policy issued to you by us or any company affiliated with us apply to the same claim for damages, the maximum limit of insurance for liability coverage under all of the coverage forms, coverage parts, or policies shall not exceed the highest applicable limit of insurance available under any one coverage form, coverage part or policy.

This endorsement does not apply to any coverage form, coverage part or policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20084 0816                     INSURED                                    Page 1 of 1

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

Policy Number: **MP0032006027342**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF CONDITIONS – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The Premium Audit Condition under **Section IV – Conditions** is **replaced** by the following:

**Premium Audit**

    a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates. Premium shown in this Coverage Part as advance premium is a minimum and deposit premium.

        The rates for each classification shown in the Declarations are multiplied by the estimated premium basis of that classification for the term to determine the advance premium.

        We may conduct an audit of your books to determine the actual premium basis developed during the policy period. To calculate the actual premium developed during the policy period we will use one, or a combination, of the follow premium basis: payroll, admissions, gross sales, total cost, area, each exposure unit, units or total operating expenditures.

    b.  **Premium Bases.**
        The premium bases are defined in accordance with our rules and the following definitions:

      (1) **Payroll** (premium basis symbol **p**): Remuneration paid to "employees", including but not limited to:

         (a) Money or substitutes for money; commissions; bonuses; overtime; payments to statutory insurance or pension plans; profit sharing or incentive plans; pay for holidays, vacation or sickness; and fees paid to employment agencies for temporary personnel provided to you.

         (b) If your operations consist of a number of separate operations classified individually in the Declarations, the payroll will be allocated to each classification where you have maintained records for each separate operation. Any such operation for which separate records are **not** maintained by you will be assigned to the highest rated classification.

         (c) For premium computation purposes, the payroll of executive officers, individual insureds and co-partners is subject to a minimum annual payroll per person of:

<div style="border:1px solid #000; padding:20px; width:200px;">

$
</div>

        (If no entry is made, the minimum payroll as established by our rating rules will apply.)

The rates apply per $1,000 of Payroll.

**(2)** **Admissions** (premium basis symbol **m**): The total number of persons, other than your "employees", admitted to the insured event or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per 1,000 Admissions.

**(3)** **Gross Sales** (premium basis symbol **s**): The gross amount charged by you, your concessionaries or by others trading under your name for:

(a) All goods or products, sold or distributed;

(b) Operations performed during the policy period;

(c) Rentals; and

(d) Dues or fees.

The rates apply per $1,000 of Gross Sales.

**(4)** "**Total Cost**" (premium basis symbol **c**) means the total cost of all work let or sublet in connection with each specific project including:

(a) The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work excluding the cost of finished equipment installed whether or not furnished by the contractor, or subcontractor, or by you; and

(b) All fees, bonuses or commissions made, paid or due.

The rates apply per $1,000 of Total Cost.

**(5)** **Area** (premium basis symbol **a**): The total number of square feet of floor space at the insured premises. The rates apply per 1,000 square feet of Area.

**(6)** **Each** (premium basis symbol **t**): The basis of premium involves units of exposure, and the quantity compromising each unit of exposure is indicated in the Declarations, such as "per person".

**(7)** **Units** (premium basis symbol **u**): A single room or group or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone. The rates apply per Unit.

**(8)** **Total Operating Expenditures** (premium basis symbol **o**): Total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period including accounts payable.

The rates apply per $1,000 of Total Operating Expenditures.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. Failure to supply such records upon request will be deemed a breach of condition and subject this policy, and may subject any in-force policy of yours to cancellation for breach of conditions.

d. We reserve the right to examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

e.  Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. Advance premium includes any payments identified as premium paid prior to policy expiration. At the close of each audit period, we will compute the earned premium for that period. Audit premium is due and payable upon notice to the first Named Insured. Failure to pay the audit premium due will be deemed a breach of contract of this policy, and may subject any in-force policy of yours to cancellation for non-payment of premium.

(1)  If the actual earned premium generated as a result of an audit for the policy period is less than the advance premium, such advance premium is the minimum premium for the policy period indicated and is not subject to this adjustment.

(2)  If the actual earned premium generated as a result of an audit for policy period is greater than the advance premium, then a final premium adjustment endorsement will be issued. The additional premium amount shown on the final premium adjustment endorsement is due and payable to us upon notice to the first Named Insured.

f.  Non-cooperation with Audits

If after two (2) documented attempts, we are unable to complete an audit, your applicable premium basis, as defined in Paragraph b. above, will be increased by twenty-five percent (25%) and applied in addition to the policy premium. Failure to remit payment of this increase, or any additional premium found within a successfully completed premium audit, will be subject to the terms described in e. above.

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – OCCUPATIONAL DISEASE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

I.   The following exclusion is added to **2. Exclusions COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, and COVERAGE C MEDICAL PAYMENTS,  part of SECTION I – COVERAGES:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of "occupational diseases".

"Occupational diseases" means any injury, including death, sickness, disease or disability, defined as occupational disease under any workers compensation or disability benefits laws, statues or regulations of any jurisdiction in which the "occurrence" took place or the "occupational disease" arose.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 20112 1013**              INSURED                              **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – INFRINGEMENT OF INTELLECTUAL PROPERTY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES - COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY 2. - Exclusions i. - Infringement of Copyright, Patent, Trademark or Trade Secret** is replaced with the following:

**i.    Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**SECTION V – DEFINITIONS – 14.** is replaced with the following:

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**    False arrest, detention or imprisonment;

**b.**    Malicious prosecution;

**c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20139 0617    Includes copyrighted material of Insurance Services Office, Inc. with its permission    Page 1 of 1

INSURED

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012
INSURED

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** -- Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013
INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

© Insurance Services Office, Inc., 2008

INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

.

.

INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

INSURED

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © Insurance Services Office, Inc., 2012

INSURED

IL 00 21 09 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007
INSURED

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 02 62 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

  **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

  **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

  **(1)** 10 days from the date of mailing or delivering our notice, or

  **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **5. Premium Refund**

  **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

  **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

  **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

  **d.** If the first Named Insured cancels, the refund may be less than pro rata.

  **e.** The cancellation will be effective even if we have not made or offered a refund.

IL 02 62 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 2
INSURED

**C.** The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

If the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium, whether payable to us or to our agent;

   **b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

   **c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

   **d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

   l 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   l 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b.**, **c.** or **d.** above.

© ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

INSURED

# Commercial Property Coverage Part Declarations

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY** A Stock Company
40 Wantage Avenue, Branchville, NJ 07890

Policy Number: MP0032006027342
Named Insured: MASERATI EVENT CENTER
DBA:
Effective Date: 10/03/2022

| Class Code | Coverage | Limit of Insurance | Covered Cause of Loss | Valuation | Monthly Indem./ Co-Ins | Rates | Premium |
|---|---|---|---|---|---|---|---|

| Loc.#/Bldg.# Street Address | | | Street Address | City | | State | Zip |
|---|---|---|---|---|---|---|---|
| 001/001 548 ELLIS ST | | | | AUGUSTA | | GA | 30901 |

Year Built: 1900    # of Stories: 2    Square Footage: 7100    Construction: **Frame**
Occupancy: **EVENT HALL**    Prot.Class: 1

| 0843 Building | | $400,000 | Special Excl. Theft | ACV | 80% | 0.4763 | 1,906 |
|---|---|---|---|---|---|---|---|

EVENT HALL

| 001/001 548 ELLIS ST | | | | AUGUSTA | | GA | 30901 |
|---|---|---|---|---|---|---|---|

Year Built: 1900    # of Stories: 2    Square Footage: 7100    Construction: **Frame**
Occupancy: **EVENT HALL**    Prot.Class: 1

| 0843 BPP | | $100,000 | Special Excl. Theft | ACV | 80% | 0.4763 | 477 |
|---|---|---|---|---|---|---|---|

EVENT HALL

/
Year Built:    # of Stories:    Square Footage:    Construction:
Occupancy:    Prot.Class:

/
Year Built:    # of Stories:    Square Footage:    Construction:
Occupancy:    Prot.Class:

/
Year Built:    # of Stories:    Square Footage:    Construction:
Occupancy:    Prot.Class:

☐ Property Extension Endorsement          ☐ Identity Recovery Coverage Endorsement
☐ Equipment Breakdown                     ☐ Other:

BPP = Busines Personal Property    Business Income w/EE (w/EE = with Extra Expense)    **TOTAL:**    $2,383

**OPTIONAL COVERAGES:** applicable only when one of the following abbreviations are shown next to premises insured
ACV= Actual Cash Value, AGREED = Agreed Amount, FRC = Functional Replacement Cost Special, RC = Replacement Cost Value

DEDUCTIBLE: $ 1,000    Other:                                          $

MORTGAGE HOLDERS:

| Loc # / Bldg | NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| / | NONE REPORTED | | | | |
| / | | | | | |
| / | | | | | |
| / | | | | | |
| / | | | | | |

**SPECIFIC PROPERTY FORMS/ENDORSEMENTS:** Per Form Schedule MUS 01 01 10003
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Common Policy
Conditions, Coverage part Coverage Form(s) and any other applicable forms and endorsements

MUS 01 01 30001 1116                    INSURED

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL OR CONSTRUCTIVE LOSS EARNED PREMIUM CONDITION

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL COVERAGE FORM

**E.  LOSS CONDITIONS** is amended and the following added:

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

8.      Total or Constructive Total Loss Earned Premium

In the event of a total loss or a "constructive total loss" to Covered Property by a Covered Cause of
Loss, the entire policy premium will be fully earned and no return premium will be
due.

"Constructive total loss" means the Covered Property damaged by a Covered Cause of Loss is treated as a total loss because the cost of repairing or replacing, whichever is less, the damaged Covered Property exceeds the actual cash value of the Covered Property at the time of loss.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 30009 1013                    INSURED                                    Page 1 of 1

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

Policy Number: **MP0032006027342**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ROOF DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY – BUILDING AND PERSONAL PROPERTY COVERAGE FORM
FARM PROPERTY COVERAGE FORM

NO COVERAGE is provided for the perils of WIND and/or HAIL DAMAGE to the roof, nor to the interior water damage resulting from or occasioned by any roof condition to the locations noted in the schedule.

If during the term of this contract, the roof is replaced by new roofing, and written notice and paid receipt of the roof replacement is provided to the Company, this endorsement is null and void for only those locations listed in the schedule for which the roof has been replaced.

## <u>SCHEDULE</u>

| Location No. | Building No. |
|---|---|
| 01 | 01 |

All other terms and conditions of this policy remain unchanged.

MESA UNDERWRITERS SPECIALTY
        INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ABSOLUTE ASBESTOS

This endorsement modifies insurance provided under the following:

        BUILDING AND PERSONAL PROPERTY COVERAGE FORM
                CAUSES OF LOSS – BASIC
                CAUSES OF LOSS – BROAD
                CAUSES OF LOSS – SPECIAL
        BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)
        EXTRA EXPENSE COVERAGE FORM
        LEASEHOLD INTEREST COVERAGE FORM

The following is added to the EXCLUSIONS section and is therefore not a Covered Cause of Loss:

**ASBESTOS**

We will not pay for loss or damage caused directly or indirectly by existence of or actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of any asbestos, or any event that contributes concurrently or in any sequence to the loss or damage.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 30016 1013**              INSURED                                **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE FORM

I.  The following is added to paragraph **2**. part of **B. Exclusions**

We will not pay for direct physical loss or damage to covered property, or any consequential loss or damage, caused by, resulting from, attributable or contributed to, or aggravated by the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead in any form.

Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

All other terms and conditions of this policy remain unchanged.

**MUS 01 01 30021 1013**            INSURED            **Page 1 of 1**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE FORM

I.  In the Causes Of Loss – Special Form, the following replaces subparagraph **I.**, part of Paragraph **2**. of **B. Exclusions,** and in the Causes Of Loss – Basic Form, Standard Property Policy, and Broad Form, the following is added to Paragraph **2**. of **B. Exclusions**

We will not pay for direct physical loss or damage to covered property, or any consequential loss or damage, caused by the release or discharge or dispersal of toxic or hazardous substances, contaminants or pollutants. Nor will we cover the cost of removal, disposal, decontamination or replacement of insured property that has been contaminated by toxic or hazardous substance, contaminants or pollutants, or by any law or civil authority requiring any property to be restored, disposed or decontaminated.

Such loss is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 30022 1013                INSURED                          Page 1 of 1

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SINKHOLE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE FORM

I.   Sinkhole collapse is added to the **Exclusions** section and is therefore not a Covered Cause of Loss.   The following Cause of Loss provisions are amended.

A.   In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

B.   In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

C.   In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 30023 1013                    INSURED                              Page 1 of 1

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL INLAND MARINE CONDITIONS
FARM PROPERTY COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 30024 0621            INSURED                                    Page 1 of 1

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

 © Insurance Services Office, Inc., 2011

INSURED

However, our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities.

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

 **(1)** The lowest basement floor; or

 **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

 **(1)** Are licensed for use on public roads; or

 **(2)** Are operated principally away from the described premises.

 This paragraph does not apply to:

  **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $     500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $     500 |
| Amount of Loss | $80,000 |
| Amount of Loss Payable | $79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense | $40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

| | |
|---|---|
| Deductible | $   250 |
| Limit of Insurance – Building 1 | $60,000 |
| Limit of Insurance – Building 2 | $80,000 |
| Loss to Building 1 | $60,100 |
| Loss to  Building 2 | $90,000 |

(This example assumes there is no Coinsurance penalty.)

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$60,100

-    250

$59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When | | |
|---|---|---|
| | The value of the property is | $250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $100,000 |
| | The Deductible is: | $    250 |
| | The amount of loss is: | $ 40,000 |

Step (1):    $250,000 x 80% = $200,000
    (the minimum amount of insurance to meet your Coinsurance requirements)
Step (2):    $100,000 , $200,000 = .50
Step (3):    $40,000 x .50 = $20,000
Step (4):    $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When | | |
|---|---|---|
| | The value of the property is | $250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $200,000 |
| | The Deductible is: | $    250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When | The value of the property is | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $100,000 |
| | Personal Property | |
| | at Location 2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage | |
| | for it is: | 90% |
| | The Limit of Insurance for | |
| | Buildings and Personal Property | |
| | at Locations 1 and 2 is: | $180,000 |
| | The Deductible is: | $  1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property | |
| | at Location 2: | $ 20,000 |
| | | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011

   **b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

   **c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

      **(1)** On or after the effective date of this Optional Coverage; and

      **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

   **a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   **b.** The amount of increase will be:

      **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

      **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

      **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

### Example

If: The applicable Limit of Insurance is:   $100,000
The annual percentage increase is:   8%
The number of days since the beginning of the policy year (or last policy change) is:   146
The amount of increase is:
$100,000 x .08 x 146 ‚ 365 =   $3,200

### 3. Replacement Cost

   **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

   **b.** This Optional Coverage does not apply to:

      **(1)** Personal property of others;

      **(2)** Contents of a residence;

      **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

      **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

   Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

   **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

   **d.** We will not pay on a replacement cost basis for any loss or damage:

      **(1)** Until the lost or damaged property is actually repaired or replaced; and

      **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

   With respect to tenants' improvements and betterments, the following also apply:

      **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

      **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

   **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

      **(1)** The Limit of Insurance applicable to the lost or damaged property;

      **(2)** The cost to replace the lost or damaged property with other property:

         **(a)** Of comparable material and quality; and

         **(b)** Used for the same purpose; or

      **(3)** The amount actually spent that is necessary to repair or.replace the lost or damaged property.

   If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. the United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

INSURED

**I.** TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

      **(1)** Owned or controlled by you; or

      **(2)** That owns or controls you; or

   **c.** Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
CP 01 40 07 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006
1NSURED

POLICY NUMBER: MP0032006027342

**COMMERCIAL PROPERTY**
CP 03 21 10 12

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

| Premises No. | Bldg. No. | Windstorm or Hail Deductible Percentage (enter 1%, 2% or 5%) |
|---|---|---|
| 01 | 01 | 1% SUBJECT TO $5000 MINIMUM DEDUCTIBLE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.

**WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS**

**A. Calculation Of The Deductible – All Policies**

1. A Deductible is calculated separately for, and applies separately to:

   **a.** Each building that sustains loss or damage;

   **b.** The personal property at each building at which there is loss or damage to personal property; and

   **c.** Personal property in the open.

   If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.

2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.

CP 03 21 10 12

© Insurance Services Office, Inc., 2011

Page 1 of 3

INSURED

3. When property is covered under the Coverage Extension for Newly Acquired Or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired Or Constructed Property is the highest percentage shown in the Schedule for any described premises.

B. **Calculation Of The Deductible – Specific Insurance Other than Builders' Risk**

1. **Property Not Subject To Value Reporting Forms**

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

2. **Property Subject To Value Reporting Forms**

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is the latest value(s) shown in the most recent Report of Values on file with us.

   However:

   a. If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

   b. If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

C. **Calculation Of The Deductible – Blanket Insurance Other Than Builders' Risk**

1. **Property Not Subject To Value Reporting Forms**

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is that shown in the most recent Statement of Values on file with us.

2. **Property Subject To Value Reporting Forms**

   In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of that property as of the time of loss or damage.

D. **Calculation Of The Deductible – Builders' Risk Insurance**

1. **Builders' Risk Other Than Reporting Form**

   In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the actual cash value(s) of that property as of the time of loss or damage.

2. **Builders' Risk Reporting Form**

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is the actual cash value(s) shown in the most recent Report of Values on file with us.

   However:

   a. If the most recent Report of Values shows less than the actual cash value(s) of the property on the report date, we will determine the deductible amount as a percentage of the actual cash value(s) as of the report date.

   b. If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the actual cash value(s) of the property as of the time of loss or damage.

**Examples – Application Of Deductible**

**Example 1 – Specific Insurance (B.1.)**

The amount of loss to the damaged building is $60,000.

The value of the damaged building at time of loss is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the Coinsurance requirement is $80,000 (80% of $100,000).

The actual Limit of Insurance on the damaged building is $70,000.

The Deductible is 1%.

Step **(1):** $70,000 ÷ $80,000 = .875

Step **(2):** $60,000 x .875 = $52,500

Step **(3):** $70,000 x 1% = $700

Step **(4):** $52,500 − $700 = $51,800

The most we will pay is $51,800. The remainder of the loss, $8,200, is not covered due to the Coinsurance penalty for inadequate insurance (Steps **(1)** and **(2)**) and the application of the Deductible (Steps **(3)** and **(4)**).

### Example 2 – Specific Insurance (B.1.)

The amounts of loss to the damaged property are $60,000 (Building) and $40,000 (Personal Property in building).

The value of the damaged building at time of loss is $100,000. The value of the personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the Coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the personal property.

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the personal property (therefore, no Coinsurance penalty).

The Deductible is 2%.

### Building

Step **(1):** $80,000 x 2% = $1,600
Step **(2):** $60,000 − $1,600 = $58,400

### Personal Property

Step **(1):** $64,000 x 2% = $1,280
Step **(2):** $40,000 − $1,280 = $38,720

The most we will pay is $97,120. The portion of the total loss not covered due to application of the Deductible is $2,880.

### Example 3 – Blanket Insurance (C.1.)

The sum of the values of Building 1 ($500,000), Building 2 ($500,000) and Building 3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,800,000 (90% of $2,000,000).

The actual Blanket Limit Of Insurance covering Buildings 1, 2, and 3, shown in the Declarations, is $1,800,000 (therefore, no Coinsurance penalty).

Buildings 1 and 2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building 1) and $20,000 (Building 2).

The Deductible is 2%.

### Building 1

Step **(1):** $500,000 x 2% = $10,000
Step **(2):** $40,000 − $10,000 = $30,000

### Building 2

Step **(1):** $500,000 x 2% = $10,000
Step **(2):** $20,000 − $10,000 = $10,000

The most we will pay is $40,000. The portion of the total loss not covered due to application of the Deductible is $20,000.

### Example 4 – Blanket Insurance (C.1.)

The sum of the values of Building 1 ($500,000), Building 2 ($500,000), Personal Property at Building 1 ($250,000) and Personal Property at Building 2 ($250,000), as shown in the most recent Statement of Values on file with us, is $1,500,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,350,000 (90% of $1,500,000).

The actual Blanket Limit Of Insurance covering Buildings 1 and 2 and Personal Property at Buildings 1 and 2, shown in the Declarations, is $1,350,000. Therefore, there is no Coinsurance penalty.

Building 1 and Personal Property at Building 1 have sustained damage; the amounts of loss are $95,000 (Building) and $5,000 (Personal Property).

The Deductible is 5%.

### Building

Step **(1):** $500,000 x 5% = $25,000
Step **(2):** $95,000 − $25,000 = $70,000

### Personal Property

Step **(1):** $250,000 x 5% = $12,500

The loss, $5,000, does not exceed the Deductible.

The most we will pay is $70,000. The remainder of the building loss, $25,000, is not covered due to application of the Deductible. There is no loss payment for the personal property.

© Insurance Services Office, Inc., 2011

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

 © Insurance Services Office, Inc., 2011

INSURED

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

   **(a)** Foundations, walls, floors or paved surfaces;

   **(b)** Basements, whether paved or not; or

   **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungus", wet or dry rot or bacteria result from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) Electrical current, including arcing;

(b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) Pulse of electromagnetic energy; or

(d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

### 4. Special Exclusions

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2011

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2011

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

  **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment for loss under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

  **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

  **1. Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   **b.** Loss or damage must be caused by or result from one of the following causes of loss:

    **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

    **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

    **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   **c.** The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

  **2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

  **3. Glass**

   **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

© Insurance Services Office, Inc., 2011

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2011

POLICY NUMBER: MP0032006027342

**COMMERCIAL PROPERTY**
**CP 10 33 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THEFT EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – SPECIAL FORM

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 01 | 01 |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following is added to the **Exclusions** section:

We will not pay for loss or damage caused by or resulting from theft.

But we will pay for:

1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or

2. Building damage caused by the breaking in or exiting of burglars.

And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

CP 10 33 10 12

© Insurance Services Office, Inc., 2011

**Page 1 of 1**

INSURED

COMMERCIAL PROPERTY
CP 10 75 12 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**

CP 10 75 12 20                    © Insurance Services Office, Inc., 2020                    Page 1 of 1

INSURED

**IL 02 62 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

© ISO Properties, Inc., 2007
INSURED

**C.** The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

If the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

l 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

l 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

© ISO Properties, Inc., 2007

POLICY NUMBER: MP0032006027342                                                    IL 09 53 01 15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

IL 09 53 01 15                    ©  Insurance Services Office, Inc., 2015                    **Page 1 of 2**

INSURED

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

IL 09 53 01 15                    © Insurance Services Office, Inc., 2015                    Page 2 of 2



PLAINTIFFS'
EXHIBIT
B

Insured:   Maserati Event Center
Property:   548 Ellis St
           Augusta , GA 30901

Home:   (706) 627-7170
E-mail:   soultrysounds@yahoo.com

**Claim Number:** 22475952          **Policy Number:** MP0032006027342          **Type of Loss:**

Date of Loss:   4/14/2023 11:00 PM                Date Received:
Date Inspected:                                    Date Entered:   2/1/2024 12:53 PM

Price List:   GAAU8X_JAN24
              Restoration/Service/Remodel
Estimate:     MASERATI_EVENT_
              CENTE

MASERATI_EVENT_CENTE

### Carpeting

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1.  Floor Covering - Carpet (Bid Item) | 1.00 EA | 0.00 | 26,999.00 | 0.00 | 5,399.80 | 32,398.80 |
| Totals:  Carpeting | | | | 0.00 | 5,399.80 | 32,398.80 |

### Cabinet/Finish Carpentry

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 2.  Finish Carpentry / Trim (Bid Item) | 1.00 EA | 0.00 | 251,286.84 | 0.00 | 50,257.36 | 301,544.20 |
| Totals:  Cabinet/Finish Carpentry | | | | 0.00 | 50,257.36 | 301,544.20 |

### HVAC

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 3.  Heat, Vent, & Air Conditioning (Bid Item) | 1.00 EA | 0.00 | 99,857.00 | 0.00 | 19,971.40 | 119,828.40 |
| Totals:  HVAC | | | | 0.00 | 19,971.40 | 119,828.40 |

### Drywall

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 4.  Drywall (Bid Item) | 1.00 EA | 0.00 | 37,166.50 | 0.00 | 7,433.30 | 44,599.80 |
| Totals:  Drywall | | | | 0.00 | 7,433.30 | 44,599.80 |

### Tile

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 5.  Tile (Bid Item) | 1.00 EA | 0.00 | 26,026.00 | 0.00 | 5,205.20 | 31,231.20 |
| Totals:  Tile | | | | 0.00 | 5,205.20 | 31,231.20 |

### Electrical

### CONTINUED - Electrical

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 6. Electrical (Bid Item) | 1.00 EA | 0.00 | 388,915.00 | 0.00 | 77,783.00 | 466,698.00 |
| Totals: Electrical | | | | 0.00 | 77,783.00 | 466,698.00 |

#### Equipment

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 7. Equipment | 1.00 EA | 0.00 | 132,317.32 | 0.00 | 26,463.46 | 158,780.78 |
| Totals: Equipment | | | | 0.00 | 26,463.46 | 158,780.78 |

#### Plumbing

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 8. Plumbing (Bid Item) | 1.00 EA | 0.00 | 17,860.00 | 0.00 | 3,572.00 | 21,432.00 |
| Totals: Plumbing | | | | 0.00 | 3,572.00 | 21,432.00 |

#### Painting

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 9. Painting (Bid Item) | 1.00 EA | 0.00 | 4,500.00 | 0.00 | 900.00 | 5,400.00 |
| 10. Painting (Bid Item) | 1.00 EA | 0.00 | 40,000.00 | 0.00 | 8,000.00 | 48,000.00 |
| Totals: Painting | | | | 0.00 | 8,900.00 | 53,400.00 |

#### Building Supply

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 11. Framing & Rough Carpentry (Bid Item) | 1.00 EA | 0.00 | 113,125.00 | 0.00 | 22,625.00 | 135,750.00 |
| Totals: Building Supply | | | | 0.00 | 22,625.00 | 135,750.00 |

#### Roofing

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

**CONTINUED – Roofing**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 12.  Roofing (Bid Item) | 1.00 EA | 0.00 | 86,400.00 | 0.00 | 17,280.00 | 103,680.00 |
| Totals:  Roofing | | | | 0.00 | 17,280.00 | 103,680.00 |
| **Line Item Totals: MASERATI_EVENT_CENTE** | | | | **0.00** | **244,890.52** | **1,469,343.18** |

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 1,224,452.66 |
| Overhead | 122,445.26 |
| Profit | 122,445.26 |
| **Replacement Cost Value** | **$1,469,343.18** |
| **Net Claim** | **$1,469,343.18** |

## Recap by Room

**Estimate: MASERATI_EVENT_CENTE**

| | | |
|---|---:|---:|
| Carpeting | 26,999.00 | 2.20% |
| Cabinet/Finish Carpentry | 251,286.84 | 20.52% |
| HVAC | 99,857.00 | 8.16% |
| Drywall | 37,166.50 | 3.04% |
| Tile | 26,026.00 | 2.13% |
| Electrical | 388,915.00 | 31.76% |
| Equipment | 132,317.32 | 10.81% |
| Plumbing | 17,860.00 | 1.46% |
| Painting | 44,500.00 | 3.63% |
| Building Supply | 113,125.00 | 9.24% |
| Roofing | 86,400.00 | 7.06% |
| **Subtotal of Areas** | **1,224,452.66** | **100.00%** |
| **Total** | **1,224,452.66** | **100.00%** |

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| CONTENT MANIPULATION | 132,317.32 | 9.01% |
| DRYWALL | 37,166.50 | 2.53% |
| ELECTRICAL | 388,915.00 | 26.47% |
| FLOOR COVERING - CARPET | 26,999.00 | 1.84% |
| FINISH CARPENTRY / TRIMWORK | 251,286.84 | 17.10% |
| FRAMING & ROUGH CARPENTRY | 113,125.00 | 7.70% |
| HEAT,  VENT & AIR CONDITIONING | 99,857.00 | 6.80% |
| PLUMBING | 17,860.00 | 1.22% |
| PAINTING | 44,500.00 | 3.03% |
| ROOFING | 86,400.00 | 5.88% |
| TILE | 26,026.00 | 1.77% |
| **O&P Items Subtotal** | 1,224,452.66 | 83.33% |
| Overhead | 122,445.26 | 8.33% |
| Profit | 122,445.26 | 8.33% |
| **Total** | 1,469,343.18 | 100.00% |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

Insured:  Fred Gibbons
Business:  302 6th Street
          Augusta, GA 30901

Estimator:  Josh Birong                      Business:  (706) 799-9032
                                             E-mail:    j.birong@restoration1.com

**Claim Number:**              **Policy Number:**              **Type of Loss:**

Date of Loss:                      Date Received:
Date Inspected:                    Date Entered:    8/10/2023 9:41 AM

Price List:  GAAU8X_AUG23
             Restoration/Service/Remodel
Estimate:    FREDGIVENS-MITRV2



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**FREDGIVENS-MITRV2**

**Main Level**



| Stairwell | | Height: 26' 10" |
|---|---|---|
| 196.96 SF Walls | 112.70 SF Ceiling | |
| 309.66 SF Walls & Ceiling | 112.70 SF Floor | |
| 12.52 SY Flooring | 9.08 LF Floor Perimeter | |
| 53.00 LF Ceil. Perimeter | | |

Missing Wall - Goes to Floor          3' X 6' 8"          Opens into MAIN_ROOM

| Subroom: Stairs (2) | | Height: 26' 7" |
|---|---|---|
| 117.33 SF Walls | 14.25 SF Ceiling | |
| 131.58 SF Walls & Ceiling | 28.90 SF Floor | |
| 3.21 SY Flooring | 5.67 LF Floor Perimeter | |
| 4.75 LF Ceil. Perimeter | | |

Missing Wall          3' X 26' 6 11/16"          Opens into STAIRWELL
Missing Wall          3' X 26' 6 11/16"          Opens into STAIRS1

| Subroom: Stairs1 (3) | | Height: 22' 10" |
|---|---|---|
| 144.68 SF Walls | 10.03 SF Ceiling | |
| 154.71 SF Walls & Ceiling | 10.03 SF Floor | |
| 1.11 SY Flooring | 6.33 LF Floor Perimeter | |
| 6.33 LF Ceil. Perimeter | | |

Missing Wall          3' X 22' 10 1/8"          Opens into STAIRS
Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS2

| Subroom: Stairs2 (4) | | Height: 22' 10" |
|---|---|---|
| 220.63 SF Walls | 37.74 SF Ceiling | |
| 258.37 SF Walls & Ceiling | 66.87 SF Floor | |
| 7.43 SY Flooring | 14.38 LF Floor Perimeter | |
| 11.92 LF Ceil. Perimeter | | |

Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS1
Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS3
Missing Wall          11' 9" X 22' 10 1/8"          Opens into STAIRWELL



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Subroom: Stairs3 (5)**                                                                              **Height: 14' 2"**

| | |
|---|---|
| 89.84 SF Walls | 10.03 SF Ceiling |
| 99.87 SF Walls & Ceiling | 10.03 SF Floor |
| 1.11 SY Flooring | 6.33 LF Floor Perimeter |
| 6.33 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS2 |
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS4 |

**Subroom: Stairs4 (6)**                                                                              **Height: 14' 2"**



| | |
|---|---|
| 93.36 SF Walls | 26.65 SF Ceiling |
| 120.02 SF Walls & Ceiling | 47.43 SF Floor |
| 5.27 SY Flooring | 10.09 LF Floor Perimeter |
| 8.42 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS3 |
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS5 |
| Missing Wall | 8' 5" X 14' 2 1/4" | Opens into STAIRWELL |

**Subroom: Stairs5 (1)**                                                                              **Height: 8'**



| | |
|---|---|
| 167.33 SF Walls | 56.21 SF Ceiling |
| 223.54 SF Walls & Ceiling | 56.21 SF Floor |
| 6.25 SY Flooring | 20.92 LF Floor Perimeter |
| 20.92 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Missing Wall | 3' 2" X 8' | Opens into STAIRS4 |
| Missing Wall | 3' 2" X 8' | Opens into STAIRWELL |
| Missing Wall | 14' 7" X 8' | Opens into STAIRWELL |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Tear out wet drywall, no bagging - Cat 3 | 1,297.74 SF | 1.43 | 0.00 | 1,855.77 | (0.00) | 1,855.77 |
| 2. Clean the walls and ceiling - Heavy | 1,297.74 SF | 0.86 | 1.04 | 1,117.10 | (0.00) | 1,117.10 |
| 3. Clean floor - tile - Heavy clean | 332.16 SF | 1.10 | 1.59 | 366.97 | (0.00) | 366.97 |
| 4. Clean balustrade - Heavy | 80.00 LF | 4.70 | 0.26 | 376.26 | (0.00) | 376.26 |
| 5. Clean stair riser - per side - per LF | 182.00 LF | 0.70 | 0.15 | 127.55 | (0.00) | 127.55 |
| 6. Clean stud wall - Heavy | 120.00 SF | 2.08 | 0.19 | 249.79 | (0.00) | 249.79 |
| 7. Additional cost for high wall or ceiling - Over 14' | 1,719.27 SF | 0.09 | 0.00 | 154.73 | (0.00) | 154.73 |
| 8. Additional cost for high wall or ceiling - 11' to 14' | 335.00 SF | 0.06 | 0.00 | 20.10 | (0.00) | 20.10 |
| 9. Deodorization chamber - Ozone treatment | 8,913.03 CF | 0.11 | 0.00 | 980.43 | (0.00) | 980.43 |
| 10. HEPA Vacuuming - Detailed - (PER SF) | 1,297.74 SF | 1.03 | 0.00 | 1,336.67 | (0.00) | 1,336.67 |
| 11. Seal stud wall for odor control (shellac) | 1,030.13 SF | 1.60 | 28.84 | 1,677.05 | (0.00) | 1,677.05 |
| 12. Seal floor or ceiling joist system (shellac) | 332.16 SF | 2.18 | 10.90 | 735.01 | (0.00) | 735.01 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Stairwell**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 13. Accelerator Alkaline Booster* | 1,297.74 SF | 1.80 | 0.00 | 2,335.93 | (0.00) | 2,335.93 |
| **Totals: Stairwell** | | | 42.97 | 11,333.36 | 0.00 | 11,333.36 |

**Raised Sitting Area**                                                        **Height: 13'**

| | |
|---|---|
| 817.50 SF Walls | 314.59 SF Ceiling |
| 1132.09 SF Walls & Ceiling | 314.59 SF Floor |
| 34.95 SY Flooring | 92.25 LF Floor Perimeter |
| 49.83 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Missing Wall - Goes to Ceiling** | 25' 3" X 9' | Opens into MAIN_ROOM |
| **Missing Wall - Goes to Ceiling** | 9' 9" X 9' | Opens into MAIN_ROOM |
| **Missing Wall** | 7' 5" X 13' | Opens into MAIN_ROOM |
| **Missing Wall - Goes to Ceiling** | 7' 5" X 9' | Opens into MAIN_ROOM |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 14. Water extraction from hard surface floor - Cat 3 water | 314.59 SF | 0.98 | 0.00 | 308.30 | (0.00) | 308.30 |
| 15. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 314.59 SF | 1.91 | 1.51 | 602.38 | (0.00) | 602.38 |
| 16. Remove wet ceiling tile & drywall and bag - Cat 3 | 314.59 SF | 2.48 | 2.77 | 782.95 | (0.00) | 782.95 |
| 17. Remove Suspended ceiling grid - 2' x 2' | 314.59 SF | 0.35 | 0.00 | 110.11 | (0.00) | 110.11 |
| 18. Clean the floor - Heavy | 314.59 SF | 0.86 | 0.25 | 270.80 | (0.00) | 270.80 |
| 19. Clean with pressure/chemical spray - Heavy | 500.00 SF | 0.68 | 0.40 | 340.40 | (0.00) | 340.40 |
| 20. Deodorization chamber - Ozone treatment | 4,089.67 CF | 0.11 | 0.00 | 449.86 | (0.00) | 449.86 |
| 21. HEPA Vacuuming - Detailed - (PER SF) | 1,132.09 SF | 1.03 | 0.00 | 1,166.05 | (0.00) | 1,166.05 |
| **Totals: Raised Sitting Area** | | | 4.93 | 4,030.85 | 0.00 | 4,030.85 |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Kitchen**                                                                                            **Height: 12'**

| | |
|---|---|
| 1616.00 SF Walls | 834.08 SF Ceiling |
| 2450.08 SF Walls & Ceiling | 834.08 SF Floor |
| 92.68 SY Flooring | 134.67 LF Floor Perimeter |
| 134.67 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 22. Remove wet ceiling tile & drywall and bag - Cat 3 | 834.08 SF | 2.48 | 7.34 | 2,075.86 | (0.00) | 2,075.86 |
| 23. Remove Suspended ceiling grid - 2' x 2' | 834.08 SF | 0.35 | 0.00 | 291.93 | (0.00) | 291.93 |
| 24. Remove Fluorescent light fixture | 9.00 EA | 17.53 | 0.00 | 157.77 | (0.00) | 157.77 |
| 25. Clean floor - tile - Heavy clean | 834.08 SF | 1.10 | 4.00 | 921.49 | (0.00) | 921.49 |
| 26. Clean the walls and ceiling - Heavy | 2,450.08 SF | 0.86 | 1.96 | 2,109.03 | (0.00) | 2,109.03 |
| 27. Deodorization chamber - Ozone treatment | 10,008. CF 98 | 0.11 | 0.00 | 1,100.99 | (0.00) | 1,100.99 |
| 28. HEPA Vacuuming - Detailed - (PER SF) | 2,450.08 SF | 1.03 | 0.00 | 2,523.58 | (0.00) | 2,523.58 |
| **Totals: Kitchen** | | | **13.30** | **9,180.65** | **0.00** | **9,180.65** |



**Downstairs Hallway**                                                                                 **Height: 12'**

| | |
|---|---|
| 526.00 SF Walls | 101.78 SF Ceiling |
| 627.78 SF Walls & Ceiling | 101.78 SF Floor |
| 11.31 SY Flooring | 43.83 LF Floor Perimeter |
| 43.83 LF Ceil. Perimeter | |

**Missing Wall**                          **5' 4" X 12'**                    **Opens into MAIN_ROOM**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 29. Remove wet ceiling tile & drywall and bag - Cat 3 | 101.78 SF | 2.48 | 0.90 | 253.31 | (0.00) | 253.31 |
| 30. Remove Suspended ceiling grid - 2' x 2' | 101.78 SF | 0.35 | 0.00 | 35.62 | (0.00) | 35.62 |
| 31. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| 32. Clean floor - tile - Heavy clean | 101.78 SF | 1.10 | 0.49 | 112.45 | (0.00) | 112.45 |
| 33. Clean the walls and ceiling - Heavy | 627.78 SF | 0.86 | 0.50 | 540.39 | (0.00) | 540.39 |
| 34. Deodorization chamber - Ozone treatment | 1,221.33 CF | 0.11 | 0.00 | 134.35 | (0.00) | 134.35 |
| 35. HEPA Vacuuming - Detailed - (PER SF) | 627.78 SF | 1.03 | 0.00 | 646.61 | (0.00) | 646.61 |
| **Totals: Downstairs Hallway** | | | **1.89** | **1,754.20** | **0.00** | **1,754.20** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Men's Restroom**  Height: 12'

| | |
|---|---|
| 540.00 SF Walls | 120.72 SF Ceiling |
| 660.72 SF Walls & Ceiling | 120.72 SF Floor |
| 13.41 SY Flooring | 45.00 LF Floor Perimeter |
| 45.00 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 36. Remove wet ceiling tile & drywall and bag - Cat 3 | 120.72 SF | 2.48 | 1.06 | 300.45 | (0.00) | 300.45 |
| 37. Remove Suspended ceiling grid - 2' x 2' | 120.72 SF | 0.35 | 0.00 | 42.25 | (0.00) | 42.25 |
| 38. Clean the walls and ceiling - Heavy | 660.72 SF | 0.86 | 0.53 | 568.75 | (0.00) | 568.75 |
| 39. Clean floor - tile - Heavy clean | 120.72 SF | 1.10 | 0.58 | 133.37 | (0.00) | 133.37 |
| 40. Deodorization chamber - Ozone treatment | 1,448.67 CF | 0.11 | 0.00 | 159.35 | (0.00) | 159.35 |
| 41. HEPA Vacuuming - Detailed - (PER SF) | 660.72 SF | 1.03 | 0.00 | 680.54 | (0.00) | 680.54 |
| 42. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| **Totals: Men's Restroom** | | | **2.17** | **1,916.18** | **0.00** | **1,916.18** |

**Women's Restroom**  Height: 12'

| | |
|---|---|
| 656.00 SF Walls | 163.42 SF Ceiling |
| 819.42 SF Walls & Ceiling | 163.42 SF Floor |
| 18.16 SY Flooring | 54.67 LF Floor Perimeter |
| 54.67 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 43. Remove wet ceiling tile & drywall and bag - Cat 3 | 163.42 SF | 2.48 | 1.44 | 406.72 | (0.00) | 406.72 |
| 44. Suspended ceiling grid - Detach & reset | 163.42 SF | 2.21 | 0.00 | 361.16 | (0.00) | 361.16 |
| 45. Clean suspended ceiling grid | 163.42 SF | 0.39 | 0.13 | 63.86 | (0.00) | 63.86 |
| 46. Clean floor - tile - Heavy clean | 163.42 SF | 1.10 | 0.78 | 180.54 | (0.00) | 180.54 |
| 47. Clean the walls and ceiling - Heavy | 819.42 SF | 0.86 | 0.66 | 705.36 | (0.00) | 705.36 |
| 48. Deodorization chamber - Ozone treatment | 1,961.00 CF | 0.11 | 0.00 | 215.71 | (0.00) | 215.71 |
| 49. HEPA Vacuuming - Detailed - (PER SF) | 819.42 SF | 1.03 | 0.00 | 844.00 | (0.00) | 844.00 |
| 50. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| **Totals: Women's Restroom** | | | **3.01** | **2,808.82** | **0.00** | **2,808.82** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Walk-in Freezer**                                                          **Height: 12'**

| 374.00 SF Walls | 56.54 SF Ceiling |
|---|---|
| 430.54 SF Walls & Ceiling | 56.54 SF Floor |
| 6.28 SY Flooring | 31.17 LF Floor Perimeter |
| 31.17 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 51. Clean floor - tile - Heavy clean | 56.54 SF | 1.10 | 0.27 | 62.46 | (0.00) | 62.46 |
| 52. Clean the walls and ceiling - Heavy | 430.54 SF | 0.86 | 0.34 | 370.60 | (0.00) | 370.60 |
| 53. Deodorization chamber - Ozone treatment | 678.50 CF | 0.11 | 0.00 | 74.64 | (0.00) | 74.64 |
| 54. HEPA Vacuuming - Detailed - (PER SF) | 430.54 SF | 1.03 | 0.00 | 443.46 | (0.00) | 443.46 |
| **Totals: Walk-in Freezer** | | | **0.61** | **951.16** | **0.00** | **951.16** |



**Utility Closet**                                                          **Height: 12'**

| 355.32 SF Walls | 47.76 SF Ceiling |
|---|---|
| 403.08 SF Walls & Ceiling | 47.76 SF Floor |
| 5.31 SY Flooring | 29.61 LF Floor Perimeter |
| 29.61 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 55. Clean floor - tile - Heavy clean | 47.76 SF | 1.10 | 0.23 | 52.77 | (0.00) | 52.77 |
| 56. Clean the walls and ceiling - Heavy | 403.08 SF | 0.86 | 0.32 | 346.97 | (0.00) | 346.97 |
| 57. Deodorization chamber - Ozone treatment | 573.13 CF | 0.11 | 0.00 | 63.04 | (0.00) | 63.04 |
| 58. HEPA Vacuuming - Detailed - (PER SF) | 403.08 SF | 1.03 | 0.00 | 415.17 | (0.00) | 415.17 |
| **Totals: Utility Closet** | | | **0.55** | **877.95** | **0.00** | **877.95** |



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



| Main Room | | Height: 14' |
|---|---|---|
| 2298.12 SF Walls | 1897.47 SF Ceiling | |
| 4195.59 SF Walls & Ceiling | 1897.47 SF Floor | |
| 210.83 SY Flooring | 193.99 LF Floor Perimeter | |
| 148.91 LF Ceil. Perimeter | | |

| | | |
|---|---|---|
| **Missing Wall - Goes to Ceiling** | 25' 3" X 10' | **Opens into RAISED_SITTI** |
| **Missing Wall - Goes to Ceiling** | 9' 9" X 10' | **Opens into RAISED_SITTI** |
| **Missing Wall** | 7' 5" X 14' | **Opens into RAISED_SITTI** |
| **Missing Wall - Goes to Floor** | 3' X 6' 8" | **Opens into STAIRWELL** |
| **Missing Wall - Goes to Ceiling** | 5' 6" X 6' 11" | **Opens into MAIN_ROOM** |
| **Missing Wall** | 5' 4" X 14' | **Opens into DOWNSTAIRS_H** |
| **Missing Wall - Goes to Ceiling** | 7' 5" X 10' | **Opens into RAISED_SITTI** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 59.  Water extraction from hard surface floor - Cat 3 water | 379.49 SF | 0.98 | 0.00 | 371.90 | (0.00) | 371.90 |
| 60.  Remove wet ceiling tile & drywall and bag - Cat 3 | 1,897.47 SF | 2.48 | 16.70 | 4,722.43 | (0.00) | 4,722.43 |
| 61.  Remove Suspended ceiling grid - 2' x 2' | 1,897.47 SF | 0.35 | 0.00 | 664.11 | (0.00) | 664.11 |
| 62.  Remove Light fixture | 30.00 EA | 10.49 | 0.00 | 314.70 | (0.00) | 314.70 |
| 63.  Clean floor - tile - Heavy clean | 1,897.47 SF | 1.10 | 9.11 | 2,096.33 | (0.00) | 2,096.33 |
| 64.  Clean with pressure/chemical spray - Heavy | 1,200.00 SF | 0.68 | 0.96 | 816.96 | (0.00) | 816.96 |
| 65.  Clean part of the walls and ceiling - Heavy | 2,995.59 SF | 0.86 | 2.40 | 2,578.61 | (0.00) | 2,578.61 |
| 66.  Clean cabinetry - lower - inside and out | 39.00 LF | 18.48 | 0.28 | 721.00 | (0.00) | 721.00 |
| 67.  Deodorization chamber - Ozone treatment | 26,564. CF 53 | 0.11 | 0.00 | 2,922.10 | (0.00) | 2,922.10 |
| 68.  HEPA Vacuuming - Detailed - (PER SF) | 4,195.59 SF | 1.03 | 0.00 | 4,321.46 | (0.00) | 4,321.46 |

| **Totals:  Main Room** | | | **29.45** | **19,529.60** | **0.00** | **19,529.60** |
|---|---|---|---|---|---|---|



| Kitchen Storage | | Height: 8' |
|---|---|---|
| 297.33 SF Walls | 70.67 SF Ceiling | |
| 368.00 SF Walls & Ceiling | 70.67 SF Floor | |
| 7.85 SY Flooring | 37.17 LF Floor Perimeter | |
| 37.17 LF Ceil. Perimeter | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 69.  Remove wet ceiling tile & drywall and bag - Cat 3 | 70.67 SF | 2.48 | 0.62 | 175.88 | (0.00) | 175.88 |
| 70.  Remove Suspended ceiling grid - 2' x 2' | 70.67 SF | 0.35 | 0.00 | 24.73 | (0.00) | 24.73 |
| 71.  Clean suspended ceiling grid | 70.67 SF | 0.39 | 0.06 | 27.62 | (0.00) | 27.62 |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Kitchen Storage**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 72. Clean the walls and ceiling - Heavy | 368.00 SF | 0.86 | 0.29 | 316.77 | (0.00) | 316.77 |
| 73. Clean floor - tile - Heavy clean | 70.67 SF | 1.10 | 0.34 | 78.08 | (0.00) | 78.08 |
| 74. Deodorization chamber - Ozone treatment | 565.33 CF | 0.11 | 0.00 | 62.19 | (0.00) | 62.19 |
| 75. HEPA Vacuuming - Detailed - (PER SF) | 368.00 SF | 1.03 | 0.00 | 379.04 | (0.00) | 379.04 |
| **Totals: Kitchen Storage** | | | **1.31** | **1,064.31** | **0.00** | **1,064.31** |
| **Total: Main Level** | | | **100.19** | **53,447.08** | **0.00** | **53,447.08** |

## Level 2

Level 2

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 76. Remove Recessed light fixture | 45.00 EA | 14.01 | 0.00 | 630.45 | (0.00) | 630.45 |
| 77. Remove Light fixture | 10.00 EA | 10.49 | 0.00 | 104.90 | (0.00) | 104.90 |
| 78. Remove Heat/AC register - Mechanically attached | 27.00 EA | 3.15 | 0.00 | 85.05 | (0.00) | 85.05 |
| **Total: Level 2** | | | **0.00** | **820.40** | **0.00** | **820.40** |



**Main Upstairs Hallway**                                                 **Height: 12'**

1044.90 SF Walls                    277.09 SF Ceiling
1321.99 SF Walls & Ceiling          277.09 SF Floor
30.79 SY Flooring                   80.59 LF Floor Perimeter
95.18 LF Ceil. Perimeter

| **Missing Wall - Goes to Floor** | 3' 4" X 6' 8" | **Opens into Exterior** |
|---|---|---|
| **Missing Wall - Goes to Floor** | 4' X 6' 8" | **Opens into WOMENS_RESTR** |
| **Missing Wall - Goes to Floor** | 4' X 6' 8" | **Opens into MENS_RESTROO** |
| **Missing Wall - Goes to Floor** | 3' 3" X 6' 8" | **Opens into SIDE_UPSTAIR** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 79. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 277.09 SF | 1.91 | 1.33 | 530.57 | (0.00) | 530.57 |
| 80. Additional cost for high wall or ceiling - 11' to 14' | 372.27 SF | 0.06 | 0.00 | 22.34 | (0.00) | 22.34 |
| 81. Deodorization chamber - Ozone treatment | 3,325.12 CF | 0.11 | 0.00 | 365.76 | (0.00) | 365.76 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - Main Upstairs Hallway

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 82. HEPA Vacuuming - Detailed - (PER SF) | 1,321.99 SF | 1.03 | 0.00 | 1,361.65 | (0.00) | 1,361.65 |
| 83. Tear out wet drywall, cleanup, bag - Cat 3 | 1,321.99 SF | 2.00 | 17.98 | 2,661.96 | (0.00) | 2,661.96 |
| 84. Tear out trim and bag for disposal - up to Cat 3 | 95.18 LF | 1.20 | 1.37 | 115.59 | (0.00) | 115.59 |
| 85. Clean floor or roof joist system - Heavy | 277.09 SF | 1.68 | 0.44 | 465.95 | (0.00) | 465.95 |
| 86. Clean stud wall - Heavy | 1,044.90 SF | 1.35 | 1.67 | 1,412.29 | (0.00) | 1,412.29 |
| 87. Seal stud wall for odor control (shellac) | 1,044.90 SF | 1.60 | 29.26 | 1,701.10 | (0.00) | 1,701.10 |
| 88. Seal floor or ceiling joist system (shellac) | 277.09 SF | 2.18 | 9.09 | 613.15 | (0.00) | 613.15 |
| 89. Accelerator Alkaline Booster* | 1,321.99 SF | 1.80 | 0.00 | 2,379.58 | (0.00) | 2,379.58 |
| **Totals: Main Upstairs Hallway** | | | **61.14** | **11,629.94** | **0.00** | **11,629.94** |

### WH Room         Height: 12'

396.00 SF Walls                  67.72 SF Ceiling
463.72 SF Walls & Ceiling     67.72 SF Floor
7.52 SY Flooring              67.72 SF Floor
33.00 LF Ceil. Perimeter      33.00 LF Floor Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 90. Clean more than the walls and ceiling - Heavy | 531.44 SF | 0.86 | 0.42 | 457.46 | (0.00) | 457.46 |
| 91. Additional cost for high wall or ceiling - 11' to 14' | 100.72 SF | 0.06 | 0.00 | 6.04 | (0.00) | 6.04 |
| 92. Deodorization chamber - Ozone treatment | 812.67 CF | 0.11 | 0.00 | 89.39 | (0.00) | 89.39 |
| 93. HEPA Vacuuming - Detailed - (PER SF) | 463.72 SF | 1.03 | 0.00 | 477.63 | (0.00) | 477.63 |
| 94. Accelerator Alkaline Booster* | 463.72 SF | 1.80 | 0.00 | 834.70 | (0.00) | 834.70 |
| **Totals: WH Room** | | | **0.42** | **1,865.22** | **0.00** | **1,865.22** |

### Side Upstairs Hallway         Height: 12'



526.33 SF Walls              93.33 SF Ceiling
619.67 SF Walls & Ceiling     93.33 SF Floor
10.37 SY Flooring           93.33 SF Floor
45.67 LF Ceil. Perimeter     42.42 LF Floor Perimeter

**Missing Wall - Goes to Floor**     3' 3" X 6' 8"     Opens into MAIN_UPSTAIR



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 95.  Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 93.33 SF | 1.91 | 0.45 | 178.71 | (0.00) | 178.71 |
| 96.  Clean more than the walls and ceiling - Heavy | 713.00 SF | 0.86 | 0.57 | 613.75 | (0.00) | 613.75 |
| 97.  Additional cost for high wall or ceiling - 11' to 14' | 139.00 SF | 0.06 | 0.00 | 8.34 | (0.00) | 8.34 |
| 98.  HEPA Vacuuming - Detailed - (PER SF) | 619.67 SF | 1.03 | 0.00 | 638.26 | (0.00) | 638.26 |
| 99.  Deodorization chamber - Ozone treatment | 1,120.00 CF | 0.11 | 0.00 | 123.20 | (0.00) | 123.20 |
| 100.  Tear out wet drywall, cleanup, bag - Cat 3 | 619.67 SF | 2.00 | 8.43 | 1,247.77 | (0.00) | 1,247.77 |
| 101.  Tear out trim and bag for disposal - up to Cat 3 | 45.67 LF | 1.20 | 0.66 | 55.46 | (0.00) | 55.46 |
| 102.  Clean floor or roof joist system - Heavy | 93.33 SF | 1.68 | 0.15 | 156.94 | (0.00) | 156.94 |
| 103.  Clean stud wall - Heavy | 526.33 SF | 1.35 | 0.84 | 711.39 | (0.00) | 711.39 |
| 104.  Seal stud wall for odor control (shellac) | 526.33 SF | 1.60 | 14.74 | 856.87 | (0.00) | 856.87 |
| 105.  Seal floor or ceiling joist system (shellac) | 93.33 SF | 2.18 | 3.06 | 206.52 | (0.00) | 206.52 |
| 106.  Accelerator Alkaline Booster* | 619.67 SF | 1.80 | 0.00 | 1,115.41 | (0.00) | 1,115.41 |
| **Totals: Side Upstairs Hallway** | | | **28.90** | **5,912.62** | **0.00** | **5,912.62** |



**Side Room**                                                               **Height: 12'**

674.00 SF Walls                       185.21 SF Ceiling
859.21 SF Walls & Ceiling             185.21 SF Floor
20.58 SY Flooring                     56.17 LF Floor Perimeter
56.17 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 107.  Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 185.21 SF | 1.91 | 0.89 | 354.64 | (0.00) | 354.64 |
| 108.  Clean more than the walls and ceiling - Heavy | 1,044.42 SF | 0.86 | 0.84 | 899.04 | (0.00) | 899.04 |
| 109.  Additional cost for high wall or ceiling - 11' to 14' | 241.38 SF | 0.06 | 0.00 | 14.48 | (0.00) | 14.48 |
| 110.  Deodorization chamber - Ozone treatment | 2,222.50 CF | 0.11 | 0.00 | 244.48 | (0.00) | 244.48 |
| 111.  HEPA Vacuuming - Detailed - (PER SF) | 859.21 SF | 1.03 | 0.00 | 884.99 | (0.00) | 884.99 |
| 112.  Tear out wet drywall, cleanup, bag - Cat 3 | 859.21 SF | 2.00 | 11.69 | 1,730.11 | (0.00) | 1,730.11 |
| 113.  Tear out trim and bag for disposal - up to Cat 3 | 56.17 LF | 1.20 | 0.81 | 68.21 | (0.00) | 68.21 |
| 114.  Clean floor or roof joist system - Heavy | 185.21 SF | 1.68 | 0.30 | 311.45 | (0.00) | 311.45 |
| 115.  Clean stud wall - Heavy | 674.00 SF | 1.35 | 1.08 | 910.98 | (0.00) | 910.98 |
| 116.  Seal stud wall for odor control (shellac) | 674.00 SF | 1.60 | 18.87 | 1,097.27 | (0.00) | 1,097.27 |
| 117.  Seal floor or ceiling joist system (shellac) | 185.21 SF | 2.18 | 6.08 | 409.84 | (0.00) | 409.84 |
| 118.  Accelerator Alkaline Booster* | 859.21 SF | 1.80 | 0.00 | 1,546.58 | (0.00) | 1,546.58 |
| **Totals: Side Room** | | | **40.56** | **8,472.07** | **0.00** | **8,472.07** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Backroom**                                                          Height: 12'

| | |
|---|---|
| 782.00 SF Walls | 263.96 SF Ceiling |
| 1045.96 SF Walls & Ceiling | 263.96 SF Floor |
| 29.33 SY Flooring | 65.17 LF Floor Perimeter |
| 65.17 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 119. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 263.96 SF | 1.91 | 1.27 | 505.43 | (0.00) | 505.43 |
| 120. Clean more than the walls and ceiling - Heavy | 1,309.92 SF | 0.86 | 1.05 | 1,127.58 | (0.00) | 1,127.58 |
| 121. Additional cost for high wall or ceiling - 11' to 14' | 329.13 SF | 0.06 | 0.00 | 19.75 | (0.00) | 19.75 |
| 122. Deodorization chamber - Ozone treatment | 3,167.50 CF | 0.11 | 0.00 | 348.43 | (0.00) | 348.43 |
| 123. HEPA Vacuuming - Detailed - (PER SF) | 1,045.96 SF | 1.03 | 0.00 | 1,077.34 | (0.00) | 1,077.34 |
| 124. Tear out wet drywall, cleanup, bag - Cat 3 | 1,045.96 SF | 2.00 | 14.22 | 2,106.14 | (0.00) | 2,106.14 |
| 125. Tear out trim and bag for disposal - up to Cat 3 | 65.17 LF | 1.20 | 0.94 | 79.14 | (0.00) | 79.14 |
| 126. Clean floor or roof joist system - Heavy | 263.96 SF | 1.68 | 0.42 | 443.87 | (0.00) | 443.87 |
| 127. Clean stud wall - Heavy | 782.00 SF | 1.35 | 1.25 | 1,056.95 | (0.00) | 1,056.95 |
| 128. Seal stud wall for odor control (shellac) | 782.00 SF | 1.60 | 21.90 | 1,273.10 | (0.00) | 1,273.10 |
| 129. Seal floor or ceiling joist system (shellac) | 263.96 SF | 2.18 | 8.66 | 584.09 | (0.00) | 584.09 |
| 130. Accelerator Alkaline Booster* | 1,045.96 SF | 1.80 | 0.00 | 1,882.73 | (0.00) | 1,882.73 |
| **Totals: Backroom** | | | **49.71** | **10,504.55** | **0.00** | **10,504.55** |



**Attic Access**                                                     Height: 12'

| | |
|---|---|
| 216.00 SF Walls | 19.91 SF Ceiling |
| 235.91 SF Walls & Ceiling | 19.91 SF Floor |
| 2.21 SY Flooring | 18.00 LF Floor Perimeter |
| 18.00 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 131. Clean more than the walls and ceiling - Heavy | 255.82 SF | 0.86 | 0.20 | 220.21 | (0.00) | 220.21 |
| 132. Additional cost for high wall or ceiling - 11' to 14' | 37.91 SF | 0.06 | 0.00 | 2.27 | (0.00) | 2.27 |
| 133. Deodorization chamber - Ozone treatment | 238.92 CF | 0.11 | 0.00 | 26.28 | (0.00) | 26.28 |
| 134. HEPA Vacuuming - Detailed - (PER SF) | 235.91 SF | 1.03 | 0.00 | 242.99 | (0.00) | 242.99 |
| 135. Tear out wet drywall, cleanup, bag - Cat 3 | 235.91 SF | 2.00 | 3.21 | 475.03 | (0.00) | 475.03 |
| 136. Tear out trim and bag for disposal - up to Cat 3 | 18.00 LF | 1.20 | 0.26 | 21.86 | (0.00) | 21.86 |
| 137. Clean floor or roof joist system - Heavy | 19.91 SF | 1.68 | 0.03 | 33.48 | (0.00) | 33.48 |
| 138. Clean stud wall - Heavy | 216.00 SF | 1.35 | 0.35 | 291.95 | (0.00) | 291.95 |
| 139. Seal stud wall for odor control (shellac) | 216.00 SF | 1.60 | 6.05 | 351.65 | (0.00) | 351.65 |
| 140. Seal floor or ceiling joist system (shellac) | 19.91 SF | 2.18 | 0.65 | 44.05 | (0.00) | 44.05 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Attic Access**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 141. Accelerator Alkaline Booster* | 235.91 SF | 1.80 | 0.00 | 424.64 | (0.00) | 424.64 |
| **Totals: Attic Access** | | | 10.75 | 2,134.41 | 0.00 | 2,134.41 |



| | **Power Box Room** | | | **Height: 12'** |
|---|---|---|---|---|
| | 384.00 SF Walls | | 47.33 SF Ceiling | |
| | 431.33 SF Walls & Ceiling | | 47.33 SF Floor | |
| | 5.26 SY Flooring | | 32.00 LF Floor Perimeter | |
| | 32.00 LF Ceil. Perimeter | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 142. Clean more than the walls and ceiling - Heavy | 478.65 SF | 0.86 | 0.38 | 412.02 | (0.00) | 412.02 |
| 143. Additional cost for high wall or ceiling - 11' to 14' | 79.33 SF | 0.06 | 0.00 | 4.76 | (0.00) | 4.76 |
| 144. Deodorization chamber - Ozone treatment | 567.92 CF | 0.11 | 0.00 | 62.47 | (0.00) | 62.47 |
| 145. HEPA Vacuuming - Detailed - (PER SF) | 431.33 SF | 1.03 | 0.00 | 444.27 | (0.00) | 444.27 |
| 146. Tear out wet drywall, cleanup, bag - Cat 3 | 431.33 SF | 2.00 | 5.87 | 868.53 | (0.00) | 868.53 |
| 147. Tear out trim and bag for disposal - up to Cat 3 | 32.00 LF | 1.20 | 0.46 | 38.86 | (0.00) | 38.86 |
| 148. Clean floor or roof joist system - Heavy | 47.33 SF | 1.68 | 0.08 | 79.59 | (0.00) | 79.59 |
| 149. Clean stud wall - Heavy | 384.00 SF | 1.35 | 0.61 | 519.01 | (0.00) | 519.01 |
| 150. Seal stud wall for odor control (shellac) | 384.00 SF | 1.60 | 10.75 | 625.15 | (0.00) | 625.15 |
| 151. Seal floor or ceiling joist system (shellac) | 47.33 SF | 2.18 | 1.55 | 104.73 | (0.00) | 104.73 |
| 152. Accelerator Alkaline Booster® | 431.33 SF | 1.80 | 0.00 | 776.39 | (0.00) | 776.39 |
| **Totals: Power Box Room** | | | 19.70 | 3,935.78 | 0.00 | 3,935.78 |



| | **GRA Closet** | | | **Height: 12'** |
|---|---|---|---|---|
| | 269.39 SF Walls | | 26.93 SF Ceiling | |
| | 296.32 SF Walls & Ceiling | | 26.93 SF Floor | |
| | 2.99 SY Flooring | | 22.45 LF Floor Perimeter | |
| | 22.45 LF Ceil. Perimeter | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|

## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - GRA Closet**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 153. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 26.93 SF | 1.91 | 0.13 | 51.57 | (0.00) | 51.57 |
| 154. Clean more than the walls and ceiling - Heavy | 323.25 SF | 0.86 | 0.26 | 278.26 | (0.00) | 278.26 |
| 155. Additional cost for high wall or ceiling - 11' to 14' | 49.38 SF | 0.06 | 0.00 | 2.96 | (0.00) | 2.96 |
| 156. Deodorization chamber - Ozone treatment | 323.15 CF | 0.11 | 0.00 | 35.55 | (0.00) | 35.55 |
| 157. HEPA Vacuuming - Detailed - (PER SF) | 296.32 SF | 1.03 | 0.00 | 305.21 | (0.00) | 305.21 |
| 158. Tear out wet drywall, cleanup, bag - Cat 3 | 296.32 SF | 2.00 | 4.03 | 596.67 | (0.00) | 596.67 |
| 159. Tear out trim and bag for disposal - up to Cat 3 | 22.45 LF | 1.20 | 0.32 | 27.26 | (0.00) | 27.26 |
| 160. Clean floor or roof joist system - Heavy | 26.93 SF | 1.68 | 0.04 | 45.28 | (0.00) | 45.28 |
| 161. Clean stud wall - Heavy | 269.39 SF | 1.35 | 0.43 | 364.11 | (0.00) | 364.11 |
| 162. Seal stud wall for odor control (shellac) | 269.39 SF | 1.60 | 7.54 | 438.56 | (0.00) | 438.56 |
| 163. Seal floor or ceiling joist system (shellac) | 26.93 SF | 2.18 | 0.88 | 59.59 | (0.00) | 59.59 |
| 164. Accelerator Alkaline Booster* | 296.32 SF | 1.80 | 0.00 | 533.38 | (0.00) | 533.38 |
| **Totals: GRA Closet** | | | **13.63** | **2,738.40** | **0.00** | **2,738.40** |



**Great Room Addition**                                         **Height: 12'**

| | | |
|---|---|---|
| 742.57 SF Walls | 249.54 SF Ceiling | |
| 992.11 SF Walls & Ceiling | 249.54 SF Floor | |
| 27.73 SY Flooring | 61.88 LF Floor Perimeter | |
| 61.88 LF Ceil. Perimeter | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 165. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 249.54 SF | 1.91 | 1.20 | 477.82 | (0.00) | 477.82 |
| 166. Clean more than the walls and ceiling - Heavy | 1,241.66 SF | 0.86 | 0.99 | 1,068.82 | (0.00) | 1,068.82 |
| 167. Additional cost for high wall or ceiling - 11' to 14' | 311.42 SF | 0.06 | 0.00 | 18.69 | (0.00) | 18.69 |
| 168. Deodorization chamber - Ozone treatment | 2,994.53 CF | 0.11 | 0.00 | 329.40 | (0.00) | 329.40 |
| 169. HEPA Vacuuming - Detailed - (PER SF) | 992.11 SF | 1.03 | 0.00 | 1,021.87 | (0.00) | 1,021.87 |
| 170. Tear out wet drywall, cleanup, bag - Cat 3 | 992.11 SF | 2.00 | 13.49 | 1,997.71 | (0.00) | 1,997.71 |
| 171. Tear out trim and bag for disposal - up to Cat 3 | 61.88 LF | 1.20 | 0.89 | 75.15 | (0.00) | 75.15 |
| 172. Clean floor or roof joist system - Heavy | 249.54 SF | 1.68 | 0.40 | 419.63 | (0.00) | 419.63 |
| 173. Clean stud wall - Heavy | 742.57 SF | 1.35 | 1.19 | 1,003.66 | (0.00) | 1,003.66 |
| 174. Seal stud wall for odor control (shellac) | 742.57 SF | 1.60 | 20.79 | 1,208.90 | (0.00) | 1,208.90 |
| 175. Seal floor or ceiling joist system (shellac) | 249.54 SF | 2.18 | 8.18 | 552.18 | (0.00) | 552.18 |
| 176. Accelerator Alkaline Booster* | 992.11 SF | 1.80 | 0.00 | 1,785.80 | (0.00) | 1,785.80 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - Great Room Addition

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| **Totals: Great Room Addition** | | | 47.13 | 9,959.63 | 0.00 | 9,959.63 |



**Great Room**  Height: 12'

| | |
|---|---|
| 1078.00 SF Walls | 472.74 SF Ceiling |
| 1550.74 SF Walls & Ceiling | 472.74 SF Floor |
| 52.53 SY Flooring | 89.83 LF Floor Perimeter |
| 89.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 177. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 472.74 SF | 1.91 | 2.27 | 905.20 | (0.00) | 905.20 |
| 178. Clean more than the walls and ceiling - Heavy | 2,023.47 SF | 0.86 | 1.62 | 1,741.80 | (0.00) | 1,741.80 |
| 179. Additional cost for high wall or ceiling - 11' to 14' | 562.57 SF | 0.06 | 0.00 | 33.75 | (0.00) | 33.75 |
| 180. Deodorization chamber - Ozone treatment | 5,672.83 CF | 0.11 | 0.00 | 624.01 | (0.00) | 624.01 |
| 181. HEPA Vacuuming - Detailed - (PER SF) | 1,550.74 SF | 1.03 | 0.00 | 1,597.26 | (0.00) | 1,597.26 |
| 182. Tear out wet drywall, cleanup, bag - Cat 3 | 1,550.74 SF | 2.00 | 21.09 | 3,122.57 | (0.00) | 3,122.57 |
| 183. Tear out trim and bag for disposal - up to Cat 3 | 89.83 LF | 1.20 | 1.29 | 109.09 | (0.00) | 109.09 |
| 184. Clean floor or roof joist system - Heavy | 472.74 SF | 1.68 | 0.76 | 794.96 | (0.00) | 794.96 |
| 185. Clean stud wall - Heavy | 1,078.00 SF | 1.35 | 1.72 | 1,457.02 | (0.00) | 1,457.02 |
| 186. Seal stud wall for odor control (shellac) | 1,078.00 SF | 1.60 | 30.18 | 1,754.98 | (0.00) | 1,754.98 |
| 187. Seal floor or ceiling joist system (shellac) | 472.74 SF | 2.18 | 15.51 | 1,046.08 | (0.00) | 1,046.08 |
| 188. Accelerator Alkaline Booster* | 1,550.74 SF | 1.80 | 0.00 | 2,791.33 | (0.00) | 2,791.33 |
| **Totals: Great Room** | | | 74.44 | 15,978.05 | 0.00 | 15,978.05 |



**GR Closet**  Height: 12'

| | |
|---|---|
| 502.00 SF Walls | 59.79 SF Ceiling |
| 561.79 SF Walls & Ceiling | 59.79 SF Floor |
| 6.64 SY Flooring | 41.83 LF Floor Perimeter |
| 41.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - GR Closet**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 189. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 59.79 SF | 1.91 | 0.29 | 114.49 | (0.00) | 114.49 |
| 190. Clean more than the walls and ceiling - Heavy | 621.58 SF | 0.86 | 0.50 | 535.06 | (0.00) | 535.06 |
| 191. Additional cost for high wall or ceiling - 11' to 14' | 101.63 SF | 0.06 | 0.00 | 6.10 | (0.00) | 6.10 |
| 192. Deodorization chamber - Ozone treatment | 717.50 CF | 0.11 | 0.00 | 78.93 | (0.00) | 78.93 |
| 193. HEPA Vacuuming - Detailed - (PER SF) | 561.79 SF | 1.03 | 0.00 | 578.64 | (0.00) | 578.64 |
| 194. Tear out wet drywall, cleanup, bag - Cat 3 | 561.79 SF | 2.00 | 7.64 | 1,131.22 | (0.00) | 1,131.22 |
| 195. Tear out trim and bag for disposal - up to Cat 3 | 41.83 LF | 1.20 | 0.60 | 50.80 | (0.00) | 50.80 |
| 196. Clean floor or roof joist system - Heavy | 59.79 SF | 1.68 | 0.10 | 100.55 | (0.00) | 100.55 |
| 197. Clean stud wall - Heavy | 502.00 SF | 1.35 | 0.80 | 678.50 | (0.00) | 678.50 |
| 198. Seal stud wall for odor control (shellac) | 502.00 SF | 1.60 | 14.06 | 817.26 | (0.00) | 817.26 |
| 199. Seal floor or ceiling joist system (shellac) | 59.79 SF | 2.18 | 1.96 | 132.30 | (0.00) | 132.30 |
| 200. Accelerator Alkaline Booster* | 561.79 SF | 1.80 | 0.00 | 1,011.22 | (0.00) | 1,011.22 |
| **Totals: GR Closet** | | | 25.95 | 5,235.07 | 0.00 | 5,235.07 |



| **Mens Restroom Entrance** | | | | | | **Height: 12'** |
|---|---|---|---|---|---|---|

179.44 SF Walls            16.36 SF Ceiling
195.79 SF Walls & Ceiling        16.36 SF Floor
1.82 SY Flooring                13.18 LF Floor Perimeter
17.18 LF Ceil. Perimeter

**Missing Wall - Goes to Floor**     4' X 6' 8"                **Opens into MAIN_UPSTAIR**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 201. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 16.36 SF | 1.91 | 0.08 | 31.33 | (0.00) | 31.33 |
| 202. Clean more than the walls and ceiling - Heavy | 212.15 SF | 0.86 | 0.17 | 182.62 | (0.00) | 182.62 |
| 203. Additional cost for high wall or ceiling - 11' to 14' | 33.53 SF | 0.06 | 0.00 | 2.01 | (0.00) | 2.01 |
| 204. Deodorization chamber - Ozone treatment | 196.30 CF | 0.11 | 0.00 | 21.59 | (0.00) | 21.59 |
| 205. HEPA Vacuuming - Detailed - (PER SF) | 195.79 SF | 1.03 | 0.00 | 201.66 | (0.00) | 201.66 |
| 206. Tear out wet drywall, cleanup, bag - Cat 3 | 195.79 SF | 2.00 | 2.66 | 394.24 | (0.00) | 394.24 |
| 207. Tear out trim and bag for disposal - up to Cat 3 | 17.18 LF | 1.20 | 0.25 | 20.87 | (0.00) | 20.87 |
| 208. Clean floor or roof joist system - Heavy | 16.36 SF | 1.68 | 0.03 | 27.51 | (0.00) | 27.51 |
| 209. Clean stud wall - Heavy | 179.44 SF | 1.35 | 0.29 | 242.53 | (0.00) | 242.53 |
| 210. Seal stud wall for odor control (shellac) | 179.44 SF | 1.60 | 5.02 | 292.12 | (0.00) | 292.12 |
| 211. Seal floor or ceiling joist system (shellac) | 16.36 SF | 2.18 | 0.54 | 36.20 | (0.00) | 36.20 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Mens Restroom Entrance**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 212. Accelerator Alkaline Booster* | 195.79 SF | 1.80 | 0.00 | 352.42 | (0.00) | 352.42 |
| **Totals: Mens Restroom Entrance** | | | **9.04** | **1,805.10** | **0.00** | **1,805.10** |



**Power Box Closet**                                                      Height: 12'

276.00 SF Walls                             30.00 SF Ceiling
306.00 SF Walls & Ceiling                   30.00 SF Floor
3.33 SY Flooring                            23.00 LF Floor Perimeter
23.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 213. Clean more than the walls and ceiling - Heavy | 336.00 SF | 0.86 | 0.27 | 289.23 | (0.00) | 289.23 |
| 214. Additional cost for high wall or ceiling - 11' to 14' | 53.00 SF | 0.06 | 0.00 | 3.18 | (0.00) | 3.18 |
| 215. Deodorization chamber - Ozone treatment | 360.00 CF | 0.11 | 0.00 | 39.60 | (0.00) | 39.60 |
| 216. HEPA Vacuuming - Detailed - (PER SF) | 306.00 SF | 1.03 | 0.00 | 315.18 | (0.00) | 315.18 |
| 217. Tear out wet drywall, cleanup, bag - Cat 3 | 306.00 SF | 2.00 | 4.16 | 616.16 | (0.00) | 616.16 |
| 218. Tear out trim and bag for disposal - up to Cat 3 | 23.00 LF | 1.20 | 0.33 | 27.93 | (0.00) | 27.93 |
| 219. Clean floor or roof joist system - Heavy | 30.00 SF | 1.68 | 0.05 | 50.45 | (0.00) | 50.45 |
| 220. Clean stud wall - Heavy | 276.00 SF | 1.35 | 0.44 | 373.04 | (0.00) | 373.04 |
| 221. Seal stud wall for odor control (shellac) | 276.00 SF | 1.60 | 7.73 | 449.33 | (0.00) | 449.33 |
| 222. Seal floor or ceiling joist system (shellac) | 30.00 SF | 2.18 | 0.98 | 66.38 | (0.00) | 66.38 |
| 223. Accelerator Alkaline Booster* | 306.00 SF | 1.80 | 0.00 | 550.80 | (0.00) | 550.80 |
| **Totals: Power Box Closet** | | | **13.96** | **2,781.28** | **0.00** | **2,781.28** |



**Womens Restroom Entrance**                                             Height: 12'

237.33 SF Walls                             28.00 SF Ceiling
265.33 SF Walls & Ceiling                   28.00 SF Floor
3.11 SY Flooring                            18.00 LF Floor Perimeter
22.00 LF Ceil. Perimeter

**Missing Wall - Goes to Floor**            4' X 6' 8"            Opens into MAIN_UPSTAIR



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 224. Clean the walls and ceiling - Heavy | 265.33 SF | 0.86 | 0.21 | 228.39 | (0.00) | 228.39 |
| 225. Clean floor - tile - Heavy clean | 28.00 SF | 1.10 | 0.13 | 30.93 | (0.00) | 30.93 |
| 226. Additional cost for high wall or ceiling - 11' to 14' | 50.00 SF | 0.06 | 0.00 | 3.00 | (0.00) | 3.00 |
| 227. Deodorization chamber - Ozone treatment | 336.00 CF | 0.11 | 0.00 | 36.96 | (0.00) | 36.96 |
| 228. HEPA Vacuuming - Detailed - (PER SF) | 265.33 SF | 1.03 | 0.00 | 273.29 | (0.00) | 273.29 |
| 229. Tear out wet drywall, cleanup, bag - Cat 3 | 265.33 SF | 2.00 | 3.61 | 534.27 | (0.00) | 534.27 |
| 230. Tear out trim and bag for disposal - up to Cat 3 | 22.00 LF | 1.20 | 0.32 | 26.72 | (0.00) | 26.72 |
| 231. Clean floor or roof joist system - Heavy | 28.00 SF | 1.68 | 0.04 | 47.08 | (0.00) | 47.08 |
| 232. Clean stud wall - Heavy | 237.33 SF | 1.35 | 0.38 | 320.78 | (0.00) | 320.78 |
| 233. Seal stud wall for odor control (shellac) | 237.33 SF | 1.60 | 6.65 | 386.38 | (0.00) | 386.38 |
| 234. Seal floor or ceiling joist system (shellac) | 28.00 SF | 2.18 | 0.92 | 61.96 | (0.00) | 61.96 |
| 235. Accelerator Alkaline Booster* | 265.33 SF | 1.80 | 0.00 | 477.59 | (0.00) | 477.59 |
| **Totals: Womens Restroom Entrance** | | | **12.26** | **2,427.35** | **0.00** | **2,427.35** |



### Womens Upstairs Restroom                                    Height: 12'

594.00 SF Walls          150.76 SF Ceiling
744.76 SF Walls & Ceiling     150.76 SF Floor
16.75 SY Flooring         49.50 LF Floor Perimeter
49.50 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 236. Clean the walls and ceiling - Heavy | 744.76 SF | 0.86 | 0.60 | 641.09 | (0.00) | 641.09 |
| 237. Clean floor - tile - Heavy clean | 150.76 SF | 1.10 | 0.72 | 166.56 | (0.00) | 166.56 |
| 238. Additional cost for high wall or ceiling - 11' to 14' | 200.26 SF | 0.06 | 0.00 | 12.02 | (0.00) | 12.02 |
| 239. Deodorization chamber - Ozone treatment | 1,809.17 CF | 0.11 | 0.00 | 199.01 | (0.00) | 199.01 |
| 240. HEPA Vacuuming - Detailed - (PER SF) | 744.76 SF | 1.03 | 0.00 | 767.10 | (0.00) | 767.10 |
| 241. Tear out wet drywall, cleanup, bag - Cat 3 | 744.76 SF | 2.00 | 10.13 | 1,499.65 | (0.00) | 1,499.65 |
| 242. Tear out trim and bag for disposal - up to Cat 3 | 49.50 LF | 1.20 | 0.71 | 60.11 | (0.00) | 60.11 |
| 243. Clean floor or roof joist system - Heavy | 150.76 SF | 1.68 | 0.24 | 253.52 | (0.00) | 253.52 |
| 244. Clean stud wall - Heavy | 594.00 SF | 1.35 | 0.95 | 802.85 | (0.00) | 802.85 |
| 245. Seal stud wall for odor control (shellac) | 594.00 SF | 1.60 | 16.63 | 967.03 | (0.00) | 967.03 |
| 246. Seal floor or ceiling joist system (shellac) | 150.76 SF | 2.18 | 4.94 | 333.60 | (0.00) | 333.60 |
| 247. Accelerator Alkaline Booster* | 744.76 SF | 1.80 | 0.00 | 1,340.57 | (0.00) | 1,340.57 |
| **Totals: Womens Upstairs Restroom** | | | **34.92** | **7,043.11** | **0.00** | **7,043.11** |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Mens Upstairs Restroom**  **Height: 12'**

564.61 SF Walls
698.33 SF Walls & Ceiling
14.86 SY Flooring
47.05 LF Ceil. Perimeter

133.72 SF Ceiling
133.72 SF Floor
47.05 LF Floor Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 248. Clean the walls and ceiling - Heavy | 698.33 SF | 0.86 | 0.56 | 601.12 | (0.00) | 601.12 |
| 249. Clean floor - tile - Heavy clean | 133.72 SF | 1.10 | 0.64 | 147.73 | (0.00) | 147.73 |
| 250. Additional cost for high wall or ceiling - 11' to 14' | 180.77 SF | 0.06 | 0.00 | 10.85 | (0.00) | 10.85 |
| 251. Deodorization chamber - Ozone treatment | 1,604.64 CF | 0.11 | 0.00 | 176.51 | (0.00) | 176.51 |
| 252. HEPA Vacuuming - Detailed - (PER SF) | 698.33 SF | 1.03 | 0.00 | 719.28 | (0.00) | 719.28 |
| 253. Tear out wet drywall, cleanup, bag - Cat 3 | 698.33 SF | 2.00 | 9.50 | 1,406.16 | (0.00) | 1,406.16 |
| 254. Tear out trim and bag for disposal - up to Cat 3 | 47.05 LF | 1.20 | 0.68 | 57.14 | (0.00) | 57.14 |
| 255. Clean floor or roof joist system - Heavy | 133.72 SF | 1.68 | 0.21 | 224.86 | (0.00) | 224.86 |
| 256. Clean stud wall - Heavy | 564.61 SF | 1.35 | 0.90 | 763.12 | (0.00) | 763.12 |
| 257. Seal stud wall for odor control (shellac) | 564.61 SF | 1.60 | 15.81 | 919.19 | (0.00) | 919.19 |
| 258. Seal floor or ceiling joist system (shellac) | 133.72 SF | 2.18 | 4.39 | 295.90 | (0.00) | 295.90 |
| 259. Accelerator Alkaline Booster* | 698.33 SF | 1.80 | 0.00 | 1,256.99 | (0.00) | 1,256.99 |
| **Totals: Mens Upstairs Restroom** | | | **32.69** | **6,578.85** | **0.00** | **6,578.85** |
| **Total: Level 2** | | | **475.20** | **99,821.83** | **0.00** | **99,821.83** |

## Attic



**Attic Space**  **Height: 8'**

1590.01 SF Walls
4081.58 SF Walls & Ceiling
276.84 SY Flooring
198.75 LF Ceil. Perimeter

2491.57 SF Ceiling
2491.57 SF Floor
198.75 LF Floor Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 260. Remove Blown-in insulation - Machine removal | 2,491.57 SF | 2.11 | 25.91 | 5,283.12 | (0.00) | 5,283.12 |
| 261. Deodorization chamber - Ozone treatment | 19,932. CF 53 | 0.11 | 0.00 | 2,192.58 | (0.00) | 2,192.58 |
| 262. HEPA Vacuuming - Detailed - (PER SF) | 4,983.13 SF | 1.03 | 0.00 | 5,132.62 | (0.00) | 5,132.62 |
| 263. Clean floor or roof joist system - Heavy | 4,983.13 SF | 1.68 | 7.97 | 8,379.63 | (0.00) | 8,379.63 |
| 264. Seal attic framing (shellac) - up to 5/12 | 2,491.57 SF | 2.31 | 81.72 | 5,837.25 | (0.00) | 5,837.25 |
| 265. Accelerator Alkaline Booster* | 4,081.58 SF | 1.80 | 0.00 | 7,346.84 | (0.00) | 7,346.84 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Attic Space**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| Totals: Attic Space | | | 115.60 | 34,172.04 | 0.00 | 34,172.04 |
| Total: Attic | | | 115.60 | 34,172.04 | 0.00 | 34,172.04 |

### Miscellaneous

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 266. Emergency service call - during business hours | 1.00 EA | 202.08 | 0.00 | 202.08 | (0.00) | 202.08 |
| 267. Hazardous Waste/Mold Cleaning- Supervisory/Admin- per hour | 140.00 HR | 91.34 | 0.00 | 12,787.60 | (0.00) | 12,787.60 |
| 268. Hazardous Waste/Mold Cleaning Technician - per hour | 560.00 HR | 80.11 | 0.00 | 44,861.60 | (0.00) | 44,861.60 |
| 269. Equipment decontamination charge - per piece of equipment | 11.00 EA | 41.10 | 4.16 | 456.26 | (0.00) | 456.26 |
| 270. Hydroxyl generator - odor counteractant - 3 optics | 96.00 DA | 284.38 | 0.00 | 27,300.48 | (0.00) | 27,300.48 |
| **4 Units running for 19 Days** | | | | | | |
| 271. Negative air fan/Air scrubber (24 hr period) - No monit. | 96.00 DA | 88.13 | 0.00 | 8,460.48 | (0.00) | 8,460.48 |
| **4 units Running for 19 days** | | | | | | |
| 272. Add for HEPA filter (for negative air exhaust fan) | 4.00 EA | 255.56 | 61.42 | 1,083.66 | (0.00) | 1,083.66 |
| 273. Carbon vapor filter (for air scrubber) - 16" x 16" | 4.00 EA | 89.51 | 18.24 | 376.28 | (0.00) | 376.28 |
| 274. Power distribution box - 100+ amp (per day) | 48.00 DA | 128.24 | 0.00 | 6,155.52 | (0.00) | 6,155.52 |
| **2 units Running for 24 days** | | | | | | |
| 275. Axial fan air mover - 1 HP (per 24 hr period)-No monit. | 290.00 EA | 43.75 | 0.00 | 12,687.50 | (0.00) | 12,687.50 |
| **10 units Running for 19 days plus 25 Units for 4 days** | | | | | | |
| 276. Dehumidifier (per 24 hr period) - 160+ ppd - No monitor. | 24.00 EA | 166.88 | 0.00 | 4,005.12 | (0.00) | 4,005.12 |
| **6 Units running for 4 Days** | | | | | | |
| 277. Generator - 35-90KW (per day - 24 hour) - no monitoring | 54.00 DA | 861.34 | 0.00 | 46,512.36 | (0.00) | 46,512.36 |
| 278. General Laborer - per hour | 35.00 HR | 52.49 | 0.00 | 1,837.15 | (0.00) | 1,837.15 |
| **For monitoring and refilling generator every 2 days** | | | | | | |
| 279. Fuel surcharge | 1.00 EA | 7.500.00 | 0.00 | 7,500.00 | (0.00) | 7,500.00 |
| **Gas for generator** | | | | | | |
| 280. Box of Chem Sponges* | 6.00 EA | 137.81 | 0.00 | 826.86 | (0.00) | 826.86 |
| 281. Add for personal protective equipment (hazardous cleanup) | 300.00 EA | 16.46 | 294.72 | 5,232.72 | (0.00) | 5,232.72 |
| 282. Personal protective gloves - Disposable (per pair) | 300.00 EA | 0.48 | 11.52 | 155.52 | (0.00) | 155.52 |
| 283. Personal protective mask (N-95) | 100.00 EA | 2.06 | 16.48 | 222.48 | (0.00) | 222.48 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - Miscellaneous

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 284. Tandem axle dump trailer - per load - including dump fees | 3.00 EA | 242.15 | 0.00 | 726.45 | (0.00) | 726.45 |
| **Totals: Miscellaneous** | | | 406.54 | 181,390.12 | 0.00 | 181,390.12 |
| **Line Item Totals: FREDGIVENS-MITRV2** | | | 1,097.53 | 368,831.07 | 0.00 | 368,831.07 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 18,566.99 | SF Walls | 8,488.59 | SF Ceiling | 27,055.58 | SF Walls and Ceiling |
| 8,553.15 | SF Floor | 950.35 | SY Flooring | 1,627.97 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 1,605.17 | LF Ceil. Perimeter |
| 8,553.15 | Floor Area | 8,863.26 | Total Area | 17,376.38 | Interior Wall Area |
| 7,907.12 | Exterior Wall Area | 654.45 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 367,733.54 |
| Material Sales Tax | 1,097.53 |
| **Replacement Cost Value** | **$368,831.07** |
| **Net Claim** | **$368,831.07** |

Josh Birong



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

## Recap of Taxes

|  | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 1,097.53 | 0.00 | 0.00 |
| Total | **1,097.53** | **0.00** | **0.00** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

## Recap by Room

**Estimate: FREDGIVENS-MITRV2**

**Area: Main Level**

| | | |
|---|---|---|
| Stairwell | 11,290.39 | 3.07% |
| Raised Sitting Area | 4,025.92 | 1.09% |
| Kitchen | 9,167.35 | 2.49% |
| Downstairs Hallway | 1,752.31 | 0.48% |
| Men's Restroom | 1,914.01 | 0.52% |
| Women's Restroom | 2,805.81 | 0.76% |
| Walk-in Freezer | 950.55 | 0.26% |
| Utility Closet | 877.40 | 0.24% |
| Main Room | 19,500.15 | 5.30% |
| Kitchen Storage | 1,063.00 | 0.29% |
| **Area Subtotal: Main Level** | **53,346.89** | **14.51%** |

**Area: Level 2**

| | | |
|---|---|---|
| | 820.40 | 0.22% |
| Main Upstairs Hallway | 11,568.80 | 3.15% |
| WH Room | 1,864.80 | 0.51% |
| Side Upstairs Hallway | 5,883.72 | 1.60% |
| Side Room | 8,431.51 | 2.29% |
| Backroom | 10,454.84 | 2.84% |
| Attic Access | 2,123.66 | 0.58% |
| Power Box Room | 3,916.08 | 1.06% |
| GRA Closet | 2,724.77 | 0.74% |
| Great Room Addition | 9,912.50 | 2.70% |
| Great Room | 15,903.61 | 4.32% |
| GR Closet | 5,209.12 | 1.42% |
| Mens Restroom Entrance | 1,796.06 | 0.49% |
| Power Box Closet | 2,767.32 | 0.75% |
| Womens Restroom Entrance | 2,415.09 | 0.66% |
| Womens Upstairs Restroom | 7,008.19 | 1.91% |
| Mens Upstairs Restroom | 6,546.16 | 1.78% |
| **Area Subtotal: Level 2** | **99,346.63** | **27.02%** |

**Area: Attic**

| | | |
|---|---|---|
| Attic Space | 34,056.44 | 9.26% |
| **Area Subtotal: Attic** | **34,056.44** | **9.26%** |
| Miscellaneous | 180,983.58 | 49.22% |

| | | |
|---|---|---|
| **Subtotal of Areas** | **367,733.54** | **100.00%** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**Total**                                                                 367,733.54          100.00%



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### Recap by Category

| Items | Total | % |
|---|---|---|
| ACOUSTICAL TREATMENTS | 361.16 | 0.10% |
| CONT: CLEAN - GENERAL ITEMS | 11,156.81 | 3.02% |
| CLEANING | 57,166.83 | 15.50% |
| GENERAL DEMOLITION | 43,899.73 | 11.90% |
| PERMITS AND FEES | 7,500.00 | 2.03% |
| HAZARDOUS MATERIAL REMEDIATION | 135,032.32 | 36.61% |
| LABOR ONLY | 1,837.15 | 0.50% |
| PAINTING | 25,519.94 | 6.92% |
| TEMPORARY REPAIRS | 46,512.36 | 12.61% |
| WATER EXTRACTION & REMEDIATION | 38,747.24 | 10.51% |
| **Subtotal** | 367,733.54 | 99.70% |
| Material Sales Tax | 1,097.53 | 0.30% |
| **Total** | 368,831.07 | 100.00% |



Main Level

1/2/2024    Page: 27

Level 2





Level 2

Attic



Attic Space

N

Attic





4887 BELFORT ROAD, STE. 200
JACKSONVILLE, FLORIDA 32256

TELEPHONE: (904) 345-4496
FACSIMILE: (904) 345-4997

March 28, 2024

Mesa Underwriters Specialty Insurance Company
Chuck Burkett
6263 North Scottsdale Road, Ste. 300
Scottsdale, AZ 85250

ELECTRONIC MAIL:
*Chuck.burkett@selective.com*

RE:    **Our Client:** Maserati Event Center
       **Loss Address:**  548 Ellis Street, Augusta, GA 30301
       **Policy No.:** MP0032006027342
       **Claim No.:** 22475952
       **D.O.L.:**  April 14, 2023

Mr. Burkett:

   Merlin Law Group, PA has been retained by Maserati Event Center (hereinafter "our client") to represent its interests regarding the above-referenced property insurance claim.  All further communication regarding this claim should be directed to this office and to my attention.

   Please also accept this letter as a formal demand for a <u>certified copy of the relevant insurance policy, to include the original policy, any renewals, endorsements, and any written, verbal or recorded statements taken from our client or its representatives</u>.

   I am enclosing the estimate for the damages that occurred our clients' property as a result of a fire event.  We reserve the right to amend this estimate should further information impacting it become available.  Our client has complied with all conditions contained in the insurance policy. Additionally, Auto-Owners has not provided any evidence that would support a justifiable denial or limitation of our client's claim.  This constitutes prima facie evidence of Mesa Underwriters Specialty Insurance Company's bad faith.

   Our client has complied with all conditions contained in the insurance policy. My client is at a loss as to why Mesa Underwriters Specialty Insurance Company has not afforded the proper coverage under the applicable policy. This lack of good faith has forced Your Insured to retain my legal services in order to fairly settle its claim. It is our belief that Mesa Underwriters Specialty Insurance Company has violated the Unfair Claims settlement Practice Act to O.C.G.A. § 33-6-34 and has breached the insurance policy.

Page **2** of **3**
Mesa Underwriters Specialty Insurance Company
Maserati Event Center
DOL: April 14, 2023

Bad faith claims handling violation of O.C.G.A. § 33-4-6 triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, as per the enclosed estimate of damages to our client, we are hereby making formal demand that you settle the above claim for the sum of **$1,838,174.25** less any prior payments made by you. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation. Otherwise, it will be assumed that you agree that a proper demand was made.

This correspondence will also serve as notification that you may also be required to pay reasonable attorneys' fees due to your failure to perform as per the terms of the insurance contract entered into with our client. Such payment is necessitated as a result of our client having to retain legal counsel to pursue its claim for damages and should be paid in addition to

the amount of any valid claim for contractual benefits and costs. The purpose of this letter is to encourage you to resolve our client's claim in a fair and equitable manner without the need for further legal action. In the event that you fail to respond to this letter with an offer of settlement that is acceptable to our client, we will have no alternative but to recommend to it that a lawsuit be filed against you.

This offer is made in the spirit of compromise pursuant to Southern General Ins. Co. v. Holt, 226 Ga. 267, 416 S.E.2d 274 (1992). Failure to settle my client's claim after this notice of our willingness to accept this amount (which is within your policy limits) may result in you being liable for the full amount of any judgment obtained, even if it is in excess of the limits of the policy. See GEICO v. Gingold, 249 Ga. 159 (1982); Shaw v. Caldwell, 229 Ga. 87 (1972); and Smoot v. State Farm Mutual Auto Insurance Co., 229 F.2d 525 (5th Cir. 1962).

In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter. Any check issued should list Merlin Law Group, P.A.

*[THIS PORTION IS INTENTIONALLY LEFT BLANK]*

Page 3 of 3
Mesa Underwriters Specialty Insurance Company
Maserati Event Center
DOL: April 14, 2023

_____

     I look forward to working with you to resolve this matter quickly and amicably. Please feel free to contact me should you have any questions pertaining to this correspondence.


                            Sincerely,

                            Matthew S. Brown, Esq.
                            GA Bar Number: 088852
                            Merlin Law Group, P.A.
                            4887 Belfort Road, Suite 200
                            Jacksonville, FL 32256
                            904-345-4491
                            mbrown@merlinlawgroup.com
                            jmurad@merlinlawgroup.com


Enclosure as stated.

Claim No. _____22475952_____

# SELECTIVE

BE UNIQUELY INSURED™

## STATEMENT AS TO FULL COST OF REPAIR OR REPLACEMENT
## UNDER THE REPLACEMENT COST COVERAGE
## SUBJECT TO THE TERMS AND CONDITIONS OF THIS POLICY

MP0032006027342
POLICY NUMBER

__BLDG $400,000 / BPP $100,000__
AMOUNT OF POLICY AT TIME OF LOSS

__10/3/2022__
DATE ISSUED

__10/3/2023__
DATE EXPIRES

Karrisa Rodriguez
AGENT

Allstate
AGENCY AT

Insurance Company

To the ___MESA Underwriters Specialty Insurance Company___

of ___Scottsdale Arizona___

Agency at _____ Allstate _____

Policy No. _____MP0032006027342_____

Agent _____Karrisa Rodriguez_____

Insured ___Maserati Event Center___

Location ___548 Ellis St. Augusta, GA 30901___

Type of property involved in claim ___Event Center___

Date of loss __04/14/2023__    Occupancy ___Business___

Interest, no other person or persons had any interest therein or encumbrances thereon except: ___None___

| | | |
|---|---|---|
| 1. Full Amount of Insurance applicable to the property for which claim is presented was.... .........$ | BLDG $400,000 / BPP $100,000 | |
| 2. Full Replacement Cost of said property at the time of loss was...........................................$ | BLDG $400,000 / BPP $100,000 | |
| 3. The Full Cost of Repair or Replacement is ...............................................................$ | BLDG $1,838,174.25 / BPP $100,000 | |
| 4. Applicable Depreciation is...........................................................................$ | 0.00 | |
| 5. Actual Cash Value Loss is (Line 3 minus Line 4).............................................$ | BLDG 1,838,174.25 / BPP 100,000 | |
| 6. Less deductibles and/or participation by the insured.............................$ | $1,000 | |
| 7. Actual Cash Value Claim is (Line 5 minus Line 6) ...........................$ | BLDG 1,837,174.25 / BPP 100,000 | |
| 8. Supplemental Claim    To be filed in accordance with the terms and conditions of the Replacement Cost Coverage within 180 days from the date of loss as shown above, and will not exceed .................$ | BLDG $400,000 / BPP $100,000 | |

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured, or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proof by a representative of the above insurance company is not a waiver of any rights.

State of ___Georgia___

County of ___Richmond___

Subscribed and sworn to before me this __2nd__ day of __Feb__ , 20 __24__

MASERATI'S

_____ Insured

_____ Notary Public

|  |  |  |  |
|---|---|---|---|
| Insured: | Maserati Event Center | Home: | (706) 627-7170 |
| Property: | 548 Ellis St | E-mail: | soultrysounds@yahoo.com |
|  | Augusta , GA 30901 |  |  |

**Claim Number:** 22475952          **Policy Number:** MP0032006027342          **Type of Loss:**

| Date of Loss: | 4/14/2023 11:00 PM | Date Received: |  |
|---|---|---|---|
| Date Inspected: |  | Date Entered: | 2/1/2024 12:53 PM |

| Price List: | GAAU8X_JAN24 |
|---|---|
|  | Restoration/Service/Remodel |
| Estimate: | MASERATI_EVENT_ |
|  | CENTE |

MASERATI_EVENT_CENTE

### Carpeting

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. Floor Covering - Carpet (Bid Item) | 1.00 EA | 0.00 | 26,999.00 | 0.00 | 5,399.80 | 32,398.80 |
| Totals: Carpeting | | | | 0.00 | 5,399.80 | 32,398.80 |

### Cabinet/Finish Carpentry

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 2. Finish Carpentry / Trim (Bid Item) | 1.00 EA | 0.00 | 251,286.84 | 0.00 | 50,257.36 | 301,544.20 |
| Totals: Cabinet/Finish Carpentry | | | | 0.00 | 50,257.36 | 301,544.20 |

### HVAC

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 3. Heat, Vent, & Air Conditioning (Bid Item) | 1.00 EA | 0.00 | 99,857.00 | 0.00 | 19,971.40 | 119,828.40 |
| Totals: HVAC | | | | 0.00 | 19,971.40 | 119,828.40 |

### Drywall

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 4. Drywall (Bid Item) | 1.00 EA | 0.00 | 37,166.50 | 0.00 | 7,433.30 | 44,599.80 |
| Totals: Drywall | | | | 0.00 | 7,433.30 | 44,599.80 |

### Tile

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 5. Tile (Bid Item) | 1.00 EA | 0.00 | 26,026.00 | 0.00 | 5,205.20 | 31,231.20 |
| Totals: Tile | | | | 0.00 | 5,205.20 | 31,231.20 |

### Electrical

**CONTINUED - Electrical**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 6. Electrical (Bid Item) | 1.00 EA | 0.00 | 388,915.00 | 0.00 | 77,783.00 | 466,698.00 |
| Totals: Electrical | | | | 0.00 | 77,783.00 | 466,698.00 |

**Equipment**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 7. Equipment | 1.00 EA | 0.00 | 132,317.32 | 0.00 | 26,463.46 | 158,780.78 |
| Totals: Equipment | | | | 0.00 | 26,463.46 | 158,780.78 |

**Plumbing**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 8. Plumbing (Bid Item) | 1.00 EA | 0.00 | 17,860.00 | 0.00 | 3,572.00 | 21,432.00 |
| Totals: Plumbing | | | | 0.00 | 3,572.00 | 21,432.00 |

**Painting**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 9. Painting (Bid Item) | 1.00 EA | 0.00 | 4,500.00 | 0.00 | 900.00 | 5,400.00 |
| 10. Painting (Bid Item) | 1.00 EA | 0.00 | 40,000.00 | 0.00 | 8,000.00 | 48,000.00 |
| Totals: Painting | | | | 0.00 | 8,900.00 | 53,400.00 |

**Building Supply**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 11. Framing & Rough Carpentry (Bid Item) | 1.00 EA | 0.00 | 113,125.00 | 0.00 | 22,625.00 | 135,750.00 |
| Totals: Building Supply | | | | 0.00 | 22,625.00 | 135,750.00 |

**Roofing**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

### CONTINUED - Roofing

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 12. Roofing (Bid Item) | 1.00 EA | 0.00 | 86,400.00 | 0.00 | 17,280.00 | 103,680.00 |
| Totals: Roofing | | | | 0.00 | 17,280.00 | 103,680.00 |
| Line Item Totals: MASERATI_EVENT_CENTE | | | | 0.00 | 244,890.52 | 1,469,343.18 |

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 1,224,452.66 |
| Overhead | 122,445.26 |
| Profit | 122,445.26 |
| **Replacement Cost Value** | **$1,469,343.18** |
| **Net Claim** | **$1,469,343.18** |

## Recap by Room

**Estimate: MASERATI_EVENT_CENTE**

| | | |
|---|---:|---:|
| Carpeting | 26,999.00 | 2.20% |
| Cabinet/Finish Carpentry | 251,286.84 | 20.52% |
| HVAC | 99,857.00 | 8.16% |
| Drywall | 37,166.50 | 3.04% |
| Tile | 26,026.00 | 2.13% |
| Electrical | 388,915.00 | 31.76% |
| Equipment | 132,317.32 | 10.81% |
| Plumbing | 17,860.00 | 1.46% |
| Painting | 44,500.00 | 3.63% |
| Building Supply | 113,125.00 | 9.24% |
| Roofing | 86,400.00 | 7.06% |
| **Subtotal of Areas** | **1,224,452.66** | **100.00%** |
| **Total** | **1,224,452.66** | **100.00%** |

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CONTENT MANIPULATION | 132,317.32 | 9.01% |
| DRYWALL | 37,166.50 | 2.53% |
| ELECTRICAL | 388,915.00 | 26.47% |
| FLOOR COVERING - CARPET | 26,999.00 | 1.84% |
| FINISH CARPENTRY / TRIMWORK | 251,286.84 | 17.10% |
| FRAMING & ROUGH CARPENTRY | 113,125.00 | 7.70% |
| HEAT,  VENT & AIR CONDITIONING | 99,857.00 | 6.80% |
| PLUMBING | 17,860.00 | 1.22% |
| PAINTING | 44,500.00 | 3.03% |
| ROOFING | 86,400.00 | 5.88% |
| TILE | 26,026.00 | 1.77% |
| O&P Items Subtotal | 1,224,452.66 | 83.33% |
| Overhead | 122,445.26 | 8.33% |
| Profit | 122,445.26 | 8.33% |
| Total | 1,469,343.18 | 100.00% |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

|  |  |
|---|---|
| Insured: | Fred Gibbons |
| Business: | 302 6th Street |
|  | Augusta, GA 30901 |

| Estimator: | Josh Birong | Business: | (706) 799-9032 |
|---|---|---|---|
|  |  | E-mail: | j.birong@restoration1.com |

**Claim Number:**                    **Policy Number:**                    **Type of Loss:**

| Date of Loss: | Date Received: |  |
|---|---|---|
| Date Inspected: | Date Entered: | 8/10/2023 9:41 AM |

| Price List: | GAAU8X_AUG23 |
|---|---|
|  | Restoration/Service/Remodel |
| Estimate: | FREDGIVENS-MITRV2 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**FREDGIVENS-MITRV2**

**Main Level**



| Stairwell | | Height: 26' 10" |
|---|---|---|
| 196.96 SF Walls | 112.70 SF Ceiling | |
| 309.66 SF Walls & Ceiling | 112.70 SF Floor | |
| 12.52 SY Flooring | 9.08 LF Floor Perimeter | |
| 53.00 LF Ceil. Perimeter | | |

Missing Wall - Goes to Floor          3' X 6' 8"          Opens into MAIN_ROOM

| Subroom: Stairs (2) | | Height: 26' 7" |
|---|---|---|
| 117.33 SF Walls | 14.25 SF Ceiling | |
| 131.58 SF Walls & Ceiling | 28.90 SF Floor | |
| 3.21 SY Flooring | 5.67 LF Floor Perimeter | |
| 4.75 LF Ceil. Perimeter | | |

Missing Wall          3' X 26' 6 11/16"          Opens into STAIRWELL
Missing Wall          3' X 26' 6 11/16"          Opens into STAIRS1

| Subroom: Stairs1 (3) | | Height: 22' 10" |
|---|---|---|
| 144.68 SF Walls | 10.03 SF Ceiling | |
| 154.71 SF Walls & Ceiling | 10.03 SF Floor | |
| 1.11 SY Flooring | 6.33 LF Floor Perimeter | |
| 6.33 LF Ceil. Perimeter | | |

Missing Wall          3' X 22' 10 1/8"          Opens into STAIRS
Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS2

| Subroom: Stairs2 (4) | | Height: 22' 10" |
|---|---|---|
| 220.63 SF Walls | 37.74 SF Ceiling | |
| 258.37 SF Walls & Ceiling | 66.87 SF Floor | |
| 7.43 SY Flooring | 14.38 LF Floor Perimeter | |
| 11.92 LF Ceil. Perimeter | | |

Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS1
Missing Wall          3' 2" X 22' 10 1/8"          Opens into STAIRS3
Missing Wall          11' 9" X 22' 10 1/8"          Opens into STAIRWELL



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



| **Subroom: Stairs3 (5)** | **Height: 14' 2"** |
|---|---|
| 89.84 SF Walls | 10.03 SF Ceiling |
| 99.87 SF Walls & Ceiling | 10.03 SF Floor |
| 1.11 SY Flooring | 6.33 LF Floor Perimeter |
| 6.33 LF Ceil. Perimeter | |

| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS2 |
|---|---|---|
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS4 |



| **Subroom: Stairs4 (6)** | **Height: 14' 2"** |
|---|---|
| 93.36 SF Walls | 26.65 SF Ceiling |
| 120.02 SF Walls & Ceiling | 47.43 SF Floor |
| 5.27 SY Flooring | 10.09 LF Floor Perimeter |
| 8.42 LF Ceil. Perimeter | |

| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS3 |
|---|---|---|
| Missing Wall | 3' 2" X 14' 2 1/4" | Opens into STAIRS5 |
| Missing Wall | 8' 5" X 14' 2 1/4" | Opens into STAIRWELL |

| **Subroom: Stairs5 (1)** | **Height: 8'** |
|---|---|
| 167.33 SF Walls | 56.21 SF Ceiling |
| 223.54 SF Walls & Ceiling | 56.21 SF Floor |
| 6.25 SY Flooring | 20.92 LF Floor Perimeter |
| 20.92 LF Ceil. Perimeter | |

| Missing Wall | 3' 2" X 8' | Opens into STAIRS4 |
|---|---|---|
| Missing Wall | 3' 2" X 8' | Opens into STAIRWELL |
| Missing Wall | 14' 7" X 8' | Opens into STAIRWELL |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Tear out wet drywall, no bagging - Cat 3 | 1,297.74 SF | 1.43 | 0.00 | 1,855.77 | (0.00) | 1,855.77 |
| 2. Clean the walls and ceiling - Heavy | 1,297.74 SF | 0.86 | 1.04 | 1,117.10 | (0.00) | 1,117.10 |
| 3. Clean floor - tile - Heavy clean | 332.16 SF | 1.10 | 1.59 | 366.97 | (0.00) | 366.97 |
| 4. Clean balustrade - Heavy | 80.00 LF | 4.70 | 0.26 | 376.26 | (0.00) | 376.26 |
| 5. Clean stair riser - per side - per LF | 182.00 LF | 0.70 | 0.15 | 127.55 | (0.00) | 127.55 |
| 6. Clean stud wall - Heavy | 120.00 LF | 2.08 | 0.19 | 249.79 | (0.00) | 249.79 |
| 7. Additional cost for high wall or ceiling - Over 14' | 1,719.27 SF | 0.09 | 0.00 | 154.73 | (0.00) | 154.73 |
| 8. Additional cost for high wall or ceiling - 11' to 14' | 335.00 SF | 0.06 | 0.00 | 20.10 | (0.00) | 20.10 |
| 9. Deodorization chamber - Ozone treatment | 8,913.03 CF | 0.11 | 0.00 | 980.43 | (0.00) | 980.43 |
| 10. HEPA Vacuuming - Detailed - (PER SF) | 1,297.74 SF | 1.03 | 0.00 | 1,336.67 | (0.00) | 1,336.67 |
| 11. Seal stud wall for odor control (shellac) | 1,030.13 SF | 1.60 | 28.84 | 1,677.05 | (0.00) | 1,677.05 |
| 12. Seal floor or ceiling joist system (shellac) | 332.16 SF | 2.18 | 10.90 | 735.01 | (0.00) | 735.01 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Stairwell**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 13. Accelerator Alkaline Booster* | 1,297.74 SF | 1.80 | 0.00 | 2,335.93 | (0.00) | 2,335.93 |
| **Totals: Stairwell** | | | 42.97 | 11,333.36 | 0.00 | 11,333.36 |

**Raised Sitting Area**             **Height: 13'**

|  |  |
|---|---|
| 817.50 SF Walls | 314.59 SF Ceiling |
| 1132.09 SF Walls & Ceiling | 314.59 SF Floor |
| 34.95 SY Flooring | 92.25 LF Floor Perimeter |
| 49.83 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Missing Wall - Goes to Ceiling | 25' 3" X 9' | Opens into MAIN_ROOM |
| Missing Wall - Goes to Ceiling | 9' 9" X 9' | Opens into MAIN_ROOM |
| Missing Wall | 7' 5" X 13' | Opens into MAIN_ROOM |
| Missing Wall - Goes to Ceiling | 7' 5" X 9' | Opens into MAIN_ROOM |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 14. Water extraction from hard surface floor - Cat 3 water | 314.59 SF | 0.98 | 0.00 | 308.30 | (0.00) | 308.30 |
| 15. Tear out wet non-salv. gluedn, cpt, cut/bag - Cat 3 water | 314.59 SF | 1.91 | 1.51 | 602.38 | (0.00) | 602.38 |
| 16. Remove wet ceiling tile & drywall and bag - Cat 3 | 314.59 SF | 2.48 | 2.77 | 782.95 | (0.00) | 782.95 |
| 17. Remove Suspended ceiling grid - 2' x 2' | 314.59 SF | 0.35 | 0.00 | 110.11 | (0.00) | 110.11 |
| 18. Clean the floor - Heavy | 314.59 SF | 0.86 | 0.25 | 270.80 | (0.00) | 270.80 |
| 19. Clean with pressure/chemical spray - Heavy | 500.00 SF | 0.68 | 0.40 | 340.40 | (0.00) | 340.40 |
| 20. Deodorization chamber - Ozone treatment | 4,089.67 CF | 0.11 | 0.00 | 449.86 | (0.00) | 449.86 |
| 21. HEPA Vacuuming - Detailed - (PER SF) | 1,132.09 SF | 1.03 | 0.00 | 1,166.05 | (0.00) | 1,166.05 |
| **Totals: Raised Sitting Area** | | | 4.93 | 4,030.85 | 0.00 | 4,030.85 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Kitchen**                                                                 **Height: 12'**

| | |
|---|---|
| 1616.00 SF Walls | 834.08 SF Ceiling |
| 2450.08 SF Walls & Ceiling | 834.08 SF Floor |
| 92.68 SY Flooring | 134.67 LF Floor Perimeter |
| 134.67 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 22. Remove wet ceiling tile & drywall and bag - Cat 3 | 834.08 SF | 2.48 | 7.34 | 2,075.86 | (0.00) | 2,075.86 |
| 23. Remove Suspended ceiling grid - 2' x 2' | 834.08 SF | 0.35 | 0.00 | 291.93 | (0.00) | 291.93 |
| 24. Remove Fluorescent light fixture | 9.00 EA | 17.53 | 0.00 | 157.77 | (0.00) | 157.77 |
| 25. Clean floor - tile - Heavy clean | 834.08 SF | 1.10 | 4.00 | 921.49 | (0.00) | 921.49 |
| 26. Clean the walls and ceiling - Heavy | 2,450.08 SF | 0.86 | 1.96 | 2,109.03 | (0.00) | 2,109.03 |
| 27. Deodorization chamber - Ozone treatment | 10,008. CF 98 | 0.11 | 0.00 | 1,100.99 | (0.00) | 1,100.99 |
| 28. HEPA Vacuuming - Detailed - (PER SF) | 2,450.08 SF | 1.03 | 0.00 | 2,523.58 | (0.00) | 2,523.58 |
| **Totals: Kitchen** | | | **13.30** | **9,180.65** | **0.00** | **9,180.65** |



**Downstairs Hallway**                                                       **Height: 12'**

| | |
|---|---|
| 526.00 SF Walls | 101.78 SF Ceiling |
| 627.78 SF Walls & Ceiling | 101.78 SF Floor |
| 11.31 SY Flooring | 43.83 LF Floor Perimeter |
| 43.83 LF Ceil. Perimeter | |

**Missing Wall**                   **5' 4" X 12'**            **Opens into MAIN_ROOM**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 29. Remove wet ceiling tile & drywall and bag - Cat 3 | 101.78 SF | 2.48 | 0.90 | 253.31 | (0.00) | 253.31 |
| 30. Remove Suspended ceiling grid - 2' x 2' | 101.78 SF | 0.35 | 0.00 | 35.62 | (0.00) | 35.62 |
| 31. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| 32. Clean floor - tile - Heavy clean | 101.78 SF | 1.10 | 0.49 | 112.45 | (0.00) | 112.45 |
| 33. Clean the walls and ceiling - Heavy | 627.78 SF | 0.86 | 0.50 | 540.39 | (0.00) | 540.39 |
| 34. Deodorization chamber - Ozone treatment | 1,221.33 CF | 0.11 | 0.00 | 134.35 | (0.00) | 134.35 |
| 35. HEPA Vacuuming - Detailed - (PER SF) | 627.78 SF | 1.03 | 0.00 | 646.61 | (0.00) | 646.61 |
| **Totals: Downstairs Hallway** | | | **1.89** | **1,754.20** | **0.00** | **1,754.20** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Men's Restroom**                                                                                              **Height: 12'**

| | |
|---|---|
| 540.00 SF Walls | 120.72 SF Ceiling |
| 660.72 SF Walls & Ceiling | 120.72 SF Floor |
| 13.41 SY Flooring | 45.00 LF Floor Perimeter |
| 45.00 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 36. Remove wet ceiling tile & drywall and bag - Cat 3 | 120.72 SF | 2.48 | 1.06 | 300.45 | (0.00) | 300.45 |
| 37. Remove Suspended ceiling grid - 2' x 2' | 120.72 SF | 0.35 | 0.00 | 42.25 | (0.00) | 42.25 |
| 38. Clean the walls and ceiling - Heavy | 660.72 SF | 0.86 | 0.53 | 568.75 | (0.00) | 568.75 |
| 39. Clean floor - tile - Heavy clean | 120.72 SF | 1.10 | 0.58 | 133.37 | (0.00) | 133.37 |
| 40. Deodorization chamber - Ozone treatment | 1,448.67 CF | 0.11 | 0.00 | 159.35 | (0.00) | 159.35 |
| 41. HEPA Vacuuming - Detailed - (PER SF) | 660.72 SF | 1.03 | 0.00 | 680.54 | (0.00) | 680.54 |
| 42. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| **Totals: Men's Restroom** | | | **2.17** | **1,916.18** | **0.00** | **1,916.18** |

**Women's Restroom**                                                                                          **Height: 12'**

| | |
|---|---|
| 656.00 SF Walls | 163.42 SF Ceiling |
| 819.42 SF Walls & Ceiling | 163.42 SF Floor |
| 18.16 SY Flooring | 54.67 LF Floor Perimeter |
| 54.67 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 43. Remove wet ceiling tile & drywall and bag - Cat 3 | 163.42 SF | 2.48 | 1.44 | 406.72 | (0.00) | 406.72 |
| 44. Suspended ceiling grid - Detach & reset | 163.42 SF | 2.21 | 0.00 | 361.16 | (0.00) | 361.16 |
| 45. Clean suspended ceiling grid | 163.42 SF | 0.39 | 0.13 | 63.86 | (0.00) | 63.86 |
| 46. Clean floor - tile - Heavy clean | 163.42 SF | 1.10 | 0.78 | 180.54 | (0.00) | 180.54 |
| 47. Clean the walls and ceiling - Heavy | 819.42 SF | 0.86 | 0.66 | 705.36 | (0.00) | 705.36 |
| 48. Deodorization chamber - Ozone treatment | 1,961.00 CF | 0.11 | 0.00 | 215.71 | (0.00) | 215.71 |
| 49. HEPA Vacuuming - Detailed - (PER SF) | 819.42 SF | 1.03 | 0.00 | 844.00 | (0.00) | 844.00 |
| 50. Remove Light fixture | 3.00 EA | 10.49 | 0.00 | 31.47 | (0.00) | 31.47 |
| **Totals: Women's Restroom** | | | **3.01** | **2,808.82** | **0.00** | **2,808.82** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Walk-in Freezer**                                                                 Height: 12'

374.00 SF Walls                        56.54 SF Ceiling
430.54 SF Walls & Ceiling              56.54 SF Floor
6.28 SY Flooring                       31.17 LF Floor Perimeter
31.17 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 51. Clean floor - tile - Heavy clean | 56.54 SF | 1.10 | 0.27 | 62.46 | (0.00) | 62.46 |
| 52. Clean the walls and ceiling - Heavy | 430.54 SF | 0.86 | 0.34 | 370.60 | (0.00) | 370.60 |
| 53. Deodorization chamber - Ozone treatment | 678.50 CF | 0.11 | 0.00 | 74.64 | (0.00) | 74.64 |
| 54. HEPA Vacuuming - Detailed - (PER SF) | 430.54 SF | 1.03 | 0.00 | 443.46 | (0.00) | 443.46 |
| **Totals: Walk-in Freezer** | | | **0.61** | **951.16** | **0.00** | **951.16** |



**Utility Closet**                                                                  Height: 12'

355.32 SF Walls                        47.76 SF Ceiling
403.08 SF Walls & Ceiling              47.76 SF Floor
5.31 SY Flooring                       29.61 LF Floor Perimeter
29.61 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 55. Clean floor - tile - Heavy clean | 47.76 SF | 1.10 | 0.23 | 52.77 | (0.00) | 52.77 |
| 56. Clean the walls and ceiling - Heavy | 403.08 SF | 0.86 | 0.32 | 346.97 | (0.00) | 346.97 |
| 57. Deodorization chamber - Ozone treatment | 573.13 CF | 0.11 | 0.00 | 63.04 | (0.00) | 63.04 |
| 58. HEPA Vacuuming - Detailed - (PER SF) | 403.08 SF | 1.03 | 0.00 | 415.17 | (0.00) | 415.17 |
| **Totals: Utility Closet** | | | **0.55** | **877.95** | **0.00** | **877.95** |



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



| Main Room | | Height: 14' |
|---|---|---|
| 2298.12 SF Walls | 1897.47 SF Ceiling | |
| 4195.59 SF Walls & Ceiling | 1897.47 SF Floor | |
| 210.83 SY Flooring | 1897.47 SF Floor | |
| 148.91 LF Ceil. Perimeter | 193.99 LF Floor Perimeter | |

| Missing Wall - Goes to Ceiling | 25' 3" X 10' | Opens into RAISED_SITTI |
|---|---|---|
| Missing Wall - Goes to Ceiling | 9' 9" X 10' | Opens into RAISED_SITTI |
| Missing Wall | 7' 5" X 14' | Opens into RAISED_SITTI |
| Missing Wall - Goes to Floor | 3' X 6' 8" | Opens into STAIRWELL |
| Missing Wall - Goes to Ceiling | 5' 6" X 6' 11" | Opens into MAIN_ROOM |
| Missing Wall | 5' 4" X 14' | Opens into DOWNSTAIRS_H |
| Missing Wall - Goes to Ceiling | 7' 5" X 10' | Opens into RAISED_SITTI |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 59. Water extraction from hard surface floor - Cat 3 water | 379.49 SF | 0.98 | 0.00 | 371.90 | (0.00) | 371.90 |
| 60. Remove wet ceiling tile & drywall and bag - Cat 3 | 1,897.47 SF | 2.48 | 16.70 | 4,722.43 | (0.00) | 4,722.43 |
| 61. Remove Suspended ceiling grid - 2' x 2' | 1,897.47 SF | 0.35 | 0.00 | 664.11 | (0.00) | 664.11 |
| 62. Remove Light fixture | 30.00 EA | 10.49 | 0.00 | 314.70 | (0.00) | 314.70 |
| 63. Clean floor - tile - Heavy clean | 1,897.47 SF | 1.10 | 9.11 | 2,096.33 | (0.00) | 2,096.33 |
| 64. Clean with pressure/chemical spray - Heavy | 1,200.00 SF | 0.68 | 0.96 | 816.96 | (0.00) | 816.96 |
| 65. Clean part of the walls and ceiling - Heavy | 2,995.59 SF | 0.86 | 2.40 | 2,578.61 | (0.00) | 2,578.61 |
| 66. Clean cabinetry - lower - inside and out | 39.00 LF | 18.48 | 0.28 | 721.00 | (0.00) | 721.00 |
| 67. Deodorization chamber - Ozone treatment | 26,564. CF 53 | 0.11 | 0.00 | 2,922.10 | (0.00) | 2,922.10 |
| 68. HEPA Vacuuming - Detailed - (PER SF) | 4,195.59 SF | 1.03 | 0.00 | 4,321.46 | (0.00) | 4,321.46 |
| **Totals: Main Room** | | | **29.45** | **19,529.60** | **0.00** | **19,529.60** |



| Kitchen Storage | | Height: 8' |
|---|---|---|
| 297.33 SF Walls | 70.67 SF Ceiling | |
| 368.00 SF Walls & Ceiling | 70.67 SF Floor | |
| 7.85 SY Flooring | 37.17 LF Floor Perimeter | |
| 37.17 LF Ceil. Perimeter | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 69. Remove wet ceiling tile & drywall and bag - Cat 3 | 70.67 SF | 2.48 | 0.62 | 175.88 | (0.00) | 175.88 |
| 70. Remove Suspended ceiling grid - 2' x 2' | 70.67 SF | 0.35 | 0.00 | 24.73 | (0.00) | 24.73 |
| 71. Clean suspended ceiling grid | 70.67 SF | 0.39 | 0.06 | 27.62 | (0.00) | 27.62 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - Kitchen Storage

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 72. Clean the walls and ceiling - Heavy | 368.00 SF | 0.86 | 0.29 | 316.77 | (0.00) | 316.77 |
| 73. Clean floor - tile - Heavy clean | 70.67 SF | 1.10 | 0.34 | 78.08 | (0.00) | 78.08 |
| 74. Deodorization chamber - Ozone treatment | 565.33 CF | 0.11 | 0.00 | 62.19 | (0.00) | 62.19 |
| 75. HEPA Vacuuming - Detailed - (PER SF) | 368.00 SF | 1.03 | 0.00 | 379.04 | (0.00) | 379.04 |
| **Totals: Kitchen Storage** | | | 1.31 | 1,064.31 | 0.00 | 1,064.31 |
| **Total: Main Level** | | | 100.19 | 53,447.08 | 0.00 | 53,447.08 |

### Level 2

**Level 2**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 76. Remove Recessed light fixture | 45.00 EA | 14.01 | 0.00 | 630.45 | (0.00) | 630.45 |
| 77. Remove Light fixture | 10.00 EA | 10.49 | 0.00 | 104.90 | (0.00) | 104.90 |
| 78. Remove Heat/AC register - Mechanically attached | 27.00 EA | 3.15 | 0.00 | 85.05 | (0.00) | 85.05 |
| **Total: Level 2** | | | 0.00 | 820.40 | 0.00 | 820.40 |

| **Main Upstairs Hallway** | | **Height: 12'** |
|---|---|---|
| 1044.90 SF Walls | | 277.09 SF Ceiling |
| 1321.99 SF Walls & Ceiling | | 277.09 SF Floor |
| 30.79 SY Flooring | | 80.59 LF Floor Perimeter |
| 95.18 LF Ceil. Perimeter | | |

| Missing Wall - Goes to Floor | 3' 4" X 6' 8" | Opens into Exterior |
|---|---|---|
| Missing Wall - Goes to Floor | 4' X 6' 8" | Opens into WOMENS_RESTR |
| Missing Wall - Goes to Floor | 4' X 6' 8" | Opens into MENS_RESTROO |
| Missing Wall - Goes to Floor | 3' 3" X 6' 8" | Opens into SIDE_UPSTAIR |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 79. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 277.09 SF | 1.91 | 1.33 | 530.57 | (0.00) | 530.57 |
| 80. Additional cost for high wall or ceiling - 11' to 14' | 372.27 SF | 0.06 | 0.00 | 22.34 | (0.00) | 22.34 |
| 81. Deodorization chamber - Ozone treatment | 3,325.12 CF | 0.11 | 0.00 | 365.76 | (0.00) | 365.76 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Main Upstairs Hallway**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 82. HEPA Vacuuming - Detailed - (PER SF) | 1,321.99 SF | 1.03 | 0.00 | 1,361.65 | (0.00) | 1,361.65 |
| 83. Tear out wet drywall, cleanup, bag - Cat 3 | 1,321.99 SF | 2.00 | 17.98 | 2,661.96 | (0.00) | 2,661.96 |
| 84. Tear out trim and bag for disposal - up to Cat 3 | 95.18 LF | 1.20 | 1.37 | 115.59 | (0.00) | 115.59 |
| 85. Clean floor or roof joist system - Heavy | 277.09 SF | 1.68 | 0.44 | 465.95 | (0.00) | 465.95 |
| 86. Clean stud wall - Heavy | 1,044.90 SF | 1.35 | 1.67 | 1,412.29 | (0.00) | 1,412.29 |
| 87. Seal stud wall for odor control (shellac) | 1,044.90 SF | 1.60 | 29.26 | 1,701.10 | (0.00) | 1,701.10 |
| 88. Seal floor or ceiling joist system (shellac) | 277.09 SF | 2.18 | 9.09 | 613.15 | (0.00) | 613.15 |
| 89. Accelerator Alkaline Booster* | 1,321.99 SF | 1.80 | 0.00 | 2,379.58 | (0.00) | 2,379.58 |
| **Totals: Main Upstairs Hallway** | | | **61.14** | **11,629.94** | **0.00** | **11,629.94** |

**WH Room**                                                                    Height: 12'

396.00 SF Walls                      67.72 SF Ceiling
463.72 SF Walls & Ceiling            67.72 SF Floor
7.52 SY Flooring                     33.00 LF Floor Perimeter
33.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 90. Clean more than the walls and ceiling - Heavy | 531.44 SF | 0.86 | 0.42 | 457.46 | (0.00) | 457.46 |
| 91. Additional cost for high wall or ceiling - 11' to 14' | 100.72 SF | 0.06 | 0.00 | 6.04 | (0.00) | 6.04 |
| 92. Deodorization chamber - Ozone treatment | 812.67 CF | 0.11 | 0.00 | 89.39 | (0.00) | 89.39 |
| 93. HEPA Vacuuming - Detailed - (PER SF) | 463.72 SF | 1.03 | 0.00 | 477.63 | (0.00) | 477.63 |
| 94. Accelerator Alkaline Booster* | 463.72 SF | 1.80 | 0.00 | 834.70 | (0.00) | 834.70 |
| **Totals: WH Room** | | | **0.42** | **1,865.22** | **0.00** | **1,865.22** |



**Side Upstairs Hallway**                                                      Height: 12'

526.33 SF Walls                      93.33 SF Ceiling
619.67 SF Walls & Ceiling            93.33 SF Floor
10.37 SY Flooring                    42.42 LF Floor Perimeter
45.67 LF Ceil. Perimeter

**Missing Wall - Goes to Floor**          3' 3" X 6' 8"          Opens into MAIN_UPSTAIR



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 95.  Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 93.33 SF | 1.91 | 0.45 | 178.71 | (0.00) | 178.71 |
| 96.  Clean more than the walls and ceiling - Heavy | 713.00 SF | 0.86 | 0.57 | 613.75 | (0.00) | 613.75 |
| 97.  Additional cost for high wall or ceiling - 11' to 14' | 139.00 SF | 0.06 | 0.00 | 8.34 | (0.00) | 8.34 |
| 98.  HEPA Vacuuming - Detailed - (PER SF) | 619.67 SF | 1.03 | 0.00 | 638.26 | (0.00) | 638.26 |
| 99.  Deodorization chamber - Ozone treatment | 1,120.00 CF | 0.11 | 0.00 | 123.20 | (0.00) | 123.20 |
| 100.  Tear out wet drywall, cleanup, bag - Cat 3 | 619.67 SF | 2.00 | 8.43 | 1,247.77 | (0.00) | 1,247.77 |
| 101.  Tear out trim and bag for disposal - up to Cat 3 | 45.67 LF | 1.20 | 0.66 | 55.46 | (0.00) | 55.46 |
| 102.  Clean floor or roof joist system - Heavy | 93.33 SF | 1.68 | 0.15 | 156.94 | (0.00) | 156.94 |
| 103.  Clean stud wall - Heavy | 526.33 SF | 1.35 | 0.84 | 711.39 | (0.00) | 711.39 |
| 104.  Seal stud wall for odor control (shellac) | 526.33 SF | 1.60 | 14.74 | 856.87 | (0.00) | 856.87 |
| 105.  Seal floor or ceiling joist system (shellac) | 93.33 SF | 2.18 | 3.06 | 206.52 | (0.00) | 206.52 |
| 106.  Accelerator Alkaline Booster* | 619.67 SF | 1.80 | 0.00 | 1,115.41 | (0.00) | 1,115.41 |
| **Totals: Side Upstairs Hallway** | | | **28.90** | **5,912.62** | **0.00** | **5,912.62** |



**Side Room**                                                        **Height: 12'**

674.00 SF Walls                              185.21 SF Ceiling
859.21 SF Walls & Ceiling                    185.21 SF Floor
20.58 SY Flooring                            56.17 LF Floor Perimeter
56.17 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 107.  Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 185.21 SF | 1.91 | 0.89 | 354.64 | (0.00) | 354.64 |
| 108.  Clean more than the walls and ceiling - Heavy | 1,044.42 SF | 0.86 | 0.84 | 899.04 | (0.00) | 899.04 |
| 109.  Additional cost for high wall or ceiling - 11' to 14' | 241.38 SF | 0.06 | 0.00 | 14.48 | (0.00) | 14.48 |
| 110.  Deodorization chamber - Ozone treatment | 2,222.50 CF | 0.11 | 0.00 | 244.48 | (0.00) | 244.48 |
| 111.  HEPA Vacuuming - Detailed - (PER SF) | 859.21 SF | 1.03 | 0.00 | 884.99 | (0.00) | 884.99 |
| 112.  Tear out wet drywall, cleanup, bag - Cat 3 | 859.21 SF | 2.00 | 11.69 | 1,730.11 | (0.00) | 1,730.11 |
| 113.  Tear out trim and bag for disposal - up to Cat 3 | 56.17 LF | 1.20 | 0.81 | 68.21 | (0.00) | 68.21 |
| 114.  Clean floor or roof joist system - Heavy | 185.21 SF | 1.68 | 0.30 | 311.45 | (0.00) | 311.45 |
| 115.  Clean stud wall - Heavy | 674.00 SF | 1.35 | 1.08 | 910.98 | (0.00) | 910.98 |
| 116.  Seal stud wall for odor control (shellac) | 674.00 SF | 1.60 | 18.87 | 1,097.27 | (0.00) | 1,097.27 |
| 117.  Seal floor or ceiling joist system (shellac) | 185.21 SF | 2.18 | 6.08 | 409.84 | (0.00) | 409.84 |
| 118.  Accelerator Alkaline Booster* | 859.21 SF | 1.80 | 0.00 | 1,546.58 | (0.00) | 1,546.58 |
| **Totals: Side Room** | | | **40.56** | **8,472.07** | **0.00** | **8,472.07** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Backroom**                                                          Height: 12'

782.00 SF Walls                      263.96 SF Ceiling
1045.96 SF Walls & Ceiling           263.96 SF Floor
29.33 SY Flooring                    65.17 LF Floor Perimeter
65.17 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 119. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 263.96 SF | 1.91 | 1.27 | 505.43 | (0.00) | 505.43 |
| 120. Clean more than the walls and ceiling - Heavy | 1,309.92 SF | 0.86 | 1.05 | 1,127.58 | (0.00) | 1,127.58 |
| 121. Additional cost for high wall or ceiling - 11' to 14' | 329.13 SF | 0.06 | 0.00 | 19.75 | (0.00) | 19.75 |
| 122. Deodorization chamber - Ozone treatment | 3,167.50 CF | 0.11 | 0.00 | 348.43 | (0.00) | 348.43 |
| 123. HEPA Vacuuming - Detailed - (PER SF) | 1,045.96 SF | 1.03 | 0.00 | 1,077.34 | (0.00) | 1,077.34 |
| 124. Tear out wet drywall, cleanup, bag - Cat 3 | 1,045.96 SF | 2.00 | 14.22 | 2,106.14 | (0.00) | 2,106.14 |
| 125. Tear out trim and bag for disposal - up to Cat 3 | 65.17 LF | 1.20 | 0.94 | 79.14 | (0.00) | 79.14 |
| 126. Clean floor or roof joist system - Heavy | 263.96 SF | 1.68 | 0.42 | 443.87 | (0.00) | 443.87 |
| 127. Clean stud wall - Heavy | 782.00 SF | 1.35 | 1.25 | 1,056.95 | (0.00) | 1,056.95 |
| 128. Seal stud wall for odor control (shellac) | 782.00 SF | 1.60 | 21.90 | 1,273.10 | (0.00) | 1,273.10 |
| 129. Seal floor or ceiling joist system (shellac) | 263.96 SF | 2.18 | 8.66 | 584.09 | (0.00) | 584.09 |
| 130. Accelerator Alkaline Booster* | 1,045.96 SF | 1.80 | 0.00 | 1,882.73 | (0.00) | 1,882.73 |
| **Totals: Backroom** | | | **49.71** | **10,504.55** | **0.00** | **10,504.55** |



**Attic Access**                                                     Height: 12'

216.00 SF Walls                      19.91 SF Ceiling
235.91 SF Walls & Ceiling            19.91 SF Floor
2.21 SY Flooring                     18.00 LF Floor Perimeter
18.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 131. Clean more than the walls and ceiling - Heavy | 255.82 SF | 0.86 | 0.20 | 220.21 | (0.00) | 220.21 |
| 132. Additional cost for high wall or ceiling - 11' to 14' | 37.91 SF | 0.06 | 0.00 | 2.27 | (0.00) | 2.27 |
| 133. Deodorization chamber - Ozone treatment | 238.92 CF | 0.11 | 0.00 | 26.28 | (0.00) | 26.28 |
| 134. HEPA Vacuuming - Detailed - (PER SF) | 235.91 SF | 1.03 | 0.00 | 242.99 | (0.00) | 242.99 |
| 135. Tear out wet drywall, cleanup, bag - Cat 3 | 235.91 SF | 2.00 | 3.21 | 475.03 | (0.00) | 475.03 |
| 136. Tear out trim and bag for disposal - up to Cat 3 | 18.00 LF | 1.20 | 0.26 | 21.86 | (0.00) | 21.86 |
| 137. Clean floor or roof joist system - Heavy | 19.91 SF | 1.68 | 0.03 | 33.48 | (0.00) | 33.48 |
| 138. Clean stud wall - Heavy | 216.00 SF | 1.35 | 0.35 | 291.95 | (0.00) | 291.95 |
| 139. Seal stud wall for odor control (shellac) | 216.00 SF | 1.60 | 6.05 | 351.65 | (0.00) | 351.65 |
| 140. Seal floor or ceiling joist system (shellac) | 19.91 SF | 2.18 | 0.65 | 44.05 | (0.00) | 44.05 |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Attic Access**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 141. Accelerator Alkaline Booster* | 235.91 SF | 1.80 | 0.00 | 424.64 | (0.00) | 424.64 |
| **Totals: Attic Access** | | | 10.75 | 2,134.41 | 0.00 | 2,134.41 |



**Power Box Room**                                                                   Height: 12'

384.00 SF Walls
431.33 SF Walls & Ceiling
5.26 SY Flooring
32.00 LF Ceil. Perimeter

47.33 SF Ceiling
47.33 SF Floor
32.00 LF Floor Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 142. Clean more than the walls and ceiling - Heavy | 478.65 SF | 0.86 | 0.38 | 412.02 | (0.00) | 412.02 |
| 143. Additional cost for high wall or ceiling - 11' to 14' | 79.33 SF | 0.06 | 0.00 | 4.76 | (0.00) | 4.76 |
| 144. Deodorization chamber - Ozone treatment | 567.92 CF | 0.11 | 0.00 | 62.47 | (0.00) | 62.47 |
| 145. HEPA Vacuuming - Detailed - (PER SF) | 431.33 SF | 1.03 | 0.00 | 444.27 | (0.00) | 444.27 |
| 146. Tear out wet drywall, cleanup, bag - Cat 3 | 431.33 SF | 2.00 | 5.87 | 868.53 | (0.00) | 868.53 |
| 147. Tear out trim and bag for disposal - up to Cat 3 | 32.00 LF | 1.20 | 0.46 | 38.86 | (0.00) | 38.86 |
| 148. Clean floor or roof joist system - Heavy | 47.33 SF | 1.68 | 0.08 | 79.59 | (0.00) | 79.59 |
| 149. Clean stud wall - Heavy | 384.00 SF | 1.35 | 0.61 | 519.01 | (0.00) | 519.01 |
| 150. Seal stud wall for odor control (shellac) | 384.00 SF | 1.60 | 10.75 | 625.15 | (0.00) | 625.15 |
| 151. Seal floor or ceiling joist system (shellac) | 47.33 SF | 2.18 | 1.55 | 104.73 | (0.00) | 104.73 |
| 152. Accelerator Alkaline Booster* | 431.33 SF | 1.80 | 0.00 | 776.39 | (0.00) | 776.39 |
| **Totals: Power Box Room** | | | 19.70 | 3,935.78 | 0.00 | 3,935.78 |



**GRA Closet**                                                                   Height: 12'

269.39 SF Walls
296.32 SF Walls & Ceiling
2.99 SY Flooring
22.45 LF Ceil. Perimeter

26.93 SF Ceiling
26.93 SF Floor
22.45 LF Floor Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - GRA Closet**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 153. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 26.93 SF | 1.91 | 0.13 | 51.57 | (0.00) | 51.57 |
| 154. Clean more than the walls and ceiling - Heavy | 323.25 SF | 0.86 | 0.26 | 278.26 | (0.00) | 278.26 |
| 155. Additional cost for high wall or ceiling - 11' to 14' | 49.38 SF | 0.06 | 0.00 | 2.96 | (0.00) | 2.96 |
| 156. Deodorization chamber - Ozone treatment | 323.15 CF | 0.11 | 0.00 | 35.55 | (0.00) | 35.55 |
| 157. HEPA Vacuuming - Detailed - (PER SF) | 296.32 SF | 1.03 | 0.00 | 305.21 | (0.00) | 305.21 |
| 158. Tear out wet drywall, cleanup, bag - Cat 3 | 296.32 SF | 2.00 | 4.03 | 596.67 | (0.00) | 596.67 |
| 159. Tear out trim and bag for disposal - up to Cat 3 | 22.45 LF | 1.20 | 0.32 | 27.26 | (0.00) | 27.26 |
| 160. Clean floor or roof joist system - Heavy | 26.93 SF | 1.68 | 0.04 | 45.28 | (0.00) | 45.28 |
| 161. Clean stud wall - Heavy | 269.39 SF | 1.35 | 0.43 | 364.11 | (0.00) | 364.11 |
| 162. Seal stud wall for odor control (shellac) | 269.39 SF | 1.60 | 7.54 | 438.56 | (0.00) | 438.56 |
| 163. Seal floor or ceiling joist system (shellac) | 26.93 SF | 2.18 | 0.88 | 59.59 | (0.00) | 59.59 |
| 164. Accelerator Alkaline Booster* | 296.32 SF | 1.80 | 0.00 | 533.38 | (0.00) | 533.38 |
| **Totals: GRA Closet** | | | **13.63** | **2,738.40** | **0.00** | **2,738.40** |



| **Great Room Addition** | | | | | **Height: 12'** | |
|---|---|---|---|---|---|---|

742.57 SF Walls        249.54 SF Ceiling
992.11 SF Walls & Ceiling    249.54 SF Floor
27.73 SY Flooring          61.88 LF Floor Perimeter
61.88 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 165. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 249.54 SF | 1.91 | 1.20 | 477.82 | (0.00) | 477.82 |
| 166. Clean more than the walls and ceiling - Heavy | 1,241.66 SF | 0.86 | 0.99 | 1,068.82 | (0.00) | 1,068.82 |
| 167. Additional cost for high wall or ceiling - 11' to 14' | 311.42 SF | 0.06 | 0.00 | 18.69 | (0.00) | 18.69 |
| 168. Deodorization chamber - Ozone treatment | 2,994.53 CF | 0.11 | 0.00 | 329.40 | (0.00) | 329.40 |
| 169. HEPA Vacuuming - Detailed - (PER SF) | 992.11 SF | 1.03 | 0.00 | 1,021.87 | (0.00) | 1,021.87 |
| 170. Tear out wet drywall, cleanup, bag - Cat 3 | 992.11 SF | 2.00 | 13.49 | 1,997.71 | (0.00) | 1,997.71 |
| 171. Tear out trim and bag for disposal - up to Cat 3 | 61.88 LF | 1.20 | 0.89 | 75.15 | (0.00) | 75.15 |
| 172. Clean floor or roof joist system - Heavy | 249.54 SF | 1.68 | 0.40 | 419.63 | (0.00) | 419.63 |
| 173. Clean stud wall - Heavy | 742.57 SF | 1.35 | 1.19 | 1,003.66 | (0.00) | 1,003.66 |
| 174. Seal stud wall for odor control (shellac) | 742.57 SF | 1.60 | 20.79 | 1,208.90 | (0.00) | 1,208.90 |
| 175. Seal floor or ceiling joist system (shellac) | 249.54 SF | 2.18 | 8.18 | 552.18 | (0.00) | 552.18 |
| 176. Accelerator Alkaline Booster* | 992.11 SF | 1.80 | 0.00 | 1,785.80 | (0.00) | 1,785.80 |

## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Great Room Addition**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| **Totals: Great Room Addition** | | | 47.13 | 9,959.63 | 0.00 | 9,959.63 |



**Great Room**                                                                 Height: 12'

| 1078.00 SF Walls | 472.74 SF Ceiling |
|---|---|
| 1550.74 SF Walls & Ceiling | 472.74 SF Floor |
| 52.53 SY Flooring | 89.83 LF Floor Perimeter |
| 89.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 177. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 472.74 SF | 1.91 | 2.27 | 905.20 | (0.00) | 905.20 |
| 178. Clean more than the walls and ceiling - Heavy | 2,023.47 SF | 0.86 | 1.62 | 1,741.80 | (0.00) | 1,741.80 |
| 179. Additional cost for high wall or ceiling - 11' to 14' | 562.57 SF | 0.06 | 0.00 | 33.75 | (0.00) | 33.75 |
| 180. Deodorization chamber - Ozone treatment | 5,672.83 CF | 0.11 | 0.00 | 624.01 | (0.00) | 624.01 |
| 181. HEPA Vacuuming - Detailed - (PER SF) | 1,550.74 SF | 1.03 | 0.00 | 1,597.26 | (0.00) | 1,597.26 |
| 182. Tear out wet drywall, cleanup, bag - Cat 3 | 1,550.74 SF | 2.00 | 21.09 | 3,122.57 | (0.00) | 3,122.57 |
| 183. Tear out trim and bag for disposal - up to Cat 3 | 89.83 LF | 1.20 | 1.29 | 109.09 | (0.00) | 109.09 |
| 184. Clean floor or roof joist system - Heavy | 472.74 SF | 1.68 | 0.76 | 794.96 | (0.00) | 794.96 |
| 185. Clean stud wall - Heavy | 1,078.00 SF | 1.35 | 1.72 | 1,457.02 | (0.00) | 1,457.02 |
| 186. Seal stud wall for odor control (shellac) | 1,078.00 SF | 1.60 | 30.18 | 1,754.98 | (0.00) | 1,754.98 |
| 187. Seal floor or ceiling joist system (shellac) | 472.74 SF | 2.18 | 15.51 | 1,046.08 | (0.00) | 1,046.08 |
| 188. Accelerator Alkaline Booster* | 1,550.74 SF | 1.80 | 0.00 | 2,791.33 | (0.00) | 2,791.33 |
| **Totals: Great Room** | | | 74.44 | 15,978.05 | 0.00 | 15,978.05 |

**GR Closet**                                                                 Height: 12'

| 502.00 SF Walls | 59.79 SF Ceiling |
|---|---|
| 561.79 SF Walls & Ceiling | 59.79 SF Floor |
| 6.64 SY Flooring | 41.83 LF Floor Perimeter |
| 41.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - GR Closet

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 189. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 59.79 SF | 1.91 | 0.29 | 114.49 | (0.00) | 114.49 |
| 190. Clean more than the walls and ceiling - Heavy | 621.58 SF | 0.86 | 0.50 | 535.06 | (0.00) | 535.06 |
| 191. Additional cost for high wall or ceiling - 11' to 14' | 101.63 SF | 0.06 | 0.00 | 6.10 | (0.00) | 6.10 |
| 192. Deodorization chamber - Ozone treatment | 717.50 CF | 0.11 | 0.00 | 78.93 | (0.00) | 78.93 |
| 193. HEPA Vacuuming - Detailed - (PER SF) | 561.79 SF | 1.03 | 0.00 | 578.64 | (0.00) | 578.64 |
| 194. Tear out wet drywall, cleanup, bag - Cat 3 | 561.79 SF | 2.00 | 7.64 | 1,131.22 | (0.00) | 1,131.22 |
| 195. Tear out trim and bag for disposal - up to Cat 3 | 41.83 LF | 1.20 | 0.60 | 50.80 | (0.00) | 50.80 |
| 196. Clean floor or roof joist system - Heavy | 59.79 SF | 1.68 | 0.10 | 100.55 | (0.00) | 100.55 |
| 197. Clean stud wall - Heavy | 502.00 SF | 1.35 | 0.80 | 678.50 | (0.00) | 678.50 |
| 198. Seal stud wall for odor control (shellac) | 502.00 SF | 1.60 | 14.06 | 817.26 | (0.00) | 817.26 |
| 199. Seal floor or ceiling joist system (shellac) | 59.79 SF | 2.18 | 1.96 | 132.30 | (0.00) | 132.30 |
| 200. Accelerator Alkaline Booster* | 561.79 SF | 1.80 | 0.00 | 1,011.22 | (0.00) | 1,011.22 |
| **Totals: GR Closet** | | | **25.95** | **5,235.07** | **0.00** | **5,235.07** |



**Mens Restroom Entrance**                                                  **Height: 12'**

179.44 SF Walls                          16.36 SF Ceiling
195.79 SF Walls & Ceiling                16.36 SF Floor
1.82 SY Flooring                         13.18 LF Floor Perimeter
17.18 LF Ceil. Perimeter

**Missing Wall - Goes to Floor**        4' X 6' 8"          **Opens into MAIN_UPSTAIR**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 201. Tear out wet non-salv. gluedn. cpt, cut/bag - Cat 3 water | 16.36 SF | 1.91 | 0.08 | 31.33 | (0.00) | 31.33 |
| 202. Clean more than the walls and ceiling - Heavy | 212.15 SF | 0.86 | 0.17 | 182.62 | (0.00) | 182.62 |
| 203. Additional cost for high wall or ceiling - 11' to 14' | 33.53 SF | 0.06 | 0.00 | 2.01 | (0.00) | 2.01 |
| 204. Deodorization chamber - Ozone treatment | 196.30 CF | 0.11 | 0.00 | 21.59 | (0.00) | 21.59 |
| 205. HEPA Vacuuming - Detailed - (PER SF) | 195.79 SF | 1.03 | 0.00 | 201.66 | (0.00) | 201.66 |
| 206. Tear out wet drywall, cleanup, bag - Cat 3 | 195.79 SF | 2.00 | 2.66 | 394.24 | (0.00) | 394.24 |
| 207. Tear out trim and bag for disposal - up to Cat 3 | 17.18 LF | 1.20 | 0.25 | 20.87 | (0.00) | 20.87 |
| 208. Clean floor or roof joist system - Heavy | 16.36 SF | 1.68 | 0.03 | 27.51 | (0.00) | 27.51 |
| 209. Clean stud wall - Heavy | 179.44 SF | 1.35 | 0.29 | 242.53 | (0.00) | 242.53 |
| 210. Seal stud wall for odor control (shellac) | 179.44 SF | 1.60 | 5.02 | 292.12 | (0.00) | 292.12 |
| 211. Seal floor or ceiling joist system (shellac) | 16.36 SF | 2.18 | 0.54 | 36.20 | (0.00) | 36.20 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### CONTINUED - Mens Restroom Entrance

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 212. Accelerator Alkaline Booster* | 195.79 SF | 1.80 | 0.00 | 352.42 | (0.00) | 352.42 |
| **Totals: Mens Restroom Entrance** | | | **9.04** | **1,805.10** | **0.00** | **1,805.10** |



**Power Box Closet**       **Height: 12'**

276.00 SF Walls  
306.00 SF Walls & Ceiling  
3.33 SY Flooring  
23.00 LF Ceil. Perimeter  

30.00 SF Ceiling  
30.00 SF Floor  
23.00 LF Floor Perimeter  

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 213. Clean more than the walls and ceiling - Heavy | 336.00 SF | 0.86 | 0.27 | 289.23 | (0.00) | 289.23 |
| 214. Additional cost for high wall or ceiling - 11' to 14' | 53.00 SF | 0.06 | 0.00 | 3.18 | (0.00) | 3.18 |
| 215. Deodorization chamber - Ozone treatment | 360.00 CF | 0.11 | 0.00 | 39.60 | (0.00) | 39.60 |
| 216. HEPA Vacuuming - Detailed - (PER SF) | 306.00 SF | 1.03 | 0.00 | 315.18 | (0.00) | 315.18 |
| 217. Tear out wet drywall, cleanup, bag - Cat 3 | 306.00 SF | 2.00 | 4.16 | 616.16 | (0.00) | 616.16 |
| 218. Tear out trim and bag for disposal - up to Cat 3 | 23.00 LF | 1.20 | 0.33 | 27.93 | (0.00) | 27.93 |
| 219. Clean floor or roof joist system - Heavy | 30.00 SF | 1.68 | 0.05 | 50.45 | (0.00) | 50.45 |
| 220. Clean stud wall - Heavy | 276.00 SF | 1.35 | 0.44 | 373.04 | (0.00) | 373.04 |
| 221. Seal stud wall for odor control (shellac) | 276.00 SF | 1.60 | 7.73 | 449.33 | (0.00) | 449.33 |
| 222. Seal floor or ceiling joist system (shellac) | 30.00 SF | 2.18 | 0.98 | 66.38 | (0.00) | 66.38 |
| 223. Accelerator Alkaline Booster* | 306.00 SF | 1.80 | 0.00 | 550.80 | (0.00) | 550.80 |
| **Totals: Power Box Closet** | | | **13.96** | **2,781.28** | **0.00** | **2,781.28** |



**Womens Restroom Entrance**       **Height: 12'**

237.33 SF Walls  
265.33 SF Walls & Ceiling  
3.11 SY Flooring  
22.00 LF Ceil. Perimeter  

28.00 SF Ceiling  
28.00 SF Floor  
18.00 LF Floor Perimeter  

**Missing Wall - Goes to Floor**     4' X 6' 8"       **Opens into MAIN_UPSTAIR**



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 224. Clean the walls and ceiling - Heavy | 265.33 SF | 0.86 | 0.21 | 228.39 | (0.00) | 228.39 |
| 225. Clean floor - tile - Heavy clean | 28.00 SF | 1.10 | 0.13 | 30.93 | (0.00) | 30.93 |
| 226. Additional cost for high wall or ceiling - 11' to 14' | 50.00 SF | 0.06 | 0.00 | 3.00 | (0.00) | 3.00 |
| 227. Deodorization chamber - Ozone treatment | 336.00 CF | 0.11 | 0.00 | 36.96 | (0.00) | 36.96 |
| 228. HEPA Vacuuming - Detailed - (PER SF) | 265.33 SF | 1.03 | 0.00 | 273.29 | (0.00) | 273.29 |
| 229. Tear out wet drywall, cleanup, bag - Cat 3 | 265.33 SF | 2.00 | 3.61 | 534.27 | (0.00) | 534.27 |
| 230. Tear out trim and bag for disposal - up to Cat 3 | 22.00 LF | 1.20 | 0.32 | 26.72 | (0.00) | 26.72 |
| 231. Clean floor or roof joist system - Heavy | 28.00 SF | 1.68 | 0.04 | 47.08 | (0.00) | 47.08 |
| 232. Clean stud wall - Heavy | 237.33 SF | 1.35 | 0.38 | 320.78 | (0.00) | 320.78 |
| 233. Seal stud wall for odor control (shellac) | 237.33 SF | 1.60 | 6.65 | 386.38 | (0.00) | 386.38 |
| 234. Seal floor or ceiling joist system (shellac) | 28.00 SF | 2.18 | 0.92 | 61.96 | (0.00) | 61.96 |
| 235. Accelerator Alkaline Booster* | 265.33 SF | 1.80 | 0.00 | 477.59 | (0.00) | 477.59 |
| **Totals: Womens Restroom Entrance** | | | **12.26** | **2,427.35** | **0.00** | **2,427.35** |



**Womens Upstairs Restroom**                                    **Height: 12'**

594.00 SF Walls                          150.76 SF Ceiling
744.76 SF Walls & Ceiling                150.76 SF Floor
16.75 SY Flooring                        49.50 LF Floor Perimeter
49.50 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 236. Clean the walls and ceiling - Heavy | 744.76 SF | 0.86 | 0.60 | 641.09 | (0.00) | 641.09 |
| 237. Clean floor - tile - Heavy clean | 150.76 SF | 1.10 | 0.72 | 166.56 | (0.00) | 166.56 |
| 238. Additional cost for high wall or ceiling - 11' to 14' | 200.26 SF | 0.06 | 0.00 | 12.02 | (0.00) | 12.02 |
| 239. Deodorization chamber - Ozone treatment | 1,809.17 CF | 0.11 | 0.00 | 199.01 | (0.00) | 199.01 |
| 240. HEPA Vacuuming - Detailed - (PER SF) | 744.76 SF | 1.03 | 0.00 | 767.10 | (0.00) | 767.10 |
| 241. Tear out wet drywall, cleanup, bag - Cat 3 | 744.76 SF | 2.00 | 10.13 | 1,499.65 | (0.00) | 1,499.65 |
| 242. Tear out trim and bag for disposal - up to Cat 3 | 49.50 LF | 1.20 | 0.71 | 60.11 | (0.00) | 60.11 |
| 243. Clean floor or roof joist system - Heavy | 150.76 SF | 1.68 | 0.24 | 253.52 | (0.00) | 253.52 |
| 244. Clean stud wall - Heavy | 594.00 SF | 1.35 | 0.95 | 802.85 | (0.00) | 802.85 |
| 245. Seal stud wall for odor control (shellac) | 594.00 SF | 1.60 | 16.63 | 967.03 | (0.00) | 967.03 |
| 246. Seal floor or ceiling joist system (shellac) | 150.76 SF | 2.18 | 4.94 | 333.60 | (0.00) | 333.60 |
| 247. Accelerator Alkaline Booster* | 744.76 SF | 1.80 | 0.00 | 1,340.57 | (0.00) | 1,340.57 |
| **Totals: Womens Upstairs Restroom** | | | **34.92** | **7,043.11** | **0.00** | **7,043.11** |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309



**Mens Upstairs Restroom**                                    Height: 12'

564.61 SF Walls                      133.72 SF Ceiling
698.33 SF Walls & Ceiling            133.72 SF Floor
14.86 SY Flooring                    47.05 LF Floor Perimeter
47.05 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 248. Clean the walls and ceiling - Heavy | 698.33 SF | 0.86 | 0.56 | 601.12 | (0.00) | 601.12 |
| 249. Clean floor - tile - Heavy clean | 133.72 SF | 1.10 | 0.64 | 147.73 | (0.00) | 147.73 |
| 250. Additional cost for high wall or ceiling - 11' to 14' | 180.77 SF | 0.06 | 0.00 | 10.85 | (0.00) | 10.85 |
| 251. Deodorization chamber - Ozone treatment | 1,604.64 CF | 0.11 | 0.00 | 176.51 | (0.00) | 176.51 |
| 252. HEPA Vacuuming - Detailed - (PER SF) | 698.33 SF | 1.03 | 0.00 | 719.28 | (0.00) | 719.28 |
| 253. Tear out wet drywall, cleanup, bag - Cat 3 | 698.33 SF | 2.00 | 9.50 | 1,406.16 | (0.00) | 1,406.16 |
| 254. Tear out trim and bag for disposal - up to Cat 3 | 47.05 LF | 1.20 | 0.68 | 57.14 | (0.00) | 57.14 |
| 255. Clean floor or roof joist system - Heavy | 133.72 SF | 1.68 | 0.21 | 224.86 | (0.00) | 224.86 |
| 256. Clean stud wall - Heavy | 564.61 SF | 1.35 | 0.90 | 763.12 | (0.00) | 763.12 |
| 257. Seal stud wall for odor control (shellac) | 564.61 SF | 1.60 | 15.81 | 919.19 | (0.00) | 919.19 |
| 258. Seal floor or ceiling joist system (shellac) | 133.72 SF | 2.18 | 4.39 | 295.90 | (0.00) | 295.90 |
| 259. Accelerator Alkaline Booster* | 698.33 SF | 1.80 | 0.00 | 1,256.99 | (0.00) | 1,256.99 |
| **Totals: Mens Upstairs Restroom** | | | **32.69** | **6,578.85** | **0.00** | **6,578.85** |
| **Total: Level 2** | | | **475.20** | **99,821.83** | **0.00** | **99,821.83** |

## Attic



**Attic Space**                                    Height: 8'

1590.01 SF Walls                     2491.57 SF Ceiling
4081.58 SF Walls & Ceiling           2491.57 SF Floor
276.84 SY Flooring                   198.75 LF Floor Perimeter
198.75 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 260. Remove Blown-in insulation - Machine removal | 2,491.57 SF | 2.11 | 25.91 | 5,283.12 | (0.00) | 5,283.12 |
| 261. Deodorization chamber - Ozone treatment | 19,932. CF 53 | 0.11 | 0.00 | 2,192.58 | (0.00) | 2,192.58 |
| 262. HEPA Vacuuming - Detailed - (PER SF) | 4,983.13 SF | 1.03 | 0.00 | 5,132.62 | (0.00) | 5,132.62 |
| 263. Clean floor or roof joist system - Heavy | 4,983.13 SF | 1.68 | 7.97 | 8,379.63 | (0.00) | 8,379.63 |
| 264. Seal attic framing (shellac) - up to 5/12 | 2,491.57 SF | 2.31 | 81.72 | 5,837.25 | (0.00) | 5,837.25 |
| 265. Accelerator Alkaline Booster* | 4,081.58 SF | 1.80 | 0.00 | 7,346.84 | (0.00) | 7,346.84 |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Attic Space**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| Totals: Attic Space | | | 115.60 | 34,172.04 | 0.00 | 34,172.04 |
| Total: Attic | | | 115.60 | 34,172.04 | 0.00 | 34,172.04 |

## Miscellaneous

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 266. Emergency service call - during business hours | 1.00 EA | 202.08 | 0.00 | 202.08 | (0.00) | 202.08 |
| 267. Hazardous Waste/Mold Cleaning-Supervisory/Admin- per hour | 140.00 HR | 91.34 | 0.00 | 12,787.60 | (0.00) | 12,787.60 |
| 268. Hazardous Waste/Mold Cleaning Technician - per hour | 560.00 HR | 80.11 | 0.00 | 44,861.60 | (0.00) | 44,861.60 |
| 269. Equipment decontamination charge - per piece of equipment | 11.00 EA | 41.10 | 4.16 | 456.26 | (0.00) | 456.26 |
| 270. Hydroxyl generator - odor counteractant - 3 optics | 96.00 DA | 284.38 | 0.00 | 27,300.48 | (0.00) | 27,300.48 |
| **4 Units running for 19 Days** | | | | | | |
| 271. Negative air fan/Air scrubber (24 hr period) - No monit. | 96.00 DA | 88.13 | 0.00 | 8,460.48 | (0.00) | 8,460.48 |
| **4 units Running for 19 days** | | | | | | |
| 272. Add for HEPA filter (for negative air exhaust fan) | 4.00 EA | 255.56 | 61.42 | 1,083.66 | (0.00) | 1,083.66 |
| 273. Carbon vapor filter (for air scrubber) - 16" x 16" | 4.00 EA | 89.51 | 18.24 | 376.28 | (0.00) | 376.28 |
| 274. Power distribution box - 100+ amp (per day) | 48.00 DA | 128.24 | 0.00 | 6,155.52 | (0.00) | 6,155.52 |
| **2 units Running for 24 days** | | | | | | |
| 275. Axial fan air mover - 1 HP (per 24 hr period)-No monit. | 290.00 EA | 43.75 | 0.00 | 12,687.50 | (0.00) | 12,687.50 |
| **10 units Running for 19 days plus 25 Units for 4 days** | | | | | | |
| 276. Dehumidifier (per 24 hr period) - 160+ ppd - No monitor. | 24.00 EA | 166.88 | 0.00 | 4,005.12 | (0.00) | 4,005.12 |
| **6 Units running for 4 Days** | | | | | | |
| 277. Generator - 35-90KW (per day - 24 hour) - no monitoring | 54.00 DA | 861.34 | 0.00 | 46,512.36 | (0.00) | 46,512.36 |
| 278. General Laborer - per hour | 35.00 HR | 52.49 | 0.00 | 1,837.15 | (0.00) | 1,837.15 |
| For monitoring and refilling generator every 2 days | | | | | | |
| 279. Fuel surcharge | 1.00 EA | 7,500.00 | 0.00 | 7,500.00 | (0.00) | 7,500.00 |
| Gas for generator | | | | | | |
| 280. Box of Chem Sponges* | 6.00 EA | 137.81 | 0.00 | 826.86 | (0.00) | 826.86 |
| 281. Add for personal protective equipment (hazardous cleanup) | 300.00 EA | 16.46 | 294.72 | 5,232.72 | (0.00) | 5,232.72 |
| 282. Personal protective gloves - Disposable (per pair) | 300.00 EA | 0.48 | 11.52 | 155.52 | (0.00) | 155.52 |
| 283. Personal protective mask (N-95) | 100.00 EA | 2.06 | 16.48 | 222.48 | (0.00) | 222.48 |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**CONTINUED - Miscellaneous**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 284.  Tandem axle dump trailer - per load - including dump fees | 3.00 EA | 242.15 | 0.00 | 726.45 | (0.00) | 726.45 |
| **Totals:  Miscellaneous** | | | 406.54 | 181,390.12 | 0.00 | 181,390.12 |
| **Line Item Totals:  FREDGIVENS-MITRV2** | | | 1,097.53 | 368,831.07 | 0.00 | 368,831.07 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 18,566.99 | SF Walls | 8,488.59 | SF Ceiling | 27,055.58 | SF Walls and Ceiling |
| 8,553.15 | SF Floor | 950.35 | SY Flooring | 1,627.97 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 1,605.17 | LF Ceil. Perimeter |
| | | | | | |
| 8,553.15 | Floor Area | 8,863.26 | Total Area | 17,376.38 | Interior Wall Area |
| 7,907.12 | Exterior Wall Area | 654.45 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 367,733.54 |
| Material Sales Tax | 1,097.53 |
| **Replacement Cost Value** | **$368,831.07** |
| **Net Claim** | **$368,831.07** |

Josh Birong



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### Recap of Taxes

|  | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|
| Line Items | 1,097.53 | 0.00 | 0.00 |
| **Total** | **1,097.53** | **0.00** | **0.00** |



# RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

## Recap by Room

Estimate: FREDGIVENS-MITRV2

| | | |
|---|---:|---:|
| **Area: Main Level** | | |
| Stairwell | 11,290.39 | 3.07% |
| Raised Sitting Area | 4,025.92 | 1.09% |
| Kitchen | 9,167.35 | 2.49% |
| Downstairs Hallway | 1,752.31 | 0.48% |
| Men's Restroom | 1,914.01 | 0.52% |
| Women's Restroom | 2,805.81 | 0.76% |
| Walk-in Freezer | 950.55 | 0.26% |
| Utility Closet | 877.40 | 0.24% |
| Main Room | 19,500.15 | 5.30% |
| Kitchen Storage | 1,063.00 | 0.29% |
| **Area Subtotal:  Main Level** | 53,346.89 | 14.51% |
| **Area: Level 2** | 820.40 | 0.22% |
| Main Upstairs Hallway | 11,568.80 | 3.15% |
| WH Room | 1,864.80 | 0.51% |
| Side Upstairs Hallway | 5,883.72 | 1.60% |
| Side Room | 8,431.51 | 2.29% |
| Backroom | 10,454.84 | 2.84% |
| Attic Access | 2,123.66 | 0.58% |
| Power Box Room | 3,916.08 | 1.06% |
| GRA Closet | 2,724.77 | 0.74% |
| Great Room Addition | 9,912.50 | 2.70% |
| Great Room | 15,903.61 | 4.32% |
| GR Closet | 5,209.12 | 1.42% |
| Mens Restroom Entrance | 1,796.06 | 0.49% |
| Power Box Closet | 2,767.32 | 0.75% |
| Womens Restroom Entrance | 2,415.09 | 0.66% |
| Womens Upstairs Restroom | 7,008.19 | 1.91% |
| Mens Upstairs Restroom | 6,546.16 | 1.78% |
| **Area Subtotal:  Level 2** | 99,346.63 | 27.02% |
| **Area: Attic** | | |
| Attic Space | 34,056.44 | 9.26% |
| **Area Subtotal:  Attic** | 34,056.44 | 9.26% |
| Miscellaneous | 180,983.58 | 49.22% |
| **Subtotal of Areas** | 367,733.54 | 100.00% |



**RESTORATION 1 OF AUGUSTA**

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

**Total**                                                                          **367,733.54**        **100.00%**



## RESTORATION 1 OF AUGUSTA

RESTORATION 1 OF AUGUSTA 3831 WRIGHTSBORO RD AUGUSTA, GA 309

### Recap by Category

| Items | Total | % |
|---|---:|---:|
| ACOUSTICAL TREATMENTS | 361.16 | 0.10% |
| CONT: CLEAN - GENERAL ITEMS | 11,156.81 | 3.02% |
| CLEANING | 57,166.83 | 15.50% |
| GENERAL DEMOLITION | 43,899.73 | 11.90% |
| PERMITS AND FEES | 7,500.00 | 2.03% |
| HAZARDOUS MATERIAL REMEDIATION | 135,032.32 | 36.61% |
| LABOR ONLY | 1,837.15 | 0.50% |
| PAINTING | 25,519.94 | 6.92% |
| TEMPORARY REPAIRS | 46,512.36 | 12.61% |
| WATER EXTRACTION & REMEDIATION | 38,747.24 | 10.51% |
| Subtotal | 367,733.54 | 99.70% |
| Material Sales Tax | 1,097.53 | 0.30% |
| Total | 368,831.07 | 100.00% |





Level 2

Attic



Attic

1/2/2024    Page: 29

&#9749; EFILED IN OFFICE
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2025RCCV00211**
CHARLES H.S. LYONS III
MAR 12, 2025 01:03 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

IN THE SUPERIOR COURT OF RICHMOND COUNTY, GEORGIA

Civil Action File No. 2025RCCV00211

|  |  |
|---|---|
| **Maserati Event Center** ) | |
| **Plaintiff** ) | |
| **v.** | **Judge: CHARLES H.S. LYONS III** |
| ) | |
| **MESA UNDERWRITERS SPECIALTY** ) | |
| **INSURANCE CO...** | |
| **Defendant** ) | |

## STANDING ORDER FOR MEDIATION IN CIVIL CASES

In accordance with the mandate of the Georgia Constitution of 1983 that the judicial branch of government provide "speedy, efficient, and inexpensive resolution of disputes and prosecutions," and pursuant to Uniform Superior Court Rule 1.2 as well as the Georgia Supreme Court's Alternative Dispute Resolution Rules encouraging the use of alternative dispute resolution by the courts of this state, the following **Standing Order for Mediation in Civil Cases** is hereby entered. As set forth herein, all contested civil matters filed in the Superior Court of the Augusta Judicial Circuit, shall be mediated in accordance with this Order.

When the presiding judge orders mediation in any case, mediation must be conducted in compliance with this Order. All such mediation shall be conducted in accordance with the rules of the Augusta Judicial Circuit Alternative Dispute Resolution Program (hereinafter "ADR Program.") The referring judge shall enter an Order Referring the Case to ADR. This order will be filed with the Clerk of Court, and a copy of the order will be provided to the ADR Program, the parties, and attorneys of record. Upon referral to the ADR Program, cases shall be screened to determine whether the case is appropriate for ADR, whether the parties are able to compensate the mediator, or whether a need for emergency relief makes referral inappropriate.

## **Selection of a Mediator**

The parties shall agree on a mediator registered by the Georgia Office of Dispute Resolution who have been chosen for service in the Augusta Judicial Circuit ADR Program. In the event that parties desire to use a mediator who has not been chosen for service in the Augusta Judicial Circuit ADR Program, the parties shall petition the Court to utilize any mediator that is registered by the Georgia Office of Dispute Resolution. If the Court approves such petition, the parties shall notify, in writing, the ADR Program of the name of the mediator, the time and location of mediation. The selected mediator shall be paid in accordance with the agreement of the parties and the mediator.

Parties shall contact the mediator directly and schedule the mediation. Plaintiff's counsel shall provide, in writing, the date of mediation and the name of the mediator selected to the ADR Program, by completing the Notice of Mediation Status Form (Attachment A). Unless otherwise agreed, the parties shall share the cost of mediation and should be prepared to pay the mediator at the conclusion of the session.

In the event the parties fail to agree upon a mediator, the presiding judge or the ADR Program shall appoint a neutral mediator and set the mediation fee.

If any party is unable to afford the cost of mediation, that party may contact the ADR Program to request an Application for Fee Waiver/Fee Reduction.

## **Attending Mediation**

Unless exempted by or excused by the Court, the presence of parties at all mediation conferences is required. A party's representative may appear on behalf of the party if the representative has a complete and full understanding of the dispute and full knowledge of the facts, and full authority to settle without further consultation; or a representative of an insurance carrier for any insured party if that representative has full authority to settle without further consultations, with the exception of a telephone consultation with immediately available parties. Upon agreement of all parties, the insurance carrier representative may appear via the telephone, or other virtual medium.

The parties and the attorneys of record shall negotiate in good faith to resolve any issues with the neutral mediator.

Within seven (7) days after mediation, the parties or the attorneys of record shall notify the ADR Program whether mediation was successful.

Compliance with this Order does not require the parties to reach a settlement. The neutral mediator has no authority to compel a settlement, and any settlement must be voluntary. In the absence of settlement, the parties lose none of their rights to a final hearing or trial.

### **Mandatory Exemptions**

The following shall be exempt from mediation except upon petition of all parties, or sua sponte by the court:

1. Appeals from rulings of administrative agencies;
2. Forfeitures of seized properties;
3. Bond validations;
4. Declaratory relief.

The Georgia Supreme Court Alternative Dispute Resolution Rules and the Augusta Judicial Circuit Alternative Dispute Resolution Rules, updated annually, provide protections, immunities, and benefits to parties, counsel, and registered neutrals in properly conducted court-connected mediations. All submissions provided to a registered neutral mediator, discussions, representations, and statements made in connection with a court-connected mediation proceeding shall remain confidential and privileged consistent with Georgia law. The neutral mediator or any observers present in the court-annexed or court-referred ADR may not be subpoenaed or required to testify concerning the mediation in any subsequent proceeding.

**SO ORDERED** this _____ day of _____, 20_____.

_____
Judge, Superior Court
Augusta Judicial Circuit

**IN THE SUPERIOR COURT OF** _____ **COUNTY, GEORGIA**

**Civil Action File No.** _____

```
                                    )
                                    )
                        Plaintiff   )
    v.                              )
                                    )
                                    )
                                    )
                        Defendant   )
```

## NOTICE OF MEDIATION STATUS

☐      I do hereby confirm that the parties in the above-styled action have selected and agreed to the following registered neutral mediator:

Mediator's Name: _____

Date of Mediation: _____

☐      Parties request a mediator be assigned by the Augusta Judicial Circuit ADR Program.

This ___ _____ day of _____, 20_____.

_____
Plaintiff's Counsel

_____
Printed Name:

# IN THE SUPERIOR COURT OF RICHMOND COUNTY
## STATE OF GEORGIA

✤ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2025RCCV00211**

CHARLES H.S. LYONS III
MAR 12, 2025 01:03 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

CIVIL ACTION NUMBER  2025RCCV00211

Maserati Event Center

_____

**PLAINTIFF**

**VS.**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

_____

**DEFENDANT**

### SUMMONS

TO: MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

> **Matthew Brown**
> **Merlin Law Group, PA**
> **4887 Belfort Road**
> **Suite 200**
> **Jacksonville, Florida 32256**
> **mbrown@merlinlawgroup.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 12th day of March, 2025.**

Clerk of Superior Court

_____
*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

SC-1
Rev'd 10/24

Page 1 of 1

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

**Maserati Event Center**

                Plaintiff/Petitioner

vs.

**Mesa Underwriters Specialty Insurance Company**

                Defendant/Respondent

Case No.:     **2025RCCV00211**

AFFIDAVIT OF SERVICE OF
**SUMMONS; COMPLAINT & DEMAND FOR JURY TRIAL;
STANDING ORDER FOR MEDIATION IN CIVIL CASES;
NOTICE OF MEDIATION STATUS; General Civil and
Domestic Relations Case Filing Information Form;
PLAINTIFF'S FIRST SET OF INTERROGATORIES
DIRECTED TO DEFENDANT; PLAINTIFFS' FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT**

Received by **Euael Beyene**, on the **21st day of March, 2025 at 12:07 AM** to be served upon **Commissioner of Insurance and Safety Fire of the State of Georgia at 2 Martin Luther King Jr. Drive, West Tower Suite 702, Atlanta, Fulton County, GA 30334**.
On the **25th day of March, 2025 at 11:57 AM**, I, **Euael Beyene**, SERVED **Commissioner of Insurance and Safety Fire of the State of Georgia at 2 Martin Luther King Jr. Drive, West Tower Suite 702, Atlanta, Fulton County, GA 30334** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Dennison Romeo**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Dennison Romeo who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired white male contact 25-35 years of age, 5'6"-5'8" tall and weighing 140-160 lbs.**

Service Fee Total: **$16.20**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____
      Euael Beyene

          N/A
       Server ID #

     3/26/25
       Date

Notary Public: Subscribed and sworn before me on this ___26th___ day of ___March___ in the year of 20_25_
Personally known to me _____ or _____ identified by the following document:

_____
Notary Public (Legal Signature)

REF: **Maserati Event**

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2025RCCV00211**

CHARLES H.S. LYONS III
MAR 12, 2025 01:03 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

MASERATI EVENT CENTER,

     **Plaintiff,**

vs.

**MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY**

     **Defendant.**

Civil Action No.:

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

COMES NOW, the Plaintiff, MASERATI EVENT CENTER, by and through the undersigned counsel, and hereby serves upon Defendant, MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, Plaintiff's First Requests for Production of Documents to Defendant pursuant to O.C.G.A § 9-11-34:

### DEFINITIONS

1.    "**Document(s),**" "**Document,**" or "**documents**" shall broadly mean any and all writings, drawings, graphs, charts, photographs, and other data compilations, including but not limited to e-mail and other data or information that exists in electronic or magnetic form.

2.    "**Communication**" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

3.    **"Identify"** shall mean:

    a.  when used in reference to a **_document_**, to state the date, and to disclose its present location and custodian.

    b.  when used in reference to a **_person_**, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

    c.  when used in reference to a **_conversation_** or **_communication_**, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

    d.  when used in reference to a **_claim_**, "identify" means to state the date and location the claim arose, the location where the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

4.    **"Relating to"** any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, touches upon, or is in any manner whatsoever pertinent to that subject.

5.    **"Including"** shall mean "including, but not limited to."

6.    **"And"** and **"or"** shall be construed conjunctively or disjunctively as required by the context within the scope of discovery request so as not to exclude any information that might be deemed outside the scope of the request by any other construction.

7.    **"Person"** shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation, public or private, or government entity.

8.      "**Parties**" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

9.      "**Plaintiff**" and "**Policyholder**" means Plaintiff Policyholders and his/her/its employees, representative, agents, employees, servants, officers, and directors.

10.     "**You**," "**Your**," "**Defendant**," and "**Insurance Company**" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, and each person presently or formerly acting or authorized to act on its behalf.

11.     "**Policy**" means Policy No. MP0032006027342 issued by TAPCO UNDERWRITERS, INC.

12.     "**Broker**" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

13.     "**Coverage Letter(s)**" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

14.     "**Loss**" means the event of April 14, 2023, in which Policyholder suffered property damage due to a fire loss.

15.     "**Policyholder's Claim**" or "**Claim**" shall refer to the claim made by Policyholder to Insurance Company for direct physical loss or direct physical damage to the insured property located at 548 Ellis street, Augusta, Georgia 30901 and having claim number(s) 22475952.

## REQUEST FOR PRODUCTION

1.      A certified copy of the complete Policy to include all endorsements.

2.    All documents concerning any agreements between You and the Policyholder, other than the Policy and endorsements issued, including, but not limited to, retrospective rating agreements that You contend may affect the amount or scope of coverage available to the Policyholders under the Policy.

3.    All policies or other documents evidencing or relating to any other insurance that You contend provides coverage for the Policyholder's Claim.

4.    All documents evidencing or relating to any claims or demands for contribution, indemnity, or subornation asserted by You against any third party.

5.    All documents exchanged between You and the Policyholder relating to the Policyholder's Claim.

6.    All documents evidencing or relating to communications between You and the Policyholders relating to the Policyholder's Claim.

7.    All documents exchanged between You and any third party, including but not limited to adjusters, appraisers, engineers, consultants, preferred venders, brokers, agents, insurers, and reinsurers, relating to the Policyholder's Claim.

8.    All documents evidencing or relating to Your internal communications concerning the Policyholder's Claim.

9.    The entire contents of any underwriting file(s) for the Policy. This request includes, but is not limited to, all documents that refer or relate to the negotiation, underwriting, or placement of the Policy.

10.    All communications and other documents exchanged between You and any third party, including any broker, referring or relating to the negotiation, purchase, sale, underwriting, placement and/or renewal of the Policy.

11.     Underwriting manuals (including superseded pages of volumes that are periodically revised) and other guidelines and instructional materials (including, without limitation, workbooks, training manuals, seminar materials, policy annotations, and guideline memoranda) used or prepared by You during the time when You issued the Policy. If you require a Protective Order for the Plaintiff to obtain this information, please provide one.

12.     All documents relating to Policyholder's Claim generated by, prepared by, prepared for, or reviewed by a consulting expert who is not designated to testify in the trial of this matter and whose opinions or reports have been reviewed by or relied upon by experts who may testify at the trial of this matter.

13.     The most recent resume or curriculum vitae, including a bibliography, for each consulting expert who is not designated to testify at the trial of this matter and whose opinions or reports have been reviewed by or relied upon by experts who may testify at the trial of this matter.

14.     For each fact or lay witness You expect to testify at the trial of this matter, all documents reviewed by, prepared by, relied upon, provided to, or received from each such witness relevant to this matter.

15.     All invoices generated by expert witnesses generated for performing all expert witness services to You, including but not limited to, the records review, the pretrial preparation, any telephone conference, any trial testimony anticipated, and any other fee paid by You for expert fees.

16.     The entire contents of all claims or investigative files created in response to the Policyholder's claim. This request includes, but is not limited to, all documents that relate to any review, handling, discussion, evaluation, processing, investigation, supervision, or response to the Policyholder's claim.

17.    All documents evidencing communications relating to your investigation of the Policyholder's claim, to include but not be limited to any written or recorded correspondence whether sent via any means, the entire claims file, and any reports.

18.    All claims handling manuals or similar documents prepared or maintained by You that set forth the procedures, instructions, rules, standards, or guidelines to be followed in connection with the handling, adjusting, investigation, or evaluation of property claims and documentation requirements that were in effect at the time the Policyholder made the claim.

19.    All documents that relate to your understanding or expectation as to what law would govern with respect to disputes between You and the Policyholder as to insurance coverage under the Policy. This shall include, but not be limited to, copies of treaties, standards in the industry, legal authority, rule, case, statute, or code, that will be relied upon in the defense of this case.

20.    All documents evidencing or relating to any reinsurance agreement(s) related to the Policy.

21.    All documents evidencing or relating to any reserves set by You for the Policyholder's claim.

22.    All documents relating to the interpretation or application of the Policy provisions on which You rely to refuse or limit payment of the Policyholder's claim.

23.    All documents relating to or setting forth any opinion or analysis regarding the application of any Policy provisions to the Policyholder's claim.

24.    All documents identified or referred to in your answers to Plaintiff's First Set of Interrogatories.

25.    Copies of any and all documents which, in any way, support Defendant's responses to Plaintiff's First Interrogatories to Defendant.

26.    All documents evidencing any coverage payments You paid in the subject claim.

27.    All documents relating to the Policyholder that You obtained from any source other than the Policyholder.

28.    All documents which, in any way, support each and every affirmative defense and/or counterclaim asserted by You.

29.    All documents that relate to any facts that would lead You to believe that insurance coverage may not be available under the Policy for the Policyholder's claim.

30.    All documents that relate to whether the Policyholder's claim is excluded.

31.    All documents that relate to the nature and extent of any prejudice You contend You have suffered, if any, as a result of the alleged failure of the Policyholder to comply with any alleged provisions, including, but not limited to, notice and submission of proof of loss, allegedly contained in the Policy.

32.    Copies of any and all documents Defendant identifies in its Initial Disclosures.

33.    All inspection reports and/or summaries relied upon prior to renewal and/or placement or property insurance policy.

Respectfully submitted this 12TH day of March, 2025.

MERLIN LAW GROUP, P.A.

Matthew S. Brown, Esq.
Georgia Bar No.: 088852
4887 Belfort Road, Suite 200
Jacksonville, FL 32256
Ph.: (904) 345-4491
*E-Mail for Electronic Service:*
Mbrown@merlinlawgroup.com
JMurad@merlinlawgroup.com